**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Telephone: (818) 347-3333/ Facsimile: (818) 347-4118

**LAW OFFICES OF DEAN PETRULAKIS**
Dean Petrulakis, Esq. (Bar No. 192185)
1600 G Street, Suite 202
Modesto, CA 95354
Tel: (209) 522-6600

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Anthony Silva by and through his Guardian *ad Litem* Dorothy Jean Heimbach,<br><br>          Plaintiff,<br><br>     vs.<br><br>Stanislaus County; and DOES 1–10, in their individual capacities,<br><br>          Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>Federal Law Claims<br>1.  Fourth Amendment, Unlawful Detention (42 U.S.C. § 1983)<br>2.  Fourth Amendment, Excessive Force (42 U.S.C. § 1983)<br>3.  Fourth Amendment, Denial of Medical Care (42 U.S.C. § 1983)<br>4.  Municipal Liability, Unconstitutional Custom or Policy (42 U.S.C. § 1983)<br>5.  Municipal Liability, Failure to Train (42 U.S.C. § 1983)<br>6.  Municipal Liability – Ratification (42 U.S.C. § 1983)<br>7.  Americans with Disabilities Act (42 U.S.C. § 12132)<br><br>State Law Claims<br>8.  False Arrest<br>9.  Battery<br>10. Negligence<br>11. Intentional Infliction of Emotional Distress<br>12. Violation of Cal. Civil Code § 52.1<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DAMAGES

COME NOW Plaintiff Anthony Silva for his Complaint against Defendants Stanislaus County and Stanislaus Sheriff Deputies, Does 1–10, sued in their individual capacities, alleging as follows:

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Mr. Silva asserts claims arising under the laws of the United States, including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.

2.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## INTRODUCTION

3.      On the afternoon of October 8, 2022, the ordinary life of Plaintiff Anthony Silva, a 39-year-old resident of Riverbank, California, was catastrophically and irrevocably shattered. From the peaceful setting of a public gazebo emerged an episode of gut-wrenching brutality meted out by the very individuals entrusted with his protection: deputies of the Stanislaus County Sheriff's Department.

4.      In an unjustified and excessive display of force, these deputies, whose identities are yet to be ascertained, forcibly slammed Mr. Silva to the ground, head first. This violent act caused severe cervical fractures at the C6 and C7 vertebrae, resulting permanent quadriplegia. In that moment, Mr. Silva's life was brutally transformed into an enduring nightmare of paralysis and dependency.

5.      To add to the severity of their misconduct, the deputies, in clear disregard for Mr. Silva's visibly deteriorating condition, proceeded to move him around—first lifting him from the ground to a park bench and later, from the bench to a picnic table. Every shift, every jostle, every moment of delay in getting professional medical help intensified Mr. Silva's injuries, exacerbating the damage

to his cervical vertebrae and directly contributing to his permanent state of quadriplegia.

6.     These tragic events are a direct consequence of the deeply flawed policies and practices at the Stanislaus County Sheriff's Department. The department's inadequate and deficient training procedures have not only failed to prevent such instances of excessive force, but also, the department has ratified the unconstitutional conduct of their officers time and time again.

## PARTIES

7.     At all relevant times, Plaintiff Anthony Silva was an individual residing in the City of Riverbank, California.

8.     Stanislaus County is a political subdivision of the State of California, and in doing the acts alleged was acting as such, rather than as an "arm of the state" for Eleventh Amendment immunity purposes.

9.     Stanislaus County is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Stanislaus County Sheriff's Department and its agents and employees. At all relevant times, Stanislaus County was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the Stanislaus County Sheriff's Department and its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, Stanislaus County was the employer of Defendant Does 1–10 ("Defendant Does").

10.     Defendant Does 1-6 ("Deputy Does") are deputy sheriffs working for the Stanislaus County Sheriff's Department. At all relevant times, Doe Deputies were acting under color of law within the course and scope of their duties as sheriff's deputies for the Stanislaus County Sheriff's Department. The Deputy Does were acting with the complete authority and ratification of their principal, Stanislaus County.

11.     Defendant Does 7–10 ("Supervisor Does") are managerial,

supervisorial, and policymaking employees of the Stanislaus County Sheriff's Department, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the Stanislaus County Sheriff's Department. Supervisor Does were acting with the complete authority and ratification of their principal, Stanislaus County.

12. On information and belief, the Defendant Does were residents of the County of Stanislaus.

13. In doing the acts and failing and omitting to act as hereinafter described, the Deputy Does were acting on the implied and actual permission and consent of the Supervisor Does.

14. In doing the acts and failing and omitting to act as hereinafter described, all Defendant Does were acting on the implied and actual permission and consent of Stanislaus County.

15. The true names and capacities, whether individual, corporate, association, or otherwise of Defendant Does are unknown to Mr. Silva, who otherwise would not sue these Defendants by such fictitious names. Mr. Silva will seek leave to amend his complaint to show the true names and capacities of these Defendants when they have been ascertained. Each of the fictitiously-named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

16. At all times mentioned herein, Defendant Does were the agents of Stanislaus County. The Supervisor Does had the legal duty to oversee and supervise the hiring, conduct, and employment of the Deputy Does.

17. All of the acts complained of herein by Mr. Silva against Defendants were done and performed by said Defendants. Stanislaus County and the Supervisor Does acted by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Moreover, Stanislaus Count

and the Supervisor Does and their agents ratified all of the acts complained of herein.

18.     Defendant Does are sued in their individual capacities.

19.     On or around February 2, 2023, Mr. Silva filed comprehensive and timely claims for damages with Stanislaus County pursuant to applicable sections of the California Government Code.

20.     On March 16, 2023, Stanislaus County rejected the claims.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

21.     On the afternoon of October 8, 2022, Plaintiff Anthony Silva's life was irrevocably altered when Stanislaus County deputies unleashed a brutal assault, leaving him permanently quadriplegic.

22.     Mr. Silva was outside the Riverbank Community Center at 3600 Santa Fe St, Riverbank, CA 95367, near a gazebo that is a public facility.

23.     At the time of the incident, Mr. Silva was a 39-year-old man.

24.     Mr. Silva is a high school graduate.

25.     For several years before the incident, he had been experiencing housing instability, and he was suffering from mental illness. The Deputy Does were familiar with Mr. Silva, and they were aware that he suffered from mental illness.

26.     The Deputy Does surrounded Mr. Silva and began harassing him, giving him orders and speaking to him aggressively despite the fact that Mr. Silva had committed no crime, and had a right to be where he was, on public property.

27.     The Deputy Does detained Mr. Silva without reasonable suspicion that he had committed any crime.

28.     At one point, one of the Deputy Does became angry and forcefully slammed Mr. Silvato head-first into the ground.

29.     The forceful takedown of Mr. Silva resulted in cervical fractures of his C6 and C7 vertebrae. In layman's terms, Mr. Silva's neck was broken.

30.     Due to his broken neck, Mr. Silva could not get back to his feet.

31. Although Mr. Silva was clearly suffering from a severe injury, the Deputy Does did not promptly call paramedics.

32. Instead, as Mr. Silva lay on the ground, Defendants began to move his injured body. First they moved him from the ground, sitting him upright at a park bench. Then they moved him from the bench to a picnic table.

33. Moving Mr. Silva multiple times exacerbated his neck injury, resulting in permanent quadriplegia.

34. The Deputy Does caused a delay in Mr. Silva's receipt of medical care, despite the obvious and urgent need.

35. At all relevant times, Mr. Silva complied with the Deputy Does' commands and did not resist arrest.

36. At all relevant times, the Deputy Does had no information that Mr. Silva posed any threat of injury to anyone, nor did they have information that Mr. Silva had actually injured anyone.

37. Mr. Silva had in fact, not hurt anyone at any relevant time.

38. At all relevant times, Defendant officers failed to warn Mr. Silva that they would begin using force against him, despite it being feasible to do so, and despite Mr. Silva's with the Deputy Does' commands.

39. At all relevant times, Mr. Silva posed no imminent threat of bodily harm to the Deputy Does or anyone else.

40. At all relevant times, Mr. Silva made no verbal threats to any officer or anyone else.

41. At all relevant times, the Deputy Does could observe that Mr. Silva was unarmed and had no weapons in his possession.

42. At all relevant times, the Deputy Does had no information that Mr. Silva had committed a crime unrelated to the alleged shoulder-check the officer claimed to have experienced.

43. At all relevant times, the Deputy Does failed to make any effort to

ascertain whether Mr. Silva was suffering from a medical problem or crisis requiring urgent treatment, as was obvious and in fact the case at the time.

44. At all relevant times, the Deputy Does failed to take steps to de-escalate the situation or give Mr. Silva the opportunity to cooperate with their instructions or comply with their orders prior to assaulting him.

45. As a result of the Deputy Does forceful takedown, restraint, and subsequent movement of his injured body, Mr. Silva suffered significant injuries, including a C6, C7 cervical fracture leading to permanent quadriplegia, skin abrasions on his arms, and various complications including pneumonia in both lower lobes of his lungs and blood clots.

46. Due to the injuries inflicted by the actions of the Deputy Does, Mr. Silva was forced to undergo endotracheal intubation. This procedure involves inserting a flexible plastic tube through the patient's mouth and into the windpipe, which is then connected to a ventilator to assist in breathing. It's often required when individuals are unable to breathe independently due to severe injury or illness.

47. In addition to his lasting physical problems, Mr. Silva was significantly traumatized by the arrest and unjustified use of force he experienced and has suffered significant emotional harm. Mr. Silva's quality of life has been significantly diminished as a result of this incident and the lasting injuries he suffered.

48. The conduct of the Deputy Does was malicious, wanton, and oppressive. Mr. Silva is therefore entitled to an award of punitive damages against said defendant deputies.

## **FIRST CLAIM FOR RELIEF**

### **Fourth Amendment, Unlawful Detention (42 U.S.C. § 1983)**

### **Against Defendant Does 1–10**

49. Mr. Silva repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

50. The Deputy Does detained Mr. Silva without reasonable suspicion or probable cause. At all relevant times, Defendant Does acted under color of state law. The Deputy Does unreasonably seized Mr. Silva when they surrounded and harassed him without reasonable suspicion that he had committed or was going to commit any crime.

53. In addition, the scope and manner of the detention was unreasonable. It was not necessary to use force against Mr. Silva. It was certainly not necessary to slam him to the ground head-first, breaking his neck in two places. Moreover, it was not necessary to apply force to Mr. Silva's body after he was laying on the ground unable to move.

54. The conduct of the Deputy Does was done with reckless disregard for the rights and safety of Mr. Silva and therefore warrants the imposition of exemplary and punitive damages as to these defendants. As a direct result of the unreasonable detention and arrest, Mr. Silva experienced severe pain and suffering for which he is entitled to recover damages.

55. As a result of their misconduct, the Deputy Does are liable for Mr. Silva's injuries, either because they were integral participants in the wrongful detention and arrest, or because they failed to intervene to prevent these violations.

56. Mr. Silva brings this claim and seeks damages on this claim, including for his injuries, including for pain and suffering, emotional distress from his physical injuries, humiliation, disfigurement, financial loss, and reduced earning capacity.

57. The Supervisor Does were aware of Mr. Silva's status as an unhoused individual suffering from mental illness. They were aware that Stanislaus Deputies, including the Deputy Does, frequently detained Mr. Silva and similarly situated individuals without reasonable suspicion. Their failure to properly supervise the Deputy Does by instructing them to cease such unconstitutional behavior was a contributing cause of Mr. Silva's injuries.

58. Mr. Silva also seeks attorney's fees and costs for this claim, pursuant to

42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF

### Fourth Amendment, Excessive Force (42 U.S.C. § 1983)

### Against Defendant Does 1–10

59.     Mr. Silva repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

60.     The Deputy Does use of force against Mr. Silva were excessive and unreasonable under the circumstances. These Defendants encountered Mr. Silva who may have been in the midst of a mental health crisis, and instead of providing the assistance he needed, they detained and severely battered him. At the time of the incident, Mr. Silva offered minimal resistance to the officers, made no attempt to flee, and had committed no serious crime.

61.     These Defendants' uses of force were further excessive in that Mr. Silva never physically injured them or anyone else before or after the officers assaulted him. Further, Mr. Silva never verbally threatened anyone, and never brandished a weapon.

62.      The unreasonable use of force by the Deputy Does deprived Mr. Silva of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Mr. Silva under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

63.     As a result, Mr. Silva suffered severe pain and suffering and permanent health repercussions, the most significant being permanent quadriplegia. The Deputy Does are therefore liable to Mr. Silva for compensatory damages under 42 U.S.C. § 1983.

64.     As a result of the Deputy Does conduct, they are liable for Mr. Silva's injuries, either because they were integral participants in the use of excessive force, or because they failed to intervene to prevent these violations.

65. The conduct of the Deputy Does was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Silva and therefore warrants the imposition of exemplary and punitive damages as to these Defendants.

66. Mr. Silva brings this claim and seeks damages on this claim, including for Mr. Silva's injuries, including for pain and suffering, emotional distress from his physical injuries, humiliation, disfigurement, financial loss, and reduced earning capacity.

67. The Supervisor Does were aware of Mr. Silva's status as an unhoused individual suffering from mental illness. They were aware that Stanislaus Deputies, including the Deputy Does, frequently used excessive force against individuals similarly situated to Mr. Silva without justification. Their failure to properly supervise the Deputy Does by instructing them to cease such unconstitutional conduct was a contributing cause of their unconstitutional use of excessive force and Mr. Silva's injuries.

68. Mr. Silva also seeks attorney's fees and costs for this claim, pursuant to 42 U.S.C. § 1988.

## **THIRD CLAIM FOR RELIEF**

### **Fourth Amendment, Denial of Medical Care (42 U.S.C. § 1983)**

### **Against Defendant Does 1–6**

69. Mr. Silva repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

70. After slamming Mr. Silva head-first into the ground, breaking his neck in two places, the Deputy Does did not timely summon or provide medical attention to Mr. Silva.

71. After being taken to the ground, Mr. Silva could not get back to his feet because his neck was broken in two places.

72. Although Mr. Silva was clearly suffering from a severe injury, the

Deputy Does did not promptly call paramedics.

73. Instead, as Mr. Silva lay on the ground, Defendants began to move his injured body. First they moved him from the ground, sitting him upright at a park bench. Then they moved him from the bench to a picnic table.

74. Moving Mr. Silva multiple times exacerbated his neck injury, resulting in permanent quadriplegia.

75. The Deputy Does therefore caused a delay in Mr. Silva's receipt of medical care, despite the obvious and urgent need.

76. The denial of medical care by the Deputy Does deprived Mr. Silva of his right to be secure in his persons against unreasonable searches and seizures as guaranteed to Mr. Silva under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

77. As a result, Mr. Silva suffered severe pain and suffering and permanent health repercussions, the most significant being permanent quadriplegia. The Deputy Does are therefore liable to Mr. Silva for compensatory damages under 42 U.S.C. § 1983.

78. The Deputy Does knew that failure to provide timely medical treatment to Mr. Silva could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, exacerbating his pain and suffering.

79. The conduct of the Deputy Does was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Silva and therefore warrants the imposition of exemplary and punitive damages as to these Defendants.

80. Mr. Silva brings this claim and seeks damages on this claim, including for Mr. Silva's injuries, including for pain and suffering, emotional distress from his physical injuries, humiliation, disfigurement, financial loss, and reduced earning capacity.

81. Mr. Silva also seeks attorney's fees and costs for this claim, pursuant to

42 U.S.C. § 1988.

### FOURTH CLAIM FOR RELIEF

**Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

**Against Stanislaus County**

82.　Mr. Silva repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

83.　As alleged above, the Deputy Does acted under color of state law, and their acts deprived Mr. Silva of his particular rights under the United States Constitution.

84.　On information and belief, the Deputy Does were not disciplined, reprimanded in connection with this incident.

85.　The Deputy Does, together with other Stanislaus County policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

      i.　Using excessive force, particularly by slamming individuals into the ground head-first, causing potential harm and injury;

      ii.　Providing inadequate training with respect to the handling of individuals, particularly in situations that could lead to head and neck injuries;

      iii.　Providing inadequate training regarding the appropriate response to neck injuries;

      iv.　Employing and retaining as deputy sheriffs individuals such as the Deputy Does, whom Stanislaus County at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force, including head-first ground slams;

      v.　Inadequately supervising, training, controlling, assigning, and

disciplining deputies and other personnel, including the Deputy Does, whom Stanislaus County knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

vi. Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by Stanislaus County deputies, particularly in relation to incidents involving head-first ground slams and inappropriate handling of neck injuries;

vii. Failing to adequately discipline Stanislaus County deputies for the above-referenced categories of misconduct, including inadequate responses to incidents of head-first ground slams and improper handling of neck injuries;

viii. Determining that unjustified uses of force, including head-first ground slams and improper handling of neck injuries, are within policy;

ix. Even though in similar circumstances, head-first ground slams have been determined by courts to be unconstitutional, Stanislaus County refuses to discipline, terminate, or retrain the officers involved in such incidents;

x. Encouraging, accommodating, or facilitating a "blue code of silence," pursuant to which police officers do not report other officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing; and

xi. Maintaining a policy of inaction and an attitude of indifference

COMPLAINT FOR DAMAGES

towards soaring numbers of police use-of-force incidents, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in the use of force and restraint of unarmed people, particularly in relation to incidents involving head-first ground slams and improper handling of neck injuries.

86. The aforementioned acts and omissions caused Mr. Silva's physical injuries and emotional harm.

87. Stanislaus County, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Mr. Silva and other individuals similarly situated.

88. By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, Stanislaus officials acted with intentional, reckless, and callous disregard for the constitutional rights of Mr. Silva. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendant County of Stanislaus were affirmatively linked to and were a significantly influential force behind the Mr. Silva injuries.

89. Accordingly, Stanislaus County is liable to Mr. Silva for compensatory damages under 42 U.S.C. § 1983.

90. Mr. Silva also seeks attorney's fees and costs for this claim, pursuant to 42 U.S.C. § 1988.

**FIFTH CLAIM FOR RELIEF**

**Municipal Liability – Failure to Train (42 U.S.C. § 1983)**

**Against Stanislaus County**

91. Mr. Silva repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

92. As alleged above, the Deputy Does acted under color of state law, and their acts deprived Mr. Silva of his particular rights under the United States Constitution.

93. The training policies of Stanislaus County were not adequate to train its deputies to handle the usual and recurring situations with which they must deal.

94. Defendants Stanislaus County and Supervisor Does were deliberately indifferent to the obvious consequences of its failure to train its deputies adequately.

95. The failure of Defendants Stanislaus County and Supervisor Does to provide adequate training caused the deprivation of the plaintiffs' rights by the Deputy Does; that is, the defendant's failure to train is so closely related to the deprivation of the Mr. Silva's rights as to be the moving force that caused the ultimate injury.

96. By reason of the aforementioned acts and omissions caused Mr. Silva to suffer great physical and emotional harm.

97. Accordingly, Stanislaus County is liable to Mr. Silva for compensatory damages under 42 U.S.C. § 1983.

98. Mr. Silva also seeks attorney's fees and costs for this claim, pursuant to 42 U.S.C. § 1988.

## SIXTH CLAIM FOR RELIEF

### Municipal Liability – Ratification (42 U.S.C. § 1983)

### Against Stanislaus County

99. Mr. Silva repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

100. As alleged above, the Deputy Does acted under color of state law, and

their acts deprived Mr. Silva of his particular rights under the United States Constitution.

101. Upon information and belief, a final policymaker, acting under color of law, who had final policymaking authority concerning the acts of the Deputy Does ratified (or will ratify) the acts of the Deputy Does and the bases for them. Upon information and belief, the final policymaker knew of and specifically approved of (or will specifically approve of) the acts of the Deputy Does.

102. Upon information and belief, a final policymaker has determined (or will determine) that the acts of the Deputy Does were "within policy."

103. On information and belief, the Deputy Does were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with this incident.

104. Accordingly, Stanislaus County is liable to Mr. Silva for compensatory damages under 42 U.S.C. § 1983.

105. Mr. Silva seeks compensatory damages under this claim.

106. Mr. Silva also seeks attorney's fees and costs for this claim, pursuant to 42 U.S.C. § 1988.

## SEVENTH CLAIM FOR RELIEF

### Americans with Disabilities Act (42 U.S.C. § 12132)

### Against Stanislaus County

107. Mr. Silva repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

108. Mr. Silva was a "qualified individual," with a mental impairment that substantially limited his ability to care for himself and control his mental, medical or physical health condition as defined under the Americans with Disabilities Act (ADA), 42 U.S.C. §12131 (2), and under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794.

109. Stanislaus County is a covered entity for purposes of enforcement of the ADA, 42 U.S.C. §12131 (2), and under Section 504 of the Rehabilitation Act of 1973, explicated by the regulations promulgated under each of these laws.

110. Under the ADA, Stanislaus County is mandated to "develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities and developmental disabilities. . ." and to ensure "that the personal and civil rights" of persons are protected.

111. Congress enacted the ADA upon a finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problems." 42 U.S.C. §12101(a)(2).

112. Stanislaus County is mandated under the ADA not to discriminate against any qualified individual on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. §12182 (a).

113. Stanislaus County receives federal financial assistance for its Sheriff's Office, and therefore must comply with the mandates of the Rehabilitation Act, §504, which specifies that "program or activity" means all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government.

114. Stanislaus County and other Defendants violated the ADA and the Rehabilitation Act, and deprived Mr. Silva of his federally and state protected rights by: (1) failing to properly train its deputies, dispatch staff and/or employees to peacefully respond, treat, and interact with disabled persons, such as Mr. Silva; and (2) failing to comply with the U.S. Department of Justice requirements regarding care, treatment and security to persons with mental disabilities, resulting in discrimination against Mr. Silva, under the ADA and the Rehabilitation Act.

115. As a legal result of the acts and misconduct of the Defendants and each

Defendant complained of herein, Mr. Silva has suffered, is now suffering and will continue to suffer damages as alleged herein. Mr. Silva seeks compensatory damages under this claim.

116. Mr. Silva also seeks attorney's fees and costs for this claim, pursuant to 42 U.S.C. § 1988.

<u>**EIGHTH CLAIM FOR RELIEF**</u>

**False Arrest**

**Against All Defendants**

117. Mr. Silva repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

118. The Deputy Does intentionally deprived Mr. Silva of his freedom of movement by use of force, threats of force, menace, fraud, deceit, and unreasonable duress. The Deputy Does did not have reasonable suspicion that Mr. Silva was engaged in any criminal activity, Mr. Silva was not engaged in any criminal activity at any point during this incident, and he did not in any way interfere with or obstruct the defendant officers' duties with respect to the incident. Mr. Silva did not knowingly or voluntarily consent to being detained.

119. At the time of the unlawful detention of Mr. Silva, the Deputy Does were working as Stanislaus County deputies and were acting within the course and scope of their employment and duties.

120. As a result of their misconduct, the Deputy Does are liable for Mr. Silva's injuries.

121. Mr. Silva brings this claim in his individual capacity against the Deputy Does and seeks compensatory damages, including pain and suffering and emotional and mental distress for the violation of his rights.

122. The Supervisor Does were aware of Mr. Silva's status as an unhoused individual suffering from mental illness. They were aware that Stanislaus Deputies,

including the Deputy Does, frequently arrested individuals similarly situated to Mr. Silva without probably cause. Their failure to properly supervise the Deputy Does by instructing them to cease such conduct was a contributing cause of Mr. Silva's injuries.

123. Mr. Silva also seeks attorney's fees and costs for this claim, pursuant to 42 U.S.C. § 1988.

**NINTH CLAIM FOR RELIEF**

**Battery**

**Against All Defendants**

124. Mr. Silva repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

125. Deputy Does physically assaulted Mr. Silva causing severe injuries including permanent quadriplegia.

126. Deputy Does use of force against Mr. Silva were excessive and unreasonable under the circumstances. These Defendants encountered Mr. Silva who may have been in the midst of a mental health crisis, and instead of providing the assistance he needed, they detained and severely battered him. At the time of the incident, Mr. Silva offered minimal resistance to the officers, made no attempt to flee, and had committed no serious crime.

127. The Deputy Does, while working for the Stanislaus County Sheriff's Department and acting within the course and scope of their duties, encountered Mr. Silva who may have been in the midst of a mental health crisis, and instead of providing the assistance he needed, they detained and severely physically assaulted him. At the time of the incident, Mr. Silva offered minimal resistance to the officers, made no attempt to flee, and had committed no serious crime.

128. The use of force and restraint against Mr. Silva was objectively unreasonable. At all relevant times, including when the Deputy Does slammed Mr.

Silva to the ground, Mr. Silva did not pose a threat to anyone. Mr. Silva was offering minimal resistance, and had committed no crime. Additionally, Mr. Silva was unarmed during this incident.

129.   As a result of the actions of the Deputy Does, Mr. Silva is permanently quadriplegic. The Deputy Does had no legal justification for using force against Mr. Silva, and their use of force while carrying out their duties as a deputy sheriff was an unreasonable use of force.

130.   As a direct and proximate result of the conduct of the Deputy Does as alleged above, Mr. Silva suffered significant damages related to his physical and emotional injuries.

131.   Stanislaus County is vicariously liable for the wrongful acts of the Deputy Does pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject her or her to liability.

132.   The Supervisor Does were aware of Mr. Silva's status as an unhoused individual suffering from mental illness. They were aware that Stanislaus Deputies, including the Deputy Does, frequently unjustifiably assault individuals similarly situated to Mr. Silva. Their failure to properly supervise the Deputy Does by instructing them to cease such conduct was a contributing cause of Mr. Silva's injuries.

133.   The conduct of the Deputy Does was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Mr. Silva, entitling him to an award of exemplary and punitive damages in addition to compensatory damages.

## TENTH CLAIM FOR RELIEF

### Negligence

### Against All Defendants

134. Mr. Silva repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

135. The Deputy Does have a duty to use reasonable care to prevent harm or injury to others. This duty includes using appropriate tactics, giving appropriate commands, giving warnings, and not using any force unless necessary, using less than lethal options, and only using deadly force as a last resort.

136. The Deputy Does breached this duty of care. The actions and inactions of the Deputy Does were negligent and reckless, including but not limited to:

    i. Surrounding and harassing Mr. Silva without any reasonable suspicion of a crime being committed.

    ii. Speaking to Mr. Silva aggressively and giving him orders despite his right to be on public property.

    iii. Detaining Mr. Silva without any reasonable suspicion of a crime.

    iv. Forcefully slamming Mr. Silva head-first into the ground, resulting in a broken neck.

    v. Failing to promptly call paramedics despite Mr. Silva's obvious severe injury.

    vi. Moving Mr. Silva's injured body multiple times, exacerbating his neck injury and resulting in permanent quadriplegia.

    vii. Causing a delay in Mr. Silva's receipt of medical care, despite the obvious and urgent need.

137. As a direct and proximate result of Defendants conduct as alleged above, and other undiscovered negligent conduct, Mr. Silva was caused to suffer severe pain and suffering and was rendered permanently quadriplegic.

138. Stanislaus County is vicariously liable for the wrongful acts of the Deputy Does pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within

the scope of the employment if the employee's act would subject her or her to liability.

139.   The Supervisor Does were aware of Mr. Silva's status as an unhoused individual suffering from mental illness. They were aware that Stanislaus Deputies, including the Deputy Does, frequently unjustifiably assault individuals similarly situated to Mr. Silva. They were negligent in their failure to properly supervise the Deputy Does by instructing them to cease such conduct. And their negligence was a contributing cause of the Deputy Does' actions and of Mr. Silva's injuries.

140.   Mr. Silva seeks compensatory damages under this claim.

## ELEVENTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

### Against All Defendants

141.   Mr. Silva repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

142.   The conduct of the Deputy Does, as set forth herein, was extreme and outrageous and beyond the scope of conduct which should be tolerated by citizens in a democratic and civilized society.

143.   Defendants committed these extreme and outrageous acts with the intent to inflict severe mental and emotional distress upon Mr. Silva.

144.   As a proximate result of Defendants' willful, intentional and malicious conduct, plaintiff suffered severe and extreme mental and emotional distress.

145.   Therefore, Mr. Silva is entitled to an award of compensatory and punitive damages against said defendants.

## TWELFTH CLAIM FOR RELIEF

### Violation of Cal. Civil Code § 52.1

### Against All Defendants

146.   Mr. Silva repeats and realleges each and every allegation in the

foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

147. California Civil Code, Section 52.1 (the Bane Act), prohibits any person from using violent acts or threatening to commit violent acts in retaliation against another person for exercising that person's constitutional rights.

148. On information and belief, the Deputy Does, while working for the Stanislaus County and acting within the course and scope of their duties, intentionally committed acts of violence against Mr. Silva, including breaking his neck by slamming him to the ground head-first, all without justification or excuse, or by integrally participating and failing to intervene in the above violence, and by denying him necessary medical care. The Deputy Does' intent to violate Mr. Silva's constitutional rights is demonstrated by their reckless disregard for Mr. Silva's constitutional rights.

149. The Deputy Does' use of extreme force and subsequent mistreatment of Mr. Silva's injured body interfered with his civil rights to be free from unreasonable searches and seizures, and his right to medical care to mitigate caused by the deputies use of force.

150. On information and belief, the Deputy Does intentionally and spitefully committed the above acts to discourage Mr. Silva from exercising his civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights, which he was fully entitled to enjoy.

151. On information and belief, Mr. Silva reasonably believed and understood that the violent acts committed by the Deputy Does were intended to discourage him from exercising the above civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights.

152. The conduct of the Deputy Does was a substantial factor in causing Mr. Silva's harms, losses, injuries, and damages.

153. Stanislaus County is vicariously liable for the wrongful acts of the

Deputy Does pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

154. The conduct of the Deputy Does was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Silva and therefore warrants the imposition of exemplary and punitive damages as to these Defendants.

155. Mr. Silva seeks attorney's fees under this claim.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Anthony Silva requests entry of judgment in his favor and against Defendants Stanislaus County and Stanislaus Sheriff Deputies, Does 1–10, as follows:

A. For compensatory damages in an amount according to proof at trial;

B. For other general damages in an amount according to proof at trial;

C. For other non-economic damages in an amount according to proof at trial;

D. For other special damages in an amount according to proof at trial;

E. For punitive damages against the individual defendants in an amount to be proven at trial;

F. Attorney's fees pursuant to 42 U.S.C. § 1988;

G. For interest;

H. For reasonable costs of this suit; and

For such further other relief as the Court may deem just, proper, and appropriate.

DATED: August 31, 2023                LAW OFFICES OF DALE K. GALIPO

_____
Dale K. Galipo
*Attorney for Plaintiffs*

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.


DATED: August 31, 2023                    LAW OFFICES OF DALE K. GALIPO

_____
Dale K. Galipo
*Attorney for Plaintiffs*