1  **LAW OFFICES OF DALE K. GALIPO**
   Dale K. Galipo, Esq. (SBN 144074)
2  dalekgalipo@yahoo.com
   Cooper Alison-Mayne (SBN 343169)
3  cmayne@galipolaw.com
   21800 Burbank Boulevard, Suite 310
4  Woodland Hills, CA 91367
   Phone: (818) 347-3333
5
   **LAW OFFICES OF DEAN PETRULAKIS**
6  Dean Petrulakis, Esq. (Bar No. 192185)
   1600 G Street, Suite 202
7  Modesto, CA 95354
   Tel: (209) 522-6600
8
                    **UNITED STATES DISTRICT COURT**
9
                    **EASTERN DISTRICT OF CALIFORNIA**
10

11  DOROTHEY HEIMBACH,                  Case No. 2:23-cv-01887-DJC-KJN
    individually and as successor in
12  interest to Anthony Silva,          **FIRST AMENDED COMPLAINT**

13          Plaintiff,                  Federal Law Claims
                                        1.   Fourth Amendment, Unlawful
14      vs.                                  Detention (42 U.S.C. § 1983)
                                        2.   Fourth Amendment, Excessive Force
15                                           (42 U.S.C. § 1983)
    STANISLAUS COUNTY; and             3.   Fourth Amendment, Denial of Medical
16  DOES 1–10, in their individual          Care (42 U.S.C. § 1983)
    capacities,                         4.   Municipal Liability, Unconstitutional
17                                           Custom or Policy (42 U.S.C. § 1983)
            Defendants.                 5.   Municipal Liability, Failure to Train
18                                           (42 U.S.C. § 1983)
                                        6.   Municipal Liability – Ratification (42
19                                           U.S.C. § 1983)
                                        7.   Americans with Disabilities Act (42
20                                           U.S.C. § 12132)
21
                                        State Law Claims
22                                      8.   Battery
                                        9.   Negligence
23                                      10.  Violation of Cal. Civil Code § 52.1
24
                                        **DEMAND FOR JURY TRIAL**
25
26
27
28

                    FIRST AMENDED COMPLAINT

## COMPLAINT FOR DAMAGES

COME NOW Plaintiff Dorothey Heimbach for her Complaint against Defendants Stanislaus County and Stanislaus Sheriff Deputies, Does 1–10, sued in their individual capacities, alleging as follows:

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States, including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.

2.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## INTRODUCTION

3.      On the afternoon of October 8, 2022, the ordinary life of Plaintiff Dorothey Heimbach's son, Anthony Silva, was catastrophically and irrevocably shattered. From the peaceful setting of a public gazebo emerged an episode of gut-wrenching brutality meted out by the very individuals entrusted with his protection: deputies of the Stanislaus County Sheriff's Department.

4.      In an unjustified and excessive display of force, these deputies, whose identities are yet to be ascertained, forcibly slammed Mr. Silva to the ground, head first. This violent act caused severe cervical fractures at the C6 and C7 vertebrae. These injuries rendered Mr. Silva quadriplegic. He died of the injuries one year later, on September 10, 2023.

5.      To add to the severity of their misconduct, the deputies, in clear disregard for Mr. Silva's visibly deteriorating condition, proceeded to move him around—first lifting him from the ground to a park bench and later, from the bench to a picnic table. Every shift, every jostle, every moment of delay in getting professional medical help intensified Mr. Silva's injuries, exacerbating the damage

1  to his cervical vertebrae and directly contributing to his quadriplegia and death.

2      6.    These tragic events are a direct consequence of the deeply flawed

3  policies and practices at the Stanislaus County Sheriff's Department. The

4  department's inadequate and deficient training procedures have not only failed to

5  prevent such instances of excessive force, but also, the department has ratified the

6  unconstitutional conduct of their officers time and time again.

7  **PARTIES**

8      7.    At all relevant times, Decedent Anthony Silva was an individual

9  residing in the City of Riverbank, California.

10      8.    Plaintiff Dorothey Heimbach is an individual who was residing in

11  Riverbank, California. She is the natural mother of Mr. Silva; she sues under

12  federal and state law in her individual capacity and as successor-in-interest to Mr.

13  Silva. Plaintiff is Mr. Silva's successor-in-interest pursuant to California Code of

14  Civil Procedure §§377.30 and 377.60.

15      9.    Stanislaus County is a political subdivision of the State of California,

16  and in doing the acts alleged was acting as such, rather than as an "arm of the state"

17  for Eleventh Amendment immunity purposes.

18      10.    Stanislaus County is responsible for the actions, omissions, policies,

19  procedures, practices, and customs of its various agents and agencies, including the

20  Stanislaus County Sheriff's Department and its agents and employees. At all

21  relevant times, Stanislaus County was responsible for assuring that the actions,

22  omissions, policies, procedures, practices, and customs of the Stanislaus County

23  Sheriff's Department and its employees and agents complied with the laws of the

24  United States and of the State of California. At all relevant times, Stanislaus

25  County was the employer of Defendant Does 1–10 ("Defendant Does").

26      11.    Defendant Does 1-6 ("Deputy Does") are deputy sheriffs working for

27  the Stanislaus County Sheriff's Department. At all relevant times, Doe Deputies

28  were acting under color of law within the course and scope of their duties as

sheriff's deputies for the Stanislaus County Sheriff's Department. The Deputy Does were acting with the complete authority and ratification of their principal, Stanislaus County.

12.     Defendant Does 7–10 ("Supervisor Does") are managerial, supervisorial, and policymaking employees of the Stanislaus County Sheriff's Department, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the Stanislaus County Sheriff's Department. Supervisor Does were acting with the complete authority and ratification of their principal, Stanislaus County.

13.     On information and belief, the Defendant Does were residents of the County of Stanislaus.

14.     In doing the acts and failing and omitting to act as hereinafter described, the Deputy Does were acting on the implied and actual permission and consent of the Supervisor Does.

15.     In doing the acts and failing and omitting to act as hereinafter described, all Defendant Does were acting on the implied and actual permission and consent of Stanislaus County.

16.     The true names and capacities, whether individual, corporate, association, or otherwise of Defendant Does are unknown to Plaintiff, who otherwise would not sue these Defendants by such fictitious names. Plaintiff will seek leave to amend her complaint to show the true names and capacities of these Defendants when they have been ascertained. Each of the fictitiously-named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

17.     At all times mentioned herein, Defendant Does were the agents of Stanislaus County. The Supervisor Does had the legal duty to oversee and supervise the hiring, conduct, and employment of the Deputy Does.

18.     All of the acts complained of herein by Plaintiff against Defendants

1  were done and performed by said Defendants. Stanislaus County and the

2  Supervisor Does acted by and through their authorized agents, servants, and/or

3  employees, all of whom at all relevant times herein were acting within the course,

4  purpose, and scope of said agency, service, and/or employment capacity. Moreover,

5  Stanislaus Count and the Supervisor Does and their agents ratified all of the acts

6  complained of herein.

7       19.    Defendant Does are sued in their individual capacities.

8       20.    On or around February 2, 2023, Mr. Silva filed comprehensive and

9  timely claims for damages with Stanislaus County pursuant to applicable sections

10  of the California Government Code.

11       21.    On March 16, 2023, Stanislaus County rejected the claims.

12       22.    Mr. Silva filed his timely complaint in this case on August 31, 2023.

13  (ECF No. 1.)

14       23.    Shortly thereafter, on September 10, 2023, Mr. Silva died from his

15  injuries.

16       24.    Plaintiff Dorothey Heimbach, Mr. Silva's mother, served her timely

17  claims for damages with Stanislaus County pursuant to applicable sections of the

18  California Government Code on October 6, 2023.

19       25.    As of today, Plaintiff has not received a response to her claim. And

20  because it has been more than 45 days since service of the claim, the claim is

21  deemed rejected by operation of law and Plaintiff may file her complaint. Gov.

22  Code, § 945.6(a)(2).

23       **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

24       26.    On the afternoon of October 8, 2022, Decedent Anthony Silva's life

25  was irrevocably altered when Stanislaus County deputies unleashed a brutal

26  assault, leaving him quadriplegic and eventually causing his death on September

27  10, 2023.

28       27.    Mr. Silva was outside the Riverbank Community Center at 3600 Santa

Fe Street, Riverbank, CA 95367, near a gazebo that is a public facility.

28.    At the time of the incident, Mr. Silva was a 39-year-old man.

29.    Mr. Silva is a high school graduate.

30.    For several years before the incident, he had been experiencing housing instability, and he was suffering from mental illness. The Deputy Does were familiar with Mr. Silva, and they were aware that he suffered from mental illness.

31.    The Deputy Does surrounded Mr. Silva and began harassing him, giving him orders and speaking to him aggressively despite the fact that Mr. Silva had committed no crime, and had a right to be where he was, on public property.

32.    The Deputy Does detained Mr. Silva without reasonable suspicion that he had committed any crime.

33.    At one point, one of the Deputy Does became angry and forcefully slammed Mr. Silva to head-first into the ground.

34.    The forceful takedown of Mr. Silva resulted in cervical fractures of his C6 and C7 vertebrae. In layman's terms, Mr. Silva's neck was broken.

35.    Due to his broken neck, Mr. Silva could not get back to his feet.

36.    Although Mr. Silva was clearly suffering from a severe injury, the Deputy Does did not promptly call paramedics.

37.    Instead, as Mr. Silva lay on the ground, Defendants began to move his injured body. First they moved him from the ground, sitting him upright at a park bench. Then they moved him from the bench to a picnic table.

38.    Moving Mr. Silva multiple times exacerbated his neck injury, resulting in permanent quadriplegia.

39.    The Deputy Does caused a delay in Mr. Silva's receipt of medical care, despite the obvious and urgent need.

40.    At all relevant times, Mr. Silva complied with the Deputy Does' commands and did not resist arrest.

41.     At all relevant times, the Deputy Does had no information that Mr. Silva posed any threat of injury to anyone, nor did they have information that Mr. Silva had actually injured anyone.

42.     Mr. Silva had in fact, not hurt anyone at any relevant time.

43.     At all relevant times, Defendant officers failed to warn Mr. Silva that they would begin using force against him, despite it being feasible to do so, and despite Mr. Silva's with the Deputy Does' commands.

44.     At all relevant times, Mr. Silva posed no imminent threat of bodily harm to the Deputy Does or anyone else.

45.     At all relevant times, Mr. Silva made no verbal threats to any officer or anyone else.

46.     At all relevant times, the Deputy Does could observe that Mr. Silva was unarmed and had no weapons in his possession.

47.     At all relevant times, the Deputy Does had no information that Mr. Silva had committed a crime unrelated to the alleged shoulder-check the officer claimed to have experienced.

48.     At all relevant times, the Deputy Does failed to make any effort to ascertain whether Mr. Silva was suffering from a medical problem or crisis requiring urgent treatment, as was obvious and in fact the case at the time.

49.     At all relevant times, the Deputy Does failed to take steps to de-escalate the situation or give Mr. Silva the opportunity to cooperate with their instructions or comply with their orders prior to assaulting him.

50.     As a result of the Deputy Does forceful takedown, restraint, and subsequent movement of his injured body, Mr. Silva suffered significant injuries, including a C6, C7 cervical fracture leading to permanent quadriplegia, skin abrasions on his arms, and various complications including pneumonia in both lower lobes of his lungs and blood clots.

51.     Due to the injuries inflicted by the actions of the Deputy Does, Mr.

1  Silva was forced to undergo endotracheal intubation. This procedure involves

2  inserting a flexible plastic tube through the patient's mouth and into the windpipe,

3  which is then connected to a ventilator to assist in breathing. It's often required

4  when individuals are unable to breathe independently due to severe injury or

5  illness.

6      52.    After suffering from his injuries for nearly a year, Mr. Silva died on

7  September 10, 2023. His death was caused by the Deputy Does' actions on August

8  8, 2023.

9                          **FIRST CLAIM FOR RELIEF**

10        **Fourth Amendment, Unlawful Detention (42 U.S.C. § 1983)**

11                      **Against Defendant Does 1–10**

12      53.    Plaintiff repeats and realleges each and every allegation in the

13  foregoing paragraphs of this Complaint with the same force and effect as if fully set

14  forth herein.

15      54.    The Deputy Does detained Mr. Silva without reasonable suspicion or

16  probable cause. At all relevant times, Defendant Does acted under color of state

17  law. The Deputy Does unreasonably seized Mr. Silva when they surrounded and

18  harassed him without reasonable suspicion that he had committed or was going to

19  commit any crime.

20      57.    In addition, the scope and manner of the detention was unreasonable.

21  It was not necessary to use force against Mr. Silva. It was certainly not necessary to

22  slam him to the ground head-first, breaking his neck in two places. Moreover, it

23  was not necessary to apply force to Mr. Silva's body after he was laying on the

24  ground unable to move.

25      58.    The conduct of the Deputy Does was done with reckless disregard for

26  the rights and safety of Mr. Silva and therefore warrants the imposition of

27  exemplary and punitive damages as to these defendants. As a direct result of the

28  unreasonable detention and arrest, Mr. Silva experienced severe pain and suffering

for which he is entitled to recover damages.

59.     As a result of their misconduct, the Deputy Does are liable for Mr. Silva's injuries and death, either because they were integral participants in the wrongful detention and arrest, or because they failed to intervene to prevent these violations.

60.     The Supervisor Does were aware of Mr. Silva's status as an unhoused individual suffering from mental illness. They were aware that Stanislaus Deputies, including the Deputy Does, frequently detained Mr. Silva and similarly situated individuals without reasonable suspicion. Their failure to properly supervise the Deputy Does by instructing them to cease such unconstitutional behavior was a contributing cause of Mr. Silva's injuries.

61.     Plaintiff brings this claim as successors-in-interest to Mr. Silva and seeks wrongful death and punitive damages under this claim; survival damages include pre-death pain and suffering damages.

62.     Plaintiff also seeks attorney's fees and costs for this claim, pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF

### Fourth Amendment, Excessive Force (42 U.S.C. § 1983)

### Against Defendant Does 1–10

63.     Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

64.     The Deputy Does use of force against Mr. Silva were excessive and unreasonable under the circumstances. These Defendants encountered Mr. Silva who may have been in the midst of a mental health crisis, and instead of providing the assistance he needed, they detained and severely battered him. At the time of the incident, Mr. Silva offered minimal resistance to the officers, made no attempt to flee, and had committed no serious crime.

65.     These Defendants' uses of force were further excessive in that Mr. Silva never physically injured them or anyone else before or after the officers assaulted him. Further, Mr. Silva never verbally threatened anyone, and never brandished a weapon.

66.     The unreasonable use of force by the Deputy Does deprived Mr. Silva of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Mr. Silva under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

67.     As a result, Mr. Silva suffered severe pain and suffering death. The Deputy Does are therefore liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

68.     As a result of the Deputy Does conduct, they are liable for Mr. Silva's injuries, either because they were integral participants in the use of excessive force, or because they failed to intervene to prevent these violations.

69.     The conduct of the Deputy Does was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Silva and therefore warrants the imposition of exemplary and punitive damages as to these Defendants.

70.     The Supervisor Does were aware of Mr. Silva's status as an unhoused individual suffering from mental illness. They were aware that Stanislaus Deputies, including the Deputy Does, frequently used excessive force against  individuals similarly situated to Mr. Silva without justification. Their failure to properly supervise the Deputy Does by instructing them to cease such unconstitutional conduct was a contributing cause of their unconstitutional use of excessive force and Mr. Silva's injuries.

71.     Plaintiff brings this claim as successors-in-interest to Mr. Silva and seeks wrongful death and punitive damages under this claim; survival damages include pre-death pain and suffering damages.

72.     Plaintiff also seeks attorney's fees and costs for this claim, pursuant to

1 | 42 U.S.C. § 1988.

2 | ### THIRD CLAIM FOR RELIEF

3 | **Fourth Amendment, Denial of Medical Care (42 U.S.C. § 1983)**

4 | **Against Defendant Does 1–6**

5 |     73.    Plaintiff repeats and realleges each and every allegation in the

6 | foregoing paragraphs of this Complaint with the same force and effect as if fully set

7 | forth herein.

8 |     74.    After slamming Mr. Silva head-first into the ground, breaking his neck

9 | in two places, the Deputy Does did not timely summon or provide medical

10 | attention to Mr. Silva.

11 |     75.    After being taken to the ground, Mr. Silva could not get back to his

12 | feet because his neck was broken in two places.

13 |     76.    Although Mr. Silva was clearly suffering from a severe injury, the

14 | Deputy Does did not promptly call paramedics.

15 |     77.    Instead, as Mr. Silva lay on the ground, Defendants began to move his

16 | injured body. First they moved him from the ground, sitting him upright at a park

17 | bench. Then they moved him from the bench to a picnic table.

18 |     78.    Moving Mr. Silva multiple times exacerbated his neck injury, resulting

19 | in permanent quadriplegia.

20 |     79.    The Deputy Does therefore caused a delay in Mr. Silva's receipt of

21 | medical care, despite the obvious and urgent need.

22 |     80.    The denial of medical care by the Deputy Does deprived Mr. Silva of

23 | his right to be secure in his persons against unreasonable searches and seizures as

24 | guaranteed to Mr. Silva under the Fourth Amendment to the United States

25 | Constitution and applied to state actors by the Fourteenth Amendment.

26 |     81.    As a result, Mr. Silva suffered severe pain and suffering and death.

27 | The Deputy Does are therefore liable to Plaintiff for compensatory damages under

28 | 42 U.S.C. § 1983.

82.     The Deputy Does knew that failure to provide timely medical treatment to Mr. Silva could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, exacerbating his pain and suffering.

83.     The conduct of the Deputy Does was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Silva and therefore warrants the imposition of exemplary and punitive damages as to these Defendants.

84.     Plaintiff brings this claim as successors-in-interest to Mr. Silva and seeks wrongful death and punitive damages under this claim; survival damages include pre-death pain and suffering damages.

85.     Plaintiff also seeks attorney's fees and costs for this claim, pursuant to 42 U.S.C. § 1988.

## FOURTH CLAIM FOR RELIEF

**Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

**Against Stanislaus County**

86.     Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

87.     As alleged above, the Deputy Does acted under color of state law, and their acts deprived Mr. Silva of his particular rights under the United States Constitution.

88.     On information and belief, the Deputy Does were not disciplined, reprimanded in connection with this incident.

89.     The Deputy Does, together with other Stanislaus County policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

    i.   Using excessive force, particularly by slamming individuals into the ground head-first, causing potential harm and injury;

ii.   Providing inadequate training with respect to the handling of individuals, particularly in situations that could lead to head and neck injuries;

iii.   Providing inadequate training regarding the appropriate response to neck injuries;

iv.   Employing and retaining as deputy sheriffs individuals such as the Deputy Does, whom Stanislaus County at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force, including head-first ground slams;

v.   Inadequately supervising, training, controlling, assigning, and disciplining deputies and other personnel, including the Deputy Does, whom Stanislaus County knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

vi.   Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by Stanislaus County deputies, particularly in relation to incidents involving head-first ground slams and inappropriate handling of neck injuries;

vii.   Failing to adequately discipline Stanislaus County deputies for the above-referenced categories of misconduct, including inadequate responses to incidents of head-first ground slams and improper handling of neck injuries;

viii.   Determining that unjustified uses of force, including head-first ground slams and improper handling of neck injuries, are within policy;

ix.   Even though in similar circumstances, head-first ground slams

have been determined by courts to be unconstitutional, Stanislaus County refuses to discipline, terminate, or retrain the officers involved in such incidents;

  x. Encouraging, accommodating, or facilitating a "blue code of silence," pursuant to which police officers do not report other officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing; and

  xi. Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police use-of-force incidents, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in the use of force and restraint of unarmed people, particularly in relation to incidents involving head-first ground slams and improper handling of neck injuries.

90. The aforementioned acts and omissions caused Mr. Silva's physical injuries and death.

91. Stanislaus County, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Mr. Silva and other individuals similarly situated.

92. By perpetrating, sanctioning, tolerating and ratifying the outrageous

1  conduct and other wrongful acts, Stanislaus officials acted with intentional,

2  reckless, and callous disregard for the constitutional rights of Mr. Silva.

3  Furthermore, the policies, practices, and customs implemented, maintained, and

4  still tolerated by Defendant County of Stanislaus were affirmatively linked to and

5  were a significantly influential force behind the Mr. Silva injuries and death.

6      93.    Plaintiff brings this claim as successors-in-interest to Mr. Silva and

7  seeks wrongful death and punitive damages under this claim; survival damages

8  include pre-death pain and suffering damages.

9      94.    Plaintiff also seeks attorney's fees and costs for this claim, pursuant to

10  42 U.S.C. § 1988.

11  **FIFTH CLAIM FOR RELIEF**

12  **Municipal Liability – Failure to Train (42 U.S.C. § 1983)**

13  **Against Stanislaus County**

14      95.    Plaintiff repeats and realleges each and every allegation in the

15  foregoing paragraphs of this Complaint with the same force and effect as if fully set

16  forth herein.

17      96.    As alleged above, the Deputy Does acted under color of state law, and

18  their acts deprived Mr. Silva of his particular rights under the United States

19  Constitution.

20      97.    The training policies of Stanislaus County were not adequate to train

21  its deputies to handle the usual and recurring situations with which they must deal.

22      98.    Defendants Stanislaus County and Supervisor Does were deliberately

23  indifferent to the obvious consequences of its failure to train its deputies

24  adequately.

25      99.    The failure of Defendants Stanislaus County and Supervisor Does to

26  provide adequate training caused the deprivation of the decedent's rights by the

27  Deputy Does; that is, the defendant's failure to train is so closely related to the

28  deprivation of the Mr. Silva's rights as to be the moving force that caused the

ultimate injury.

100.   By reason of the aforementioned acts and omissions caused Mr. Silva to suffer great physical harm and death.

101.   Plaintiff brings this claim as successors-in-interest to Mr. Silva and seeks wrongful death and punitive damages under this claim; survival damages include pre-death pain and suffering damages.

102.   Plaintiff also seeks attorney's fees and costs for this claim, pursuant to 42 U.S.C. § 1988.

### SIXTH CLAIM FOR RELIEF

### Municipal Liability – Ratification (42 U.S.C. § 1983)

### Against Stanislaus County

103.   Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

104.   As alleged above, the Deputy Does acted under color of state law, and their acts deprived Mr. Silva of his particular rights under the United States Constitution.

105.   Upon information and belief, a final policymaker, acting under color of law, who had final policymaking authority concerning the acts of the Deputy Does ratified (or will ratify) the acts of the Deputy Does and the bases for them. Upon information and belief, the final policymaker knew of and specifically approved of (or will specifically approve of) the acts of the Deputy Does.

106.   Upon information and belief, a final policymaker has determined (or will determine) that the acts of the Deputy Does were "within policy."

107.   On information and belief, the Deputy Does were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with this incident.

108.   Accordingly, Stanislaus County is liable to Plaintiff for compensatory

1   damages under 42 U.S.C. § 1983.

2   109.   Plaintiff brings this claim as successors-in-interest to Mr. Silva and

3   seeks wrongful death and punitive damages under this claim; survival damages

4   include pre-death pain and suffering damages.

5   110.   Plaintiff also seeks attorney's fees and costs for this claim, pursuant to

6   42 U.S.C. § 1988.

7   ## SEVENTH CLAIM FOR RELIEF

8   ### Americans with Disabilities Act (42 U.S.C. § 12132)

9   ### Against Stanislaus County

10   111.   Plaintiff repeats and realleges each and every allegation in the

11   foregoing paragraphs of this Complaint with the same force and effect as if fully set

12   forth herein.

13   112.   Mr. Silva was a "qualified individual," with a mental impairment that

14   substantially limited his ability to care for himself and control his mental, medical

15   or physical health condition as defined under the Americans with Disabilities Act

16   (ADA), 42 U.S.C. §12131 (2), and under Section 504 of the Rehabilitation Act of

17   1973, 29 U.S.C. §794.

18   113.   Stanislaus County is a covered entity for purposes of enforcement of

19   the ADA, 42 U.S.C. §12131 (2), and under Section 504 of the Rehabilitation Act of

20   1973, explicated by the regulations promulgated under each of these laws.

21   114.   Under the ADA, Stanislaus County is mandated to "develop an

22   effective, integrated, comprehensive system for the delivery of all services to

23   persons with mental disabilities and developmental disabilities. . ." and to ensure

24   "that the personal and civil rights" of persons are protected.

25   115.   Congress enacted the ADA upon a finding, among other things, that

26   "society has tended to isolate and segregate individuals with disabilities" and that

27   such forms of discrimination continue to be a "serious and pervasive social

28   problems." 42 U.S.C. §12101(a)(2).

116.   Stanislaus County is mandated under the ADA not to discriminate against any qualified individual on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. §12182 (a).

117.   Stanislaus County receives federal financial assistance for its Sheriff's Office, and therefore must comply with the mandates of the Rehabilitation Act, §504, which specifies that "program or activity" means all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government.

118.   Stanislaus County and other Defendants violated the ADA and the Rehabilitation Act, and deprived Mr. Silva of his federally and state protected rights by: (1) failing to properly train its deputies, dispatch staff and/or employees to peacefully respond, treat, and interact with disabled persons, such as Mr. Silva; and (2) failing to comply with the U.S. Department of Justice requirements regarding care, treatment and security to persons with mental disabilities, resulting in discrimination against Mr. Silva, under the ADA and the Rehabilitation Act.

119.   As a legal result of the acts and misconduct of the Defendants and each Defendant complained of herein, Mr. Silva suffered pain and suffering and eventual death.

120.   Plaintiff brings this claim as successors-in-interest to Mr. Silva and seeks wrongful death and punitive damages under this claim; survival damages include pre-death pain and suffering damages.

121.   Plaintiff also seeks attorney's fees and costs for this claim, pursuant to 42 U.S.C. § 1988.

### EIGHTH CLAIM FOR RELIEF

**False Arrest**

**Against All Defendants**

122.   Plaintiff repeats and realleges each and every allegation in the

foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

123.   The Deputy Does intentionally deprived Mr. Silva of his freedom of movement by use of force, threats of force, menace, fraud, deceit, and unreasonable duress. The Deputy Does did not have reasonable suspicion that Mr. Silva was engaged in any criminal activity, Mr. Silva was not engaged in any criminal activity at any point during this incident, and he did not in any way interfere with or obstruct the defendant officers' duties with respect to the incident. Mr. Silva did not knowingly or voluntarily consent to being detained.

124.   At the time of the unlawful detention of Mr. Silva, the Deputy Does were working as Stanislaus County deputies and were acting within the course and scope of their employment and duties.

125.   As a result of their misconduct, the Deputy Does are liable for Mr. Silva's injuries and death.

126.   The Supervisor Does were aware of Mr. Silva's status as an unhoused individual suffering from mental illness. They were aware that Stanislaus Deputies, including the Deputy Does, frequently arrested individuals similarly situated to Mr. Silva without probable cause. Their failure to properly supervise the Deputy Does by instructing them to cease such conduct was a contributing cause of Mr. Silva's injuries.

127.   Plaintiff brings this claim as successors-in-interest to Mr. Silva and seeks wrongful death and punitive damages under this claim; survival damages include pre-death pain and suffering damages.

128.   Plaintiff also seeks attorney's fees and costs for this claim, pursuant to 42 U.S.C. § 1988.

## NINTH CLAIM FOR RELIEF

### Battery

### Against All Defendants

129. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

130. Deputy Does physically assaulted Mr. Silva causing severe injuries including permanent quadriplegia.

131. Deputy Does use of force against Mr. Silva were excessive and unreasonable under the circumstances. These Defendants encountered Mr. Silva who may have been in the midst of a mental health crisis, and instead of providing the assistance he needed, they detained and severely battered him. At the time of the incident, Mr. Silva offered minimal resistance to the officers, made no attempt to flee, and had committed no serious crime.

132. The Deputy Does, while working for the Stanislaus County Sheriff's Department and acting within the course and scope of their duties, encountered Mr. Silva who may have been in the midst of a mental health crisis, and instead of providing the assistance he needed, they detained and severely physically assaulted him. At the time of the incident, Mr. Silva offered minimal resistance to the officers, made no attempt to flee, and had committed no serious crime.

133. The use of force and restraint against Mr. Silva was objectively unreasonable. At all relevant times, including when the Deputy Does slammed Mr. Silva to the ground, Mr. Silva did not pose a threat to anyone. Mr. Silva was offering minimal resistance, and had committed no crime. Additionally, Mr. Silva was unarmed during this incident.

134. As a result of the actions of the Deputy Does, Mr. Silva suffered severe injuries which eventually led to his death. The Deputy Does had no legal justification for using force against Mr. Silva, and their use of force while carrying

out their duties as a deputy sheriff was an unreasonable use of force.

135.   As a direct and proximate result of the conduct of the Deputy Does as alleged above, Mr. Silva suffered significant damages related to his physical and injuries and death.

136.   Stanislaus County is vicariously liable for the wrongful acts of the Deputy Does pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject her or her to liability.

137.   The Supervisor Does were aware of Mr. Silva's status as an unhoused individual suffering from mental illness. They were aware that Stanislaus Deputies, including the Deputy Does, frequently unjustifiably assault individuals similarly situated to Mr. Silva. Their failure to properly supervise the Deputy Does by instructing them to cease such conduct was a contributing cause of Mr. Silva's injuries.

138.   The conduct of the Deputy Does was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Mr. Silva, entitling him to an award of exemplary and punitive damages in addition to compensatory damages.

139.   Plaintiff brings this claim as successors-in-interest to Mr. Silva and seeks wrongful death and punitive damages under this claim; survival damages include pre-death pain and suffering damages.

140.   Plaintiff also seeks attorney's fees and costs for this claim, pursuant to 42 U.S.C. § 1988.

## TENTH CLAIM FOR RELIEF

### Negligence (Wrongful Death and Survival)

### Against All Defendants

141.   Plaintiff repeats and realleges each and every allegation in the

foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

142.   The Deputy Does have a duty to use reasonable care to prevent harm or injury to others. This duty includes using appropriate tactics, giving appropriate commands, giving warnings, and not using any force unless necessary, using less than lethal options, and only using deadly force as a last resort.

143.   The Deputy Does breached this duty of care. The actions and inactions of the Deputy Does were negligent and reckless, including but not limited to:

     i.   Surrounding and harassing Mr. Silva without any reasonable suspicion of a crime being committed.

     ii.   Speaking to Mr. Silva aggressively and giving him orders despite his right to be on public property.

     iii.   Detaining Mr. Silva without any reasonable suspicion of a crime.

     iv.   Forcefully slamming Mr. Silva head-first into the ground, resulting in a broken neck.

     v.   Failing to promptly call paramedics despite Mr. Silva's obvious severe injury.

     vi.   Moving Mr. Silva's injured body multiple times, exacerbating his neck injury and resulting in permanent quadriplegia.

     vii.   Causing a delay in Mr. Silva's receipt of medical care, despite the obvious and urgent need.

144.   As a direct and proximate result of Defendants conduct as alleged above, and other undiscovered negligent conduct, Mr. Silva was caused to suffer severe pain and suffering and was rendered permanently quadriplegic.

145.   Stanislaus County is vicariously liable for the wrongful acts of the Deputy Does pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees

1  within the scope of the employment if the employee's act would subject her or her
2  to liability.

3      146.   The Supervisor Does were aware of Mr. Silva's status as an unhoused
4  individual suffering from mental illness. They were aware that Stanislaus Deputies,
5  including the Deputy Does, frequently unjustifiably assault individuals similarly
6  situated to Mr. Silva. They were negligent in their failure to properly supervise the
7  Deputy Does by instructing them to cease such conduct. And their negligence was
8  a contributing cause of the Deputy Does' actions and of Mr. Silva's injuries and
9  death.

10     147.   Plaintiff brings this claim as successors-in-interest to Mr. Silva and
11 seeks wrongful death and punitive damages under this claim; survival damages
12 include pre-death pain and suffering damages.

13     148.   Plaintiff also seeks attorney's fees and costs for this claim, pursuant to
14 42 U.S.C. § 1988.

15              **ELEVENTH CLAIM FOR RELIEF**
16         **Intentional Infliction of Emotional Distress**
17                 **Against All Defendants**

18     149.   Plaintiff repeats and realleges each and every allegation in the
19 foregoing paragraphs of this Complaint with the same force and effect as if fully set
20 forth herein.

21     150.   The conduct of the Deputy Does, as set forth herein, was extreme and
22 outrageous and beyond the scope of conduct which should be tolerated by citizens
23 in a democratic and civilized society.

24     151.   Defendants committed these extreme and outrageous acts with the
25 intent to inflict severe mental and emotional distress upon Mr. Silva.

26     152.   As a proximate result of Defendants' willful, intentional and malicious
27 conduct, Decedent suffered severe and extreme mental and emotional distress.

28     153.   Plaintiff brings this claim as successors-in-interest to Mr. Silva and

seeks survival damages.

154.   Plaintiff also seeks attorney's fees and costs for this claim, pursuant to 42 U.S.C. § 1988.

## TWELFTH CLAIM FOR RELIEF

### Violation of Cal. Civil Code § 52.1

### Against All Defendants

155.   Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

156.   California Civil Code, Section 52.1 (the Bane Act), prohibits any person from using violent acts or threatening to commit violent acts in retaliation against another person for exercising that person's constitutional rights.

157.   On information and belief, the Deputy Does, while working for the Stanislaus County and acting within the course and scope of their duties, intentionally committed acts of violence against Mr. Silva, including breaking his neck by slamming him to the ground head-first, all without justification or excuse, or by integrally participating and failing to intervene in the above violence, and by denying him necessary medical care. The Deputy Does' intent to violate Mr. Silva's constitutional rights is demonstrated by their reckless disregard for Mr. Silva's constitutional rights.

158.   The Deputy Does' use of extreme force and subsequent mistreatment of Mr. Silva's injured body interfered with his civil rights to be free from unreasonable searches and seizures, and his right to medical care to mitigate caused by the deputies use of force.

159.   On information and belief, the Deputy Does intentionally and spitefully committed the above acts to discourage Mr. Silva from exercising his civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights, which he was fully entitled to enjoy.

160. On information and belief, Mr. Silva reasonably believed and understood that the violent acts committed by the Deputy Does were intended to discourage him from exercising the above civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights.

161. The conduct of the Deputy Does was a substantial factor in causing Mr. Silva's harms, losses, injuries, and death.

162. Stanislaus County is vicariously liable for the wrongful acts of the Deputy Does pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

163. The conduct of the Deputy Does was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Silva.

164. Plaintiff brings this claim as successors-in-interest to Mr. Silva and seeks wrongful death and punitive damages under this claim; survival damages include pre-death pain and suffering damages.

165. Plaintiff also seeks attorney's fees and costs for this claim, pursuant to 42 U.S.C. § 1988.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Dorothey Heimbach requests entry of judgment in her favor and against Defendants Stanislaus County and Stanislaus Sheriff Deputies, Does 1–10, as follows:

1. For compensatory damages according to proof at trial, including: survival damages, not limited to pre-death pain and suffering and loss life under federal and state law; and wrongful death damages under federal and state law;

2. For funeral and burial expenses, and loss of financial support;

3. For loss of consortium;

4. For punitive and exemplary damages against Does 1-10

5.      For statutory damages;

6.      For reasonable attorneys' fees including litigation expenses;

7.      For costs of suit and interest incurred; and

8.      For such further other relief as the Court may deem just, proper, and appropriate.

DATED: November 21, 2023          LAW OFFICES OF DALE K. GALIPO

_____
Dale K. Galipo
*Attorney for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED: November 21, 2023          LAW OFFICES OF DALE K. GALIPO

_____
Dale K. Galipo
*Attorney for Plaintiff*

-25-
COMPLAINT FOR DAMAGES