**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

**LAW OFFICES OF DEAN PETRULAKIS**
Dean Petrulakis, Esq. (Bar No. 192185)
1600 G Street, Suite 202
Modesto, CA 95354
Tel: (209) 522-6600

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DOROTHEY HEIMBACH, individually and as successor in interest to Anthony Silva,<br><br>          Plaintiff,<br><br>     vs.<br><br>STANISLAUS COUNTY; and ~~DOES 1–10~~ JUSTIN CAMARA, ZA XIONG, and ERIC BAVARO, in their individual capacities,<br><br>          Defendants. | Case No. 2:23-cv-01887-DJC-KJN<br><br>~~FIRST~~ SECOND AMENDED COMPLAINT<br><br><u>Federal Law Claims</u><br>1.  Fourth Amendment, Unlawful Detention (42 U.S.C. § 1983)<br>2.  Fourth Amendment, Excessive Force (42 U.S.C. § 1983)<br>~~2.~~3.  Fourteenth Amendment, Denial of Familial Relationship (42 U.S.C. § 1983)<br>~~3.~~4.  Fourth Amendment, Denial of Medical Care (42 U.S.C. § 1983)<br>~~4.~~5.  Municipal Liability, Unconstitutional Custom or Policy (42 U.S.C. § 1983)<br>~~5.~~6.  Municipal Liability, Failure to Train (42 U.S.C. § 1983)<br>6.  Municipal Liability – Ratification (42 U.S.C. § 1983)<br>7.  ~~Americans with Disabilities Act (42 U.S.C. § 12132)~~<br>7.<br><u>State Law Claims</u><br>8.  False Arrest<br>~~8.~~9.  Battery |

Formatted: Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at:  0.1" + Tab after:  0.44" + Indent at:  0.44"

9.10.  Negligence

10.11.      Violation of Cal. Civil Code § 52.1

**DEMAND FOR JURY TRIAL**

-1-

COMPLAINT FOR DAMAGES

1  **COMPLAINT FOR DAMAGES**

2       COME NOW Plaintiff Dorothey Heimbach for her Second Amended

3  Complaint against Defendants Stanislaus County and Stanislaus Sheriff Deputies,

4  Justin Camara, Za Xiong, and Eric Bavaro~~Does 1–10~~, sued in their individual

5  capacities, alleging as follows:

6  **JURISDICTION AND VENUE**

7       1.    This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and

8  1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United

9  States, including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of

10  the United States Constitution.

11       2.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because

12  Defendants reside in this district and all incidents, events, and occurrences giving

13  rise to this action occurred in this district.

14  **INTRODUCTION**

15       3.    On the afternoon of October 8, 2022, the ordinary life of Plaintiff

16  Dorothey Heimbach's son, Anthony Silva, was catastrophically and irrevocably

17  shattered. From the peaceful setting of a public gazebo emerged an episode of gut-

18  wrenching brutality meted out by the very individuals entrusted with his protection:

19  deputies of the Stanislaus County Sheriff's Department.

20       4.    In an unjustified and excessive display of force, these deputies , whose

21  identities are yet to be ascertained, forcibly slammed Mr. Silva to the ground, head

22  first. This violent act caused severe cervical fractures at the C6 and C7 vertebrae of

23  Mr. Silva's neck. These injuries rendered Mr. Silva quadriplegic and caused , He

24  died of the injurieshis death one year later, on September 10, 2023.

25       5.    After breaking his neck, Tto add to the severity of their misconduct,

26  the deputies, in clear disregard for Mr. Silva's visibly deteriorating condition,

27  proceeded to move him around—first lifting him from the ground to a park bench

28  and later, from the bench to a picnic table. Every shift, every jostle, every moment

of delay in getting professional medical help intensified Mr. Silva's injuries, exacerbating the damage to his cervical vertebrae and directly contributing to his quadriplegia and death.

6.      These tragic events are a direct consequence of the deeply flawed policies and practices at the Stanislaus County Sheriff's Department. The department's inadequate and deficient training procedures have not only failed to prevent such instances of excessive force, but also, the department has ratified the unconstitutional conduct of their officers time and time again.

## PARTIES

7.      At all relevant times, Decedent Anthony Silva was an individual residing in the City of Riverbank, California.

8.      Plaintiff Dorothey Heimbach is an individual ~~who was~~ residing in Riverbank, California. She is the natural mother of Mr. Silva; she sues under federal and state law in her individual capacity and as successor-in-interest to Mr. Silva. Plaintiff is Mr. Silva's successor-in-interest pursuant to California Code of Civil Procedure §§377.30 and 377.60.

9.      Stanislaus County is a political subdivision of the State of California, and in doing the acts alleged was acting as such, rather than as an "arm of the state" for Eleventh Amendment immunity purposes.

10.      Stanislaus County is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Stanislaus County Sheriff's Department and its agents and employees. At all relevant times, Stanislaus County was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the Stanislaus County Sheriff's Department and its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, Stanislaus County was the employer of Defendants Justin Camara, Za Xiong, and Eric Bavaro ~~Does 1–10~~ ("~~Defendant Does~~ Defendant Deputies").

11.   ~~Defendant Does 1-6 ("Deputy Does")~~Defendant Deputies are deputy sheriffs working for the Stanislaus County Sheriff's Department. At all relevant times, ~~Doe Deputies~~they were acting under color of law within the course and scope of their duties as sheriff's deputies for the Stanislaus County Sheriff's Department. ~~The Deputy Does~~Defendant Deputies were acting with the complete authority and ratification of their principal, Stanislaus County.

~~12.   Defendant Does 7-10 ("Supervisor Does") are managerial, supervisorial, and policymaking employees of the Stanislaus County Sheriff's Department, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the Stanislaus County Sheriff's Department. Supervisor Does were acting with the complete authority and ratification of their principal, Stanislaus County.~~

~~13.~~12. On information and belief, ~~the Defendant Does~~Defendant Deputies were residents of the County of Stanislaus.

~~14.   In doing the acts and failing and omitting to act as hereinafter described, the Deputy Does were acting on the implied and actual permission and consent of the Supervisor Does.~~

~~15.~~13. In doing the acts and failing and omitting to act as hereinafter described, ~~all Defendant Does~~Defendant Deputies were acting on the implied and actual permission and consent of Stanislaus County.

~~16.   The true names and capacities, whether individual, corporate, association, or otherwise of Defendant Does are unknown to Plaintiff, who otherwise would not sue these Defendants by such fictitious names. Plaintiff will seek leave to amend her complaint to show the true names and capacities of these Defendants when they have been ascertained. Each of the fictitiously-named Defendants is responsible in some manner for the conduct or liabilities alleged herein.~~

~~17.~~14. At all times mentioned herein, ~~Defendant Does~~Defendant Deputies

COMPLAINT FOR DAMAGES

1    were the agents of Stanislaus County. Stanislaus and the Stanislaus Sheriff's

2    Department The Supervisor Does had the legal duty to oversee and supervise the

3    hiring, conduct, and employment of the Deputy DoesDefendant Deputies.

4        18.15.All of the acts complained of herein by Plaintiff against Defendants

5    were done and performed by said Defendants. Stanislaus County and the

6    Supervisor Does acted by and through their-its authorized agents, servants, and/or

7    employees, all of whom at all relevant times herein were acting within the course,

8    purpose, and scope of said agency, service, and/or employment capacity. Moreover,

9    Stanislaus Count and the Supervisor Does and their agents ratified all of the acts

10    complained of herein.

11        19.16.Defendant DoesDefendant Deputies are sued in their individual

12    capacities.

13        20.17.On or around February 2, 2023, Mr. Silva filed comprehensive and

14    timely claims for damages with Stanislaus County pursuant to applicable sections

15    of the California Government Code.

16        21.18.On March 16, 2023, Stanislaus County rejected the claims.

17        22.19.Mr. Silva filed his timely complaint in this case on August 31, 2023.

18    (ECF No. 1.)

19        23.20.Shortly thereafter, on September 10, 2023, Mr. Silva died from his

20    injuries.

21        24.21.Plaintiff Dorothey Heimbach, Mr. Silva's mother, served her timely

22    claims for damages with Stanislaus County pursuant to applicable sections of the

23    California Government Code on October 6, 2023.

24        25.22.As of today, Plaintiff has not received a response to her claim. And

25    because it has been more than 45 days since service of the claim, the claim is

26    deemed rejected by operation of law and Plaintiff may file her complaint. Gov.

27    Code, § 945.6(a)(2).

28               **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

26.23. On the afternoon of October 8, 2022, Decedent Anthony Silva's life was irrevocably altered when Stanislaus County deputies unleashed a brutal assault, leaving him quadriplegic and eventually causing his death on September 10, 2023.

27.24. Mr. Silva was outside the Riverbank Community Center at 3600 Santa Fe Street, Riverbank, CA 95367, near a gazebo that is a public facility.

28.25. At the time of the incident, Mr. Silva was a 39-year-old man.

29.26. Mr. Silva is a high school graduate.

30.27. For several years before the incident, he had been experiencing housing instability, and he was suffering from mental illness. The Deputy Does were familiar with Mr. Silva, and they were aware that he suffered from mental illness.

31.   The Deputy DoesDeputies CAMARA and XIONG approachedsurrounded Mr. Silva and immediately executed a forceful takedown and arrest, thought Mr. Silva offered no resistance, was not suspected of a serious crime, and was not a threat to anyone.began harassing him, giving him orders and speaking to him aggressively despite the fact that Mr. Silva had committed no crime, and had a right to be where he was, on public property.

28.

29.   Deputies CAMARA and XIONG The Deputy Does detained Mr. Silva without reasonable suspicion that he had committed any crime.

32.30. Deputies CAMARA and XIONG led Mr. Silva to the nearby gazebo and Deputy BAVARO met them there.

33.31. During their conversation with Mr. Silva, Deputy CAMARAAt one point, one of the Deputy Does became angry and forcefully slammed Mr. Silva to head-first into the ground with help from Deputies XIONG and BAVARO.

34.32. The forceful takedown of Mr. Silva resulted in cervical fractures of his C6 and C7 vertebrae. In layman's terms, Mr. Silva's neck was broken.

35.33. Due to his broken neck, Mr. Silva could not get back to his feet. Mr. Silva immediately told the deputies, "I'm paralyzed."

36.34. Although Mr. Silva was clearly suffering from a severe injury, the Deputy DoesDefendant Deputies did not promptly call paramedics.

37.35. Instead, as Mr. Silva lay on the ground, Deputies CAMARA and XIONG Defendants began to move his injured body. Without giving his neck any support, First tthey carried his limp body to a nearby picnic table and sat him upright. moved him from the ground, sitting him upright at a park bench. Then they moved him from the bench to a picnic table.

38.36. Moving Mr. Silva multiple times exacerbated his neck injury, resulting in permanent quadriplegia.

39.37. The Deputy DoesDefendant Deputies caused a delay in Mr. Silva's receipt of medical care, despite the obvious and urgent need.

40.38. At all relevant times, Mr. Silva complied with the Deputy DoesDefendant Deputies' commands and did not resist arrest.

41.39. At all relevant times, the Deputy DoesDefendant Deputies had no information that Mr. Silva posed any threat of injury to anyone, nor did they have information that Mr. Silva had actually injured anyone.

42.40. Mr. Silva had in fact, not hurt anyone at any relevant time.

43.41. At all relevant times, Defendant officersBefore breaking his neck, the deputies did not failed to warn Mr. Silva that they would begin using force against him, despite it being feasible to do so, and despite Mr. Silva's compliance with the Deputy DoesDefendant Deputies' commands.

44.42. At all relevant times, Mr. Silva posed no imminent threat of bodily harm to the Deputy DoesDefendant Deputies or anyone else.

45.43. At all relevant times, Mr. Silva made no verbal threats to any officer or anyone else.

46.44. At all relevant times, the Deputy DoesDefendant Deputies could

observe that Mr. Silva was unarmed and had no weapons in his possession.

47.45. At all relevant times, the ~~Deputy Does~~Defendant Deputies had no information that Mr. Silva had committed a crime unrelated to the alleged shoulder-check the officer claimed to have experienced.

48.46. At all relevant times, the ~~Deputy Does~~Defendant Deputies failed to make any effort to ascertain whether Mr. Silva was suffering from a medical problem or crisis requiring urgent treatment, as was obvious and in fact the case at the time.

49.47. At all relevant times, the ~~Deputy Does~~Defendant Deputies failed to take steps to de-escalate the situation or give Mr. Silva the opportunity to cooperate with their instructions or comply with their orders prior to assaulting him.

50.48. As a result of the ~~Deputy Does~~Defendant Deputies' forceful takedown, restraint, and subsequent movement of his injured body, Mr. Silva suffered significant injuries, including a C6, C7 cervical fracture leading to permanent quadriplegia, skin abrasions on his arms, and various complications including pneumonia in both lower lobes of his lungs and blood clots.

~~51.~~ After the incident, Mr. Silva never left the hospital. ~~Due to the injuries inflicted by the actions of the Deputy Does, Mr. Silva was forced to undergo endotracheal intubation. This procedure involves inserting a flexible plastic tube through the patient's mouth and into the windpipe, which is then connected to a ventilator to assist in breathing. It's often required when individuals are unable to breathe independently due to severe injury or illness.~~

~~52.~~49. After suffering from his injuries for nearly a year, Mr. Silva died on September 10, 2023. His death was caused by the ~~Deputy Does~~Defendant Deputies' inexcusable actions on August 8, 2023.

**FIRST CLAIM FOR RELIEF**

**Fourth Amendment, Unlawful Detention (42 U.S.C. § 1983)**

1   **Against** ~~Defendant Does~~JUSTIN CAMARA and ZA XIONG ~~1–10~~

2   ~~53.~~50.Plaintiff repeats and realleges each and every allegation in the

3   foregoing paragraphs of this Complaint with the same force and effect as if fully set

4   forth herein.

5   54.51.The ~~Deputy Does~~Defendant Deputies detained Mr. Silva without

6   reasonable suspicion or probable cause.

7   55.52. At all relevant times, ~~Defendant Does~~Defendant Deputies acted under

8   color of state law.

9   53.    The ~~Deputy Does~~Defendant Deputies unreasonably seized Mr. Silva

10  when they surrounded and harassed him without reasonable suspicion that he had

11  committed or was going to commit any crime.

12  ~~56.~~

13  ~~57.~~54. In addition, the scope and manner of the detention was unreasonable.

14  It was not necessary to use force against Mr. Silva. It was certainly not necessary to

15  slam him to the ground head-first, breaking his neck in two places. Moreover, it

16  was not necessary to apply force to Mr. Silva's body after he was laying on the

17  ground unable to move.

18  ~~58.~~55.The conduct of the ~~Deputy Does~~Deputies CAMARA and XIONG

19  was done with reckless disregard for the rights and safety of Mr. Silva and

20  therefore warrants the imposition of exemplary and punitive damages as to these

21  defendants. As a direct result of the unreasonable detention and arrest, Mr. Silva

22  experienced severe pain and suffering for which he is entitled to recover damages.

23  ~~59.~~56.As a result of their misconduct, the ~~Deputy Does~~Defendant Deputies

24  are liable for Mr. Silva's injuries and death, either because they are directly liable,

25  ~~were~~ integral participants in the wrongful detention and arrest, or because they

26  failed to intervene to prevent these violations.

27  ~~60.    The Supervisor Does were aware of Mr. Silva's status as an unhoused~~

28  ~~individual suffering from mental illness. They were aware that Stanislaus Deputies,~~

-9-
COMPLAINT FOR DAMAGES

1  including the Deputy Does, frequently detained Mr. Silva and similarly situated

2  individuals without reasonable suspicion. Their failure to properly supervise the

3  Deputy Does by instructing them to cease such unconstitutional behavior was a

4  contributing cause of Mr. Silva's injuries.

5  61.57. Plaintiff brings this claim as successors-in-interest to Mr. Silva and

6  seeks wrongful death and punitive damages under this claim; survival damages

7  include pre-death pain and suffering damages.survival damages, including but not

8  limited to pre-death pain and suffering, loss of life, loss of opportunity of life, and

9  loss of enjoyment of life, under this claim. Plaintiff also seeks attorneys' fees and

10  costs under this claim.

11  62.58. Plaintiff also seeks attorney's punitive damages against Deputies

12  CAMARA and XIONG  fees and costs for this claim, pursuant to 42 U.S.C. §

13  1988.

14  **SECOND CLAIM FOR RELIEF**

15  **Fourth Amendment, Excessive Force (42 U.S.C. § 1983)**

16  **Against JUSTIN CAMARA, ZA XIONG, and ERIC BAVARO Defendant**

17  **Does 1-10**

18  63.59. Plaintiff repeats and realleges each and every allegation in the

19  foregoing paragraphs of this Complaint with the same force and effect as if fully set

20  forth herein.

21  64.60. The Deputy DoesDefendant Deputies use of force against Mr. Silva

22  were excessive and unreasonable under the circumstances. They used deadly force

23  despite the fact that These Defendants encountered Mr. Silva who may have been

24  in the midst of a mental health crisis, and instead of providing the assistance he

25  needed, they detained and severely battered him. Aat the time of the incident, Mr.

26  Silva offered minimal resistance to the officers, made no attempt to flee, and had

27  committed no serious crime.

28  61.  These Defendants' uses of force were further excessive in that Mr.

Formatted: _Custom Paragraph 1, Indent: Left: 0", First line: 0.5", Right: -0.03", Numbered + Level: 2 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.75" + Indent at: 1", No widow/orphan control

1  Silva never physically injured them or anyone else before or after the officers

2  assaulted him. Further, Mr. Silva never verbally threatened anyone, and never

3  brandished a weapon.

4      ~~65.~~62. Mr. Silva was fully restrained in handcuffs and he had been searched,

5  so the deputies knew he did not possess any form of weapon.

6      ~~66.~~63. The unreasonable use of force by the ~~Deputy Does~~Defendant

7  Deputies deprived Mr. Silva of his right to be secure in his person against

8  unreasonable searches and seizures as guaranteed to Mr. Silva under the Fourth

9  Amendment to the United States Constitution and applied to state actors by the

10 Fourteenth Amendment.

11     ~~67.~~64. As a result, Mr. Silva suffered severe pain and suffering death. The

12 ~~Deputy Does~~Defendant Deputies are therefore liable to Plaintiff for compensatory

13 damages under 42 U.S.C. § 1983.

14     65.    As a result of the ~~Deputy Does~~Defendant Deputies conduct, they are

15 liable for Mr. Silva's injuries, either because they were integral participants in the

16 use of excessive force, or because they failed to intervene to prevent these

17 violations.

18     ~~68.~~66. Deputies CAMARA, XIONG, and BAVARO all participated in the

19 deadly take-down of Mr. Silva.

20     ~~69.~~67. The conduct of the ~~Deputy Does~~Defendant Deputies was willful,

21 wanton, malicious, and done with reckless disregard for the rights and safety of Mr.

22 Silva and therefore warrants the imposition of exemplary and punitive damages as

23 to these Defendants.

24     ~~70.~~68. ~~The Supervisor Does were~~Stanislaus Sheriff Department employees,

25 agents and supervisors were aware of Mr. Silva's status as an unhoused individual

26 suffering from mental illness. They were aware that Stanislaus Deputies, including

27 the ~~Deputy Does~~Defendant Deputies, frequently used excessive force against

28 individuals similarly situated to Mr. Silva without justification. Their failure to

-11-
COMPLAINT FOR DAMAGES

properly supervise the ~~Deputy Does~~Defendant Deputies by instructing them to cease such unconstitutional conduct was a contributing cause of their unconstitutional use of excessive force and Mr. Silva's injuries.

~~71.~~69. Plaintiff brings this claim as successors-in-interest to Mr. Silva and seeks survival damages, including but not limited to pre-death pain and suffering, loss of life, loss of opportunity of life, and loss of enjoyment of life, under this claim. Plaintiff seeks punitive damages under this claim. ~~wrongful death and punitive damages under this claim; survival damages include pre-death pain and suffering damages.~~

~~72.~~70. Plaintiff also seeks attorney's fees and costs for this claim, pursuant to 42 U.S.C. § 1988.

## THIRD CLAIM FOR RELIEF

### Fourth Amendment, Denial of Medical Care (42 U.S.C. § 1983)

### Against JUSTIN CAMARA, ZA XIONG, and ERIC BAVARO~~Defendant Does 1-6~~

~~73.~~71. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

~~74.~~72. After slamming Mr. Silva head-first into the ground, breaking his neck in two places, the ~~Deputy Does~~Defendant Deputies did not timely summon or provide medical attention to Mr. Silva.

~~75.~~73. After being taken to the ground, Mr. Silva could not get back to his feet because his neck was broken in two places.

~~76.~~74. Although Mr. Silva was clearly suffering from a severe injury, the ~~Deputy Does~~Defendant Deputies did not promptly call paramedics.

75. Instead, as Mr. Silva lay on the ground, Deputies CAMARA and XIONG began to move his injured body. Without giving his neck any support, they carried his limp body to a nearby picnic table and sat him upright.

1   77.   Instead, as Mr. Silva lay on the ground, Defendants began to move his
2   injured body. First they moved him from the ground, sitting him upright at a park
3   bench. Then they moved him from the bench to a picnic table.

4   78.76. Moving Mr. Silva multiple times exacerbated his neck injury, resulting
5   in permanent quadriplegia.

6   79.77. The Deputy DoesDefendant Deputies therefore caused a delay in Mr.
7   Silva's receipt of medical care, despite the obvious and urgent need.

8   80.78. The denial of medical care by the Deputy DoesDefendant Deputies
9   deprived Mr. Silva of his right to be secure in his persons against unreasonable
10  searches and seizures as guaranteed to Mr. Silva under the Fourth Amendment to
11  the United States Constitution and applied to state actors by the Fourteenth
12  Amendment.

13  81.79. As a result, Mr. Silva suffered severe pain and suffering and death.
14  The Deputy DoesDefendant Deputies are therefore liable to Plaintiff for
15  compensatory damages under 42 U.S.C. § 1983.

16  82.80. The Deputy DoesDefendant Deputies knew that failure to provide
17  timely medical treatment to Mr. Silva could result in further significant injury or
18  the unnecessary and wanton infliction of pain, but disregarded that serious medical
19  need, exacerbating his pain and suffering.

20  83.81. The conduct of the Deputy DoesDefendant Deputies was willful,
21  wanton, malicious, and done with reckless disregard for the rights and safety of Mr.
22  Silva and therefore warrants the imposition of exemplary and punitive damages as
23  to these Defendants.

24  84.82. Plaintiff brings this claim as successors-in-interest to Mr. Silva and
25  seeks wrongful death and punitive damages under this claim; survival damages
26  include pre-death pain and suffering damages.

27  83.   Plaintiff also seeks attorney's fees and costs for this claim, pursuant to
28  42 U.S.C. § 1988.

**FOURTH CLAIM FOR RELIEF**

**Fourteenth Amendment, Denial of Familial Relationship (42 U.S.C. § 1983)**

**Against JUSTIN CAMARA, ZA XIONG, and ERIC BAVARO**

84.   Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

85.   DOROTHEY HEIMBACH had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in DOROTHEY HEIMBACH's familial relationship with her son, Mr. Silva.

86.   Defendants CAMARA, XIONG, and BAVARO acted within the course and scope of his employment as deputies for the Defendant COUNTY and acted under color of state law.

87.   The aforementioned actions of Defendant Deputies shock the conscience, in that he acted with deliberate indifference to the constitutional rights of Mr. Silva and DOROTHEY HEIMBACH, and with a purpose to harm unrelated to any legitimate law enforcement objective.

88.   As a direct and proximate result of these actions, Mr. Silva experienced pain and suffering and eventually died. Defendant Deputies thus violated the substantive due process rights of Plaintiff to be free from unwarranted interference with her familial relationship with Mr. Silva.

89.   As a direct and proximate cause of the acts of Defendant Deputies, Plaintiff has also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Mr. Silva, and will continue to be so deprived for the remainder of her natural life.

90.   Defendant Deputies are directly liable for Mr. Silva's injuries and

-14-

COMPLAINT FOR DAMAGES

death.

91.    Plaintiffs bring this claim individually and seek wrongful death damages for the violation of their rights. Plaintiffs also seek attorney's fees and costs under this claim.

92.    The conduct of Defendant Deputies was malicious, wanton, oppressive, and carried out with conscious disregard for the rights of both the Plaintiff's and the Mr. Silva. Defendant Deputies intentionally deprived and violated their constitutional rights, or acted with reckless disregard for those rights. As such, this conduct entitles the Plaintiff to an award of exemplary and punitive damages from Defendant Deputies.

85.

**FOURTH FIFTH CLAIM FOR RELIEF**

**Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

**Against Stanislaus County**

86.93.Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

87.94.As alleged above, the Deputy DoesDefendant Deputies acted under color of state law, and their acts deprived Mr. Silva of his particular rights under the United States Constitution.

88.95.On information and belief, the Deputy DoesDefendant Deputies were not disciplined, reprimanded in connection with this incident.

89.    The Deputy DoesDefendant Deputies, together with other Stanislaus County policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

Using excessive force, particularly by slamming individuals into the ground head-first, causing potential harm and injury;

96.

-15-
COMPLAINT FOR DAMAGES

a.  Using excessive force, particularly by slamming individuals into the ground head-first, causing potential harm and injury;

b.  Providing inadequate training with respect to the handling of individuals, particularly in situations that could lead to head and neck injuries;

c.  Providing inadequate training regarding the appropriate response to neck injuries;

d.  Employing and retaining as deputy sheriffs individuals such as the Defendant Deputies, whom Stanislaus County at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force, including head-first ground slams;

e.  Inadequately supervising, training, controlling, assigning, and disciplining deputies and other personnel, including the Defendant Deputies, whom Stanislaus County knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

f.  ave known had the aforementioned propensities and character traits;

g.  Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by Stanislaus County deputies, particularly in relation to incidents involving head-first ground slams and inappropriate handling of neck injuries;

h.  Failing to adequately discipline Stanislaus County deputies for the above-referenced categories of misconduct, including inadequate responses to incidents of head-first ground slams and improper handling of neck injuries;

Formatted: Font: 14 pt

-16-
COMPLAINT FOR DAMAGES

i.   Determining that unjustified uses of force, including head-first ground slams and improper handling of neck injuries, are within policy;

j.   Even though in similar circumstances, head-first ground slams have been determined by courts to be unconstitutional, Stanislaus County refuses to discipline, terminate, or retrain the officers involved in such incidents;

k.   Encouraging, accommodating, or facilitating a "blue code of silence," pursuant to which police officers do not report other officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing; and

l.    code, the officer being questioned will claim ignorance of the other officers' wrongdoing; and

m.   Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police use-of-force incidents, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in the use of force and restraint of unarmed people, particularly in relation to incidents involving head-first ground slams and improper handling of neck injuries.

i.   Providing inadequate training with respect to the handling of individuals, particularly in situations that could lead to head and neck injuries;

ii.  Providing inadequate training regarding the appropriate response to neck injuries;

iii. Employing and retaining as deputy sheriffs individuals such as the Deputy

Formatted: Justified

Formatted: Justified, No bullets or numbering

1  Does, whom Stanislaus County at all times material herein knew or reasonably
2  should have known had dangerous propensities for abusing their authority and for
3  using excessive force, including head-first ground slams;

4  v.     Inadequately supervising, training, controlling, assigning, and disciplining
5  deputies and other personnel, including the Deputy Does, whom Stanislaus County
6  knew or in the exercise of reasonable care should have known had the
7  aforementioned propensities and character traits;

8  v.     Maintaining grossly inadequate procedures for reporting, supervising,
9  investigating, reviewing, disciplining and controlling misconduct by Stanislaus
10 County deputies, particularly in relation to incidents involving head-first ground
11 slams and inappropriate handling of neck injuries;

12 i.     Failing to adequately discipline Stanislaus County deputies for the above-
13 referenced categories of misconduct, including inadequate responses to incidents of
14 head-first ground slams and improper handling of neck injuries;

15 ii.     Determining that unjustified uses of force, including head-first ground slams
16 and improper handling of neck injuries, are within policy;

17 ii.     Even though in similar circumstances, head-first ground slams have been
18 determined by courts to be unconstitutional, Stanislaus County refuses to
19 discipline, terminate, or retrain the officers involved in such incidents;

20 x.     Encouraging, accommodating, or facilitating a "blue code of silence,"
21 pursuant to which police officers do not report other officers' errors, misconduct, or
22 crimes. Pursuant to this code of silence, if questioned about an incident of
23 misconduct involving another officer, while following the code, the officer being
24 questioned will claim ignorance of the other officers' wrongdoing; and

25 x.     Maintaining a policy of inaction and an attitude of indifference towards
26 soaring numbers of police use-of-force incidents, including by failing to discipline,
27 retrain, investigate, terminate, and recommend officers for criminal prosecution
28 who participate in the use of force and restraint of unarmed people, particularly in

-18-
COMPLAINT FOR DAMAGES

1  ~~relation to incidents involving head-first ground slams and improper handling of~~

2  ~~neck injuries.~~

3      ~~90.~~97. The aforementioned acts and omissions caused Mr. Silva's physical

4  injuries and death.

5      ~~91.~~98. Stanislaus County, together with various other officials, whether

6  named or unnamed, had either actual or constructive knowledge of the deficient

7  policies, practices and customs alleged in the paragraphs above. Despite having

8  knowledge as stated above, these defendants condoned, tolerated and through

9  actions and inactions thereby ratified such policies. Said defendants also acted with

10  deliberate indifference to the foreseeable effects and consequences of these policies

11  with respect to the constitutional rights of Mr. Silva and other individuals similarly

12  situated.

13      ~~92.~~99. By perpetrating, sanctioning, tolerating and ratifying the outrageous

14  conduct and other wrongful acts, Stanislaus officials acted with intentional,

15  reckless, and callous disregard for the constitutional rights of Mr. Silva.

16  Furthermore, the policies, practices, and customs implemented, maintained, and

17  still tolerated by Defendant County of Stanislaus were affirmatively linked to and

18  were a significantly influential force behind the Mr. Silva injuries and death.

19      ~~93.~~100.      Plaintiff brings this claim as successor~~s~~-in-interest to Mr. Silva

20  and seeks wrongful death and punitive damages under this claim; survival damages

21  include pre-death pain and suffering damages.

22      ~~94.~~101.      Plaintiff also seeks attorney's fees and costs for this claim,

23  pursuant to 42 U.S.C. § 1988.

24                    ~~FIFTH~~ SIXTH CLAIM FOR RELIEF

25            Municipal Liability – Failure to Train (42 U.S.C. § 1983)

26                        Against Stanislaus County

27      ~~95.~~102.      Plaintiff repeats and realleges each and every allegation in the

28  foregoing paragraphs of this Complaint with the same force and effect as if fully set

-19-
COMPLAINT FOR DAMAGES

forth herein.

96.103.    As alleged above, the ~~Deputy Does~~Defendant Deputies acted under color of state law, and their acts deprived Mr. Silva of his particular rights under the United States Constitution.

97.104.    The training policies of Stanislaus County were not adequate to train its deputies to handle the usual and recurring situations with which they must deal.

98.105.    Defendants Stanislaus County ~~and Supervisor Does~~through its employees and agents were deliberately indifferent to the obvious consequences of its failure to train its deputies adequately.

99.106.    The failure of Defendants Stanislaus County and its employees and agents ~~Supervisor Does~~ to provide adequate training caused the deprivation of the decedent's rights by the ~~Deputy Does~~Defendant Deputies; that is, the defendant's failure to train is so closely related to the deprivation of the Mr. Silva's rights as to be the moving force that caused the ultimate injury.

100.107.    By reason of the aforementioned acts and omissions caused Mr. Silva to suffer great physical harm and death.

101.108.    Plaintiff brings this claim as successor~~s~~-in-interest to Mr. Silva and seeks wrongful death and punitive damages under this claim; survival damages include pre-death pain and suffering damages.

102.109.    Plaintiff also seeks attorney's fees and costs for this claim, pursuant to 42 U.S.C. § 1988.

### ~~SIXTH~~ SEVENTH CLAIM FOR RELIEF

### Municipal Liability – Ratification (42 U.S.C. § 1983)

### Against Stanislaus County

103.110.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

**Formatted:** _Custom Paragraph 1, Indent: Left:  0", First line:  0.5", Right:  -0.03", Numbered + Level: 2 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.75" + Indent at:  1", No widow/orphan control

1    104.111.    As alleged above, the Deputy DoesDefendant Deputies acted

2   under color of state law, and their acts deprived Mr. Silva of his particular rights

3   under the United States Constitution.

4    105.112.    Upon information and belief, a final policymaker, acting under

5   color of law, who had final policymaking authority concerning the acts of the

6   Deputy DoesDefendant Deputies ratified (or will ratify) the acts of the Deputy

7   DoesDefendant Deputies and the bases for them. Upon information and belief, the

8   final policymaker knew of and specifically approved of (or will specifically

9   approve of) the acts of the Deputy DoesDefendant Deputies.

10    106.113.    Upon information and belief, a final policymaker has

11   determined (or will determine) that the acts of the Deputy DoesDefendant Deputies

12   were "within policy."

13    107.114.    On information and belief, the Deputy DoesDefendant Deputies

14   were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in

15   connection with this incident.

16    108.115.    Accordingly, Stanislaus County is liable to Plaintiff for

17   compensatory damages under 42 U.S.C. § 1983.

18    109.116.    Plaintiff brings this claim as successors-in-interest to Mr. Silva

19   and seeks wrongful death and punitive damages under this claim; survival damages

20   include pre-death pain and suffering damages.

21    110.117.    Plaintiff also seeks attorney's fees and costs for this claim,

22   pursuant to 42 U.S.C. § 1988.

23                        SEVENTH CLAIM FOR RELIEF

24           Americans with Disabilities Act (42 U.S.C. § 12132)

25                        Against Stanislaus County

26    111.    Plaintiff repeats and realleges each and every allegation in the

27       foregoing paragraphs of this Complaint with the same force and effect

28       as if fully set forth herein.

1    112.    Mr. Silva was a "qualified individual," with a mental
2    impairment that substantially limited his ability to care for himself and
3    control his mental, medical or physical health condition as defined
4    under the Americans with Disabilities Act (ADA), 42 U.S.C. §12131
5    (2), and under Section 504 of the Rehabilitation Act of 1973, 29
6    U.S.C. §794.
7    113.    Stanislaus County is a covered entity for purposes of
8    enforcement of the ADA, 42 U.S.C. §12131 (2), and under Section
9    504 of the Rehabilitation Act of 1973, explicated by the regulations
10   promulgated under each of these laws.
11   114.    Under the ADA, Stanislaus County is mandated to "develop an
12   effective, integrated, comprehensive system for the delivery of all
13   services to persons with mental disabilities and developmental
14   disabilities. . ." and to ensure "that the personal and civil rights" of
15   persons are protected.
16   115.    Congress enacted the ADA upon a finding, among other things,
17   that "society has tended to isolate and segregate individuals with
18   disabilities" and that such forms of discrimination continue to be a
19   "serious and pervasive social problems." 42 U.S.C. §12101(a)(2).
20   116.    Stanislaus County is mandated under the ADA not to
21   discriminate against any qualified individual on the basis of disability
22   in the full and equal enjoyment of the goods, services, facilities,
23   privileges, advantages, or accommodations of any place of public
24   accommodation." 42 U.S.C. §12182 (a).
25   117.    Stanislaus County receives federal financial assistance for its
26   Sheriff's Office, and therefore must comply with the mandates of the
27   Rehabilitation Act, §504, which specifies that "program or activity"
28   means all of the operations of a department, agency, special purpose

-22-
COMPLAINT FOR DAMAGES

1    ~~district, or other instrumentality of a State or of a local government.~~

2    ~~118.    Stanislaus County and other Defendants violated the ADA and~~

3    ~~the Rehabilitation Act, and deprived Mr. Silva of his federally and~~

4    ~~state protected rights by: (1) failing to properly train its deputies,~~

5    ~~dispatch staff and/or employees to peacefully respond, treat, and~~

6    ~~interact with disabled persons, such as Mr. Silva; and (2) failing to~~

7    ~~comply with the U.S. Department of Justice requirements regarding~~

8    ~~care, treatment and security to persons with mental disabilities,~~

9    ~~resulting in discrimination against Mr. Silva, under the ADA and the~~

10   ~~Rehabilitation Act.~~

11   ~~119.    As a legal result of the acts and misconduct of the Defendants~~

12   ~~and each Defendant complained of herein, Mr. Silva suffered pain and~~

13   ~~suffering and eventual death.~~

14   ~~120.    Plaintiff brings this claim as successors-in-interest to Mr. Silva~~

15   ~~and seeks wrongful death and punitive damages under this claim;~~

16   ~~survival damages include pre-death pain and suffering damages.~~

17   ~~121.    Plaintiff also seeks attorney's fees and costs for this claim,~~

18   ~~pursuant to 42 U.S.C. § 1988.~~

19              **~~EIGHTH~~EIGHTH CLAIM FOR RELIEF**

20                          **False Arrest**

21   **Against ~~JUSTIN CAMARA, ZA XIONG, and STANISLAUS COUNTY~~All**

22                          **~~Defendants~~**

23        ~~122.~~118.    Plaintiff repeats and realleges each and every allegation in the

24   foregoing paragraphs of this Complaint with the same force and effect as if fully set

25   forth herein.

26        ~~123.~~119.    The ~~Deputy Does~~Defendants CAMARA and XIONG

27   intentionally deprived Mr. Silva of his freedom of movement by use of force,

28   threats of force, menace, fraud, deceit, and unreasonable duress. The ~~Deputy~~

Formatted: _Custom Paragraph 1, Indent: Left: 0", First line: 0.5", Right: -0.03", Numbered + Level: 2 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.75" + Indent at: 1", No widow/orphan control

1  ~~Does~~Defendants CAMARA and XIONG did not have reasonable suspicion that

2  Mr. Silva was engaged in any criminal activity, Mr. Silva was not engaged in any

3  criminal activity at any point during this incident, and he did not in any way

4  interfere with or obstruct ~~the~~ CAMARA or XIONG's ~~defendant officers'~~ duties

5  with respect to the incident. Mr. Silva did not knowingly or voluntarily consent to

6  being detained.

7      ~~124.~~120.    At the time of the unlawful detention of Mr. Silva, the ~~Deputy~~

8  ~~Does~~Defendants CAMARA and XIONG were working as Stanislaus County

9  deputies and were acting within the course and scope of their employment and

10  duties.

11      ~~125.~~121.    As a result of their misconduct, the ~~Deputy Does~~Defendants

12  CAMARA and XIONG are liable for Mr. Silva's injuries and death.

13      ~~126.   The Supervisor Does were aware of Mr. Silva's status as an unhoused~~

14  ~~individual suffering from mental illness. They were aware that Stanislaus Deputies,~~

15  ~~including the Deputy Does, frequently arrested individuals similarly situated to Mr.~~

16  ~~Silva without probable cause. Their failure to properly supervise the Deputy Does~~

17  ~~by instructing them to cease such conduct was a contributing cause of Mr. Silva's~~

18  ~~injuries.~~

19      ~~127.~~122.    Plaintiff brings this claim as successor~~s~~-in-interest to Mr. Silva

20  and seeks wrongful death and punitive damages under this claim; survival damages

21  include pre-death pain and suffering damages.

22      ~~128.~~123.    Plaintiff also seeks attorney's fees and costs for this claim,

23  pursuant to 42 U.S.C. § 1988.

24              ~~NINTH~~ NINTH CLAIM FOR RELIEF

25                    **Battery**

26                **Against All Defendants**

27      ~~129.~~124.    Plaintiff repeats and realleges each and every allegation in the

28  foregoing paragraphs of this Complaint with the same force and effect as if fully set

---

forth herein.

130.125.    ~~Deputy Does~~Defendant Deputies physically assaulted Mr. Silva causing severe injuries including permanent quadriplegia.

131.126.    ~~Deputy Does~~Defendant Deputies use of force against Mr. Silva were excessive and unreasonable under the circumstances. ~~These Defendants encountered Mr. Silva who may have been in the midst of a mental health crisis, and instead of providing the assistance he needed, they detained and severely battered him.~~ Defendants executed a forceful take-down, throwing Mr. Silva head-first into the concrete ground, breaking his neck in two places. At the time of the incident, Mr. Silva offered no more than minimal resistance to the ~~officers~~deputies, made no attempt to flee, and had committed no serious crime.

~~132.   The Deputy Does, while working for the Stanislaus County Sheriff's Department and acting within the course and scope of their duties, encountered Mr. Silva who may have been in the midst of a mental health crisis, and instead of providing the assistance he needed, they detained and severely physically assaulted him. At the time of the incident, Mr. Silva offered minimal resistance to the officers, made no attempt to flee, and had committed no serious crime.~~

~~133.   The use of force and restraint against Mr. Silva was objectively unreasonable. At all relevant times, including when the Deputy Does slammed Mr. Silva to the ground, Mr. Silva did not pose a threat to anyone. Mr. Silva was offering minimal resistance, and had committed no crime. Additionally, Mr. Silva was unarmed during this incident.~~

134.127.     As a result of the actions of the ~~Deputy Does~~Defendant Deputies, Mr. Silva suffered severe injuries which eventually led to his death. The ~~Deputy Does~~Defendant Deputies had no legal justification for using force against Mr. Silva, and their use of force while carrying out their duties as a deputy sheriff was an unreasonable use of force.

135.128.     As a direct and proximate result of the conduct of the ~~Deputy~~

1  ~~Does~~Defendant Deputies as alleged above, Mr. Silva suffered significant damages

2  related to his physical and injuries and death.

3      ~~136.~~129.    Stanislaus County is vicariously liable for the wrongful acts of

4  the ~~Deputy Does~~Defendant Deputies pursuant to section 815.2(a) of the California

5  Government Code, which provides that a public entity is liable for the injuries

6  caused by its employees within the scope of the employment if the employee's act

7  would subject her or her to liability.

8      ~~137.~~130.    Stanislaus Sheriff Department employees, agents and

9  supervisors ~~The Supervisor Does~~ were aware of Mr. Silva's status as an unhoused

10  individual suffering from mental illness. They were aware that Stanislaus Deputies,

11  including the ~~Deputy Does~~Defendant Deputies, frequently unjustifiably assault

12  individuals similarly situated to Mr. Silva. Their failure to properly supervise the

13  ~~Deputy Does~~Defendant Deputies by instructing them to cease such conduct was a

14  contributing cause of Mr. Silva's injuries.

15      ~~138.~~131.    The conduct of the ~~Deputy Does~~Defendant Deputies was

16  malicious, wanton, oppressive, and accomplished with a conscious disregard for

17  the rights of Mr. Silva, entitling him to an award of exemplary and punitive

18  damages in addition to compensatory damages.

19      ~~139.~~132.    Plaintiff brings this claim as successor~~s~~-in-interest to Mr. Silva

20  and seeks wrongful death and punitive damages under this claim; survival damages

21  include pre-death pain and suffering damages.

22      ~~140.~~133.    Plaintiff also seeks attorney's fees and costs for this claim,

23  pursuant to 42 U.S.C. § 1988.

24              **~~TENTH~~ TENTH CLAIM FOR RELIEF**

25              **Negligence (Wrongful Death and Survival)**

26                  **Against All Defendants**

27      ~~141.~~134.    Plaintiff repeats and realleges each and every allegation in the

28  foregoing paragraphs of this Complaint with the same force and effect as if fully set

Formatted: _Custom Paragraph 1, Indent: Left: 0", First line: 0.5", Right: -0.03", Numbered + Level: 2 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.75" + Indent at: 1", No widow/orphan control

1  forth herein.

2     ~~142.~~135.     The ~~Deputy Does~~Defendant Deputies have a duty to use

3  reasonable care to prevent harm or injury to others. This duty includes using

4  appropriate tactics, giving appropriate commands, giving warnings, and not using

5  any force unless necessary, using less than lethal options, and only using deadly

6  force as a last resort.

7     ~~143.~~136.     The ~~Deputy Does~~Defendant Deputies breached this duty of care.

8  The actions and inactions of the ~~Deputy Does~~Defendant Deputies were negligent

9  and reckless, including but not limited to:

10     ~~i.~~137. Surrounding and harassing Mr. Silva without any reasonable suspicion

11  of a crime being committed.

12     ~~ii.~~138.Speaking to Mr. Silva aggressively and giving him orders despite his

13  right to be on public property.

14     ~~iii.~~139.     Detaining Mr. Silva without any reasonable suspicion of a

15  crime.

16     ~~iv.~~140.     Forcefully slamming Mr. Silva head-first into the ground,

17  resulting in a broken neck.

18     ~~v.~~141.Failing to promptly call paramedics despite Mr. Silva's obvious severe

19  injury.

20     ~~vi.~~142.     Moving Mr. Silva's injured body multiple times, exacerbating

21  his neck injury and resulting in permanent quadriplegia.

22     ~~vii.~~143.     Causing a delay in Mr. Silva's receipt of medical care, despite

23  the obvious and urgent need.

24     144.   As a direct and proximate result of Defendants conduct as alleged

25  above, and other undiscovered negligent conduct, Mr. Silva was caused to suffer

26  severe pain and suffering and was rendered permanently quadriplegic.

27     145.   Stanislaus County is vicariously liable for the wrongful acts of the

28  ~~Deputy Does~~Defendant Deputies pursuant to section 815.2(a) of the California

1  Government Code, which provides that a public entity is liable for the injuries

2  caused by its employees within the scope of the employment if the employee's act

3  would subject her or her to liability.

4      146.   Stanislaus Sheriff Department employees, agents and supervisors The

5  Supervisor Does were aware of Mr. Silva's status as an unhoused individual

6  suffering from mental illness. They were aware that Stanislaus Deputies, including

7  the Deputy DoesDefendant Deputies, frequently unjustifiably assault individuals

8  similarly situated to Mr. Silva. They were negligent in their failure to properly

9  supervise the Deputy DoesDefendant Deputies by instructing them to cease such

10  conduct. And their negligence was a contributing cause of the Deputy

11  DoesDefendant Deputies' actions and of Mr. Silva's injuries and death.

12      147.   Plaintiff brings this claim as successors-in-interest to Mr. Silva and

13  seeks wrongful death and punitive damages under this claim; survival damages

14  include pre-death pain and suffering damages.

15      148.   Plaintiff also seeks attorney's fees and costs for this claim, pursuant to

16  42 U.S.C. § 1988.

17                ELEVENTH CLAIM FOR RELIEF

18             Intentional Infliction of Emotional Distress

19                   Against All Defendants

20      149.   Plaintiff repeats and realleges each and every allegation in the

21         foregoing paragraphs of this Complaint with the same force and effect

22         as if fully set forth herein.

23      150.   The conduct of the Deputy Does, as set forth herein, was extreme and

24  outrageous and beyond the scope of conduct which should be tolerated by citizens

25  in a democratic and civilized society.

26      151.   Defendants committed these extreme and outrageous acts with the

27  intent to inflict severe mental and emotional distress upon Mr. Silva.

28      152.   As a proximate result of Defendants' willful, intentional and malicious

1   conduct, Decedent suffered severe and extreme mental and emotional distress.

2   ~~153.~~   Plaintiff brings this claim as successors-in-interest to Mr. Silva

3   and seeks survival damages.

4   ~~154.~~   Plaintiff also seeks attorney's fees and costs for this claim,

5   pursuant to 42 U.S.C. § 1988.

6   **~~TWELFTH~~ELEVENTH CLAIM FOR RELIEF**

7   **Violation of Cal. Civil Code § 52.1**

8   **Against All Defendants**

9   ~~155.~~149.   Plaintiff repeats and realleges each and every allegation in the

10   foregoing paragraphs of this Complaint with the same force and effect as if fully set

11   forth herein.

12   ~~156.~~150.   California Civil Code, Section 52.1 (the Bane Act), prohibits

13   any person from using violent acts or threatening to commit violent acts in

14   retaliation against another person for exercising that person's constitutional rights.

15   ~~157.~~151.   On information and belief, the ~~Deputy Does~~Defendant Deputies,

16   while working for the Stanislaus County and acting within the course and scope of

17   their duties, intentionally committed acts of violence against Mr. Silva, including

18   breaking his neck by slamming him to the ground head-first, all without

19   justification or excuse, or by integrally participating and failing to intervene in the

20   above violence, and by denying him necessary medical care. The ~~Deputy~~

21   ~~Does~~Defendant Deputies' intent to violate Mr. Silva's constitutional rights is

22   demonstrated by their reckless disregard for Mr. Silva's constitutional rights.

23   ~~158.~~152.   The ~~Deputy Does~~Defendant Deputies' use of extreme force and

24   subsequent mistreatment of Mr. Silva's injured body interfered with his civil rights

25   to be free from unreasonable searches and seizures, and his right to medical care to

26   mitigate caused by the deputies use of force.

27   ~~159.~~153.   On information and belief, the ~~Deputy Does~~Defendant Deputies

28   intentionally and spitefully committed the above acts to discourage Mr. Silva from

Formatted: _Custom Paragraph 1, Indent: Left:  0", First line:  0.5", Right:  -0.03", Numbered + Level: 2 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.75" + Indent at:  1", No widow/orphan control

1   exercising his civil rights, to retaliate against him for invoking such rights, or to

2   prevent him from exercising such rights, which he was fully entitled to enjoy.

3   160.154.   On information and belief, Mr. Silva reasonably believed and

4   understood that the violent acts committed by the Deputy DoesDefendant Deputies

5   were intended to discourage him from exercising the above civil rights, to retaliate

6   against him for invoking such rights, or to prevent him from exercising such rights.

7   161.155.   The conduct of the Deputy DoesDefendant Deputies was a

8   substantial factor in causing Mr. Silva's harms, losses, injuries, and death.

9   162.156.   Stanislaus County is vicariously liable for the wrongful acts of

10   the Deputy DoesDefendant Deputies pursuant to section 815.2(a) of the California

11   Government Code, which provides that a public entity is liable for the injuries

12   caused by its employees within the scope of the employment if the employee's act

13   would subject him or her to liability.

14   163.157.   The conduct of the Deputy DoesDefendant Deputies was

15   willful, wanton, malicious, and done with reckless disregard for the rights and

16   safety of Mr. Silva.

17   164.158.   Plaintiff brings this claim as successors-in-interest to Mr. Silva

18   and seeks wrongful death and punitive damages under this claim; survival damages

19   include pre-death pain and suffering damages.

20   165.159.   Plaintiff also seeks attorney's fees and costs for this claim,

21   pursuant to 42 U.S.C. § 1988.

22   **<u>PRAYER FOR RELIEF</u>**

23   WHEREFORE, Plaintiff Dorothey Heimbach requests entry of judgment in

24   her favor and against Defendants STANISLAUS COUNTY and Stanislaus Sheriff

25   Deputies, JUSTIN CAMARA, ZA XIONG, and ERIC BAVARODoes 1–10, as

26   follows:

27   1.   For compensatory damages according to proof at trial, including:

28   survival damages, not limited to pre-death pain and suffering and loss life under

-30-
COMPLAINT FOR DAMAGES

1  federal and state law; and wrongful death damages under federal and state law;

2      2.    For funeral and burial expenses, and loss of financial support;

3      3.    For loss of consortium;

4      4.3.   For punitive and exemplary damages against JUSTIN CAMARA, ZA

5  XIONG, and ERIC BAVARO;Does 1-10

6      5.4.   For statutory damages;

7      6.5.   For reasonable attorneys' fees including litigation expenses;

8      7.6.   For costs of suit and interest incurred; and

9      8.7.   For such further other relief as the Court may deem just, proper, and

10  appropriate.

11

12  DATED: March 6, 2024February       LAW OFFICES OF DALE K. GALIPO

13  28, 2024

14

15                                     Dale K. Galipo
                                       *Attorney for Plaintiff*
16

17

18  **DEMAND FOR JURY TRIAL**

19      Plaintiff hereby demands a trial by jury.

20

21  DATED: March 6, 2024February       LAW OFFICES OF DALE K. GALIPO

22  28, 2024

23

24                                     Dale K. Galipo
                                       *Attorney for Plaintiff*
25

26

27

28

-31-
COMPLAINT FOR DAMAGES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT FOR DAMAGES