1   **LAW OFFICES OF DALE K. GALIPO**
    Dale K. Galipo, Esq. (SBN 144074)
2   dalekgalipo@yahoo.com
    Cooper Alison-Mayne (SBN 343169)
3   cmayne@galipolaw.com
    21800 Burbank Boulevard, Suite 310
4   Woodland Hills, CA 91367
    Phone: (818) 347-3333
5
    **LAW OFFICES OF DEAN PETRULAKIS**
6   Dean Petrulakis, Esq. (Bar No. 192185)
    1600 G Street, Suite 202
7   Modesto, CA 95354
    Tel: (209) 522-6600
8
9                **UNITED STATES DISTRICT COURT**

10               **EASTERN DISTRICT OF CALIFORNIA**

11   DOROTHEY HEIMBACH,             Case No. 2:23-cv-01887-DJC-KJN
     individually and as successor in
12   interest to Anthony Silva,        **SECOND AMENDED COMPLAINT**

13              Plaintiff,          Federal Law Claims
14                                  1.   Fourth Amendment, Unlawful
         vs.                             Detention (42 U.S.C. § 1983)
15                                  2.   Fourth Amendment, Excessive Force
16   STANISLAUS COUNTY; and              (42 U.S.C. § 1983)
     JUSTIN CAMARA, ZA XIONG,       3.   Fourteenth Amendment, Denial of
17   and ERIC BAVARO, in their           Familial Relationship (42 U.S.C. §
     individual capacities,              1983)
18                                  4.   Fourth Amendment, Denial of Medical
19              Defendants.             Care (42 U.S.C. § 1983)
20                                  5.   Municipal Liability, Unconstitutional
                                        Custom or Policy (42 U.S.C. § 1983)
21                                  6.   Municipal Liability, Failure to Train
22                                      (42 U.S.C. § 1983)
                                    7.   Municipal Liability – Ratification (42
23                                      U.S.C. § 1983)
                                    State Law Claims
24                                  8.   False Arrest
25                                  9.   Battery
                                    10.  Negligence
26                                  11.  Violation of Cal. Civil Code § 52.1
27
28                                  **DEMAND FOR JURY TRIAL**

## COMPLAINT FOR DAMAGES

COME NOW Plaintiff Dorothey Heimbach for her Second Amended Complaint against Defendants Stanislaus County and Stanislaus Sheriff Deputies Justin Camara, Za Xiong, and Eric Bavaro, sued in their individual capacities, alleging as follows:

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States, including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.

2.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## INTRODUCTION

3.      On the afternoon of October 8, 2022, the ordinary life of Plaintiff Dorothey Heimbach's son, Anthony Silva, was catastrophically and irrevocably shattered. From the peaceful setting of a public gazebo emerged an episode of gut-wrenching brutality meted out by the very individuals entrusted with his protection: deputies of the Stanislaus County Sheriff's Department.

4.      In an unjustified and excessive display of force, these deputies forcibly slammed Mr. Silva to the ground, head first. This violent act caused severe cervical fractures at the C6 and C7 vertebrae of Mr. Silva's neck. These injuries rendered Mr. Silva quadriplegic and caused his death one year later, on September 10, 2023.

5.      After breaking his neck, to add to the severity of their misconduct, the deputies, in clear disregard for Mr. Silva's visibly deteriorating condition, proceeded to move him around—first lifting him from the ground to a park bench and later, from the bench to a picnic table. Every shift, every jostle, every moment of delay in getting professional medical help intensified Mr. Silva's injuries,

1  exacerbating the damage to his cervical vertebrae and directly contributing to his
2  quadriplegia and death.

3      6.      These tragic events are a direct consequence of the deeply flawed
4  policies and practices at the Stanislaus County Sheriff's Department. The
5  department's inadequate and deficient training procedures have not only failed to
6  prevent such instances of excessive force, but also, the department has ratified the
7  unconstitutional conduct of their officers time and time again.

8                          **PARTIES**

9      7.      At all relevant times, Decedent Anthony Silva was an individual
10  residing in the City of Riverbank, California.

11      8.      Plaintiff Dorothey Heimbach is an individual residing in Riverbank,
12  California. She is the natural mother of Mr. Silva; she sues under federal and state
13  law in her individual capacity and as successor-in-interest to Mr. Silva. Plaintiff is
14  Mr. Silva's successor-in-interest pursuant to California Code of Civil Procedure
15  §§377.30 and 377.60.

16      9.      Stanislaus County is a political subdivision of the State of California,
17  and in doing the acts alleged was acting as such, rather than as an "arm of the state"
18  for Eleventh Amendment immunity purposes.

19      10.     Stanislaus County is responsible for the actions, omissions, policies,
20  procedures, practices, and customs of its various agents and agencies, including the
21  Stanislaus County Sheriff's Department and its agents and employees. At all
22  relevant times, Stanislaus County was responsible for assuring that the actions,
23  omissions, policies, procedures, practices, and customs of the Stanislaus County
24  Sheriff's Department and its employees and agents complied with the laws of the
25  United States and of the State of California. At all relevant times, Stanislaus
26  County was the employer of Defendants Justin Camara, Za Xiong, and Eric Bavaro
27  ("Defendant Deputies").

28      11.     Defendant Deputies are deputy sheriffs working for the Stanislaus

County Sheriff's Department. At all relevant times, they were acting under color of law within the course and scope of their duties as sheriff's deputies for the Stanislaus County Sheriff's Department. Defendant Deputies were acting with the complete authority and ratification of their principal, Stanislaus County.

12.     On information and belief, Defendant Deputies were residents of the County of Stanislaus.

13.     In doing the acts and failing and omitting to act as hereinafter described, Defendant Deputies were acting on the implied and actual permission and consent of Stanislaus County.

14.     At all times mentioned herein, Defendant Deputies were the agents of Stanislaus County. Stanislaus and the Stanislaus Sheriff's Department had the legal duty to oversee and supervise the hiring, conduct, and employment of the Defendant Deputies.

15.     All of the acts complained of herein by Plaintiff against Defendants were done and performed by said Defendants. Stanislaus County acted by and through its authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Moreover, Stanislaus Count and their agents ratified all of the acts complained of herein.

16.     Defendant Deputies are sued in their individual capacities.

17.     On or around February 2, 2023, Mr. Silva filed comprehensive and timely claims for damages with Stanislaus County pursuant to applicable sections of the California Government Code.

18.     On March 16, 2023, Stanislaus County rejected the claims.

19.     Mr. Silva filed his timely complaint in this case on August 31, 2023. (ECF No. 1.)

20.     Shortly thereafter, on September 10, 2023, Mr. Silva died from his injuries.

21.     Plaintiff Dorothey Heimbach, Mr. Silva's mother, served her timely claims for damages with Stanislaus County pursuant to applicable sections of the California Government Code on October 6, 2023.

22.     As of today, Plaintiff has not received a response to her claim. And because it has been more than 45 days since service of the claim, the claim is deemed rejected by operation of law and Plaintiff may file her complaint. Gov. Code, § 945.6(a)(2).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

23.     On the afternoon of October 8, 2022, Decedent Anthony Silva's life was irrevocably altered when Stanislaus County deputies unleashed a brutal assault, leaving him quadriplegic and eventually causing his death on September 10, 2023.

24.     Mr. Silva was outside the Riverbank Community Center at 3600 Santa Fe Street, Riverbank, CA 95367, near a gazebo that is a public facility.

25.     At the time of the incident, Mr. Silva was a 39-year-old man.

26.     Mr. Silva is a high school graduate.

27.     For several years before the incident, he had been experiencing housing instability.

28.     Deputies CAMARA and XIONG approached Mr. Silva and immediately executed a forceful takedown and arrest, thought Mr. Silva offered no resistance, was not suspected of a serious crime, and was not a threat to anyone.

29.     Deputies CAMARA and XIONG detained Mr. Silva without reasonable suspicion that he had committed any crime.

30.     Deputies CAMARA and XIONG led Mr. Silva to the nearby gazebo and Deputy BAVARO met them there.

31.     During their conversation with Mr. Silva, Deputy CAMARA became angry and forcefully slammed Mr. Silva head-first into the ground with help from Deputies XIONG and BAVARO.

32. The forceful takedown of Mr. Silva resulted in cervical fractures of his C6 and C7 vertebrae. In layman's terms, Mr. Silva's neck was broken.

33. Due to his broken neck, Mr. Silva could not get back to his feet. Mr. Silva immediately told the deputies, "I'm paralyzed."

34. Although Mr. Silva was clearly suffering from a severe injury, the Defendant Deputies did not promptly call paramedics.

35. Instead, as Mr. Silva lay on the ground, Deputies CAMARA and XIONG began to move his injured body. Without giving his neck any support, they carried his limp body to a nearby picnic table and sat him upright.

36. Moving Mr. Silva multiple times exacerbated his neck injury, resulting in permanent quadriplegia.

37. The Defendant Deputies caused a delay in Mr. Silva's receipt of medical care, despite the obvious and urgent need.

38. At all relevant times, Mr. Silva complied with the Defendant Deputies' commands and did not resist arrest.

39. At all relevant times, the Defendant Deputies had no information that Mr. Silva posed any threat of injury to anyone, nor did they have information that Mr. Silva had injured anyone.

40. Mr. Silva had in fact, not hurt anyone at any relevant time.

41. Before breaking his neck, the deputies did not warn Mr. Silva that they would begin using force against him, despite it being feasible to do so, and despite Mr. Silva's compliance with the Defendant Deputies' commands.

42. At all relevant times, Mr. Silva posed no imminent threat of bodily harm to the Defendant Deputies or anyone else.

43. At all relevant times, Mr. Silva made no verbal threats to any officer or anyone else.

44. At all relevant times, the Defendant Deputies could observe that Mr. Silva was unarmed and had no weapons in his possession.

45.     At all relevant times, the Defendant Deputies had no information that Mr. Silva had committed a crime unrelated to the alleged shoulder-check the officer claimed to have experienced.

46.     At all relevant times, the Defendant Deputies failed to make any effort to ascertain whether Mr. Silva was suffering from a medical problem or crisis requiring urgent treatment, as was obvious and in fact the case at the time.

47.     At all relevant times, the Defendant Deputies failed to take steps to de-escalate the situation or give Mr. Silva the opportunity to cooperate with their instructions or comply with their orders prior to assaulting him.

48.     As a result of the Defendant Deputies' forceful takedown, restraint, and subsequent movement of his injured body, Mr. Silva suffered significant injuries, including a C6, C7 cervical fracture leading to permanent quadriplegia, skin abrasions on his arms, and various complications including pneumonia in both lower lobes of his lungs and blood clots.

49.     After the incident, Mr. Silva never left the hospital. After suffering from his injuries for nearly a year, Mr. Silva died on September 10, 2023. His death was caused by the Defendant Deputies' inexcusable actions on August 8, 2023.

## FIRST CLAIM FOR RELIEF

### Fourth Amendment, Unlawful Detention (42 U.S.C. § 1983)

### Against JUSTIN CAMARA and ZA XIONG

50.     Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

51.     The Defendant Deputies detained Mr. Silva without reasonable suspicion or probable cause.

52.     At all relevant times, Defendant Deputies acted under color of state law.

53.     The Defendant Deputies unreasonably seized Mr. Silva when they

1  surrounded and harassed him without reasonable suspicion that he had committed
2  or was going to commit any crime.

3      54.    In addition, the scope and manner of the detention was unreasonable.
4  It was not necessary to use force against Mr. Silva. It was certainly not necessary to
5  slam him to the ground head-first, breaking his neck in two places. Moreover, it
6  was not necessary to apply force to Mr. Silva's body after he was laying on the
7  ground unable to move.

8      55.    The conduct of the Deputies CAMARA and XIONG was done with
9  reckless disregard for the rights and safety of Mr. Silva and therefore warrants the
10 imposition of exemplary and punitive damages as to these defendants. As a direct
11 result of the unreasonable detention and arrest, Mr. Silva experienced severe pain
12 and suffering for which he is entitled to recover damages.

13     56.    As a result of their misconduct, the Defendant Deputies are liable for
14 Mr. Silva's injuries and death, either because they are directly liable, integral
15 participants in the wrongful detention and arrest, or because they failed to intervene
16 to prevent these violations.

17     57.    Plaintiff brings this claim as successor-in-interest to Mr. Silva and
18 seeks survival damages, including but not limited to pre-death pain and suffering,
19 loss of life, loss of opportunity of life, and loss of enjoyment of life, under this
20 claim. Plaintiff also seeks attorneys' fees and costs under this claim.

21     58.    Plaintiff seeks punitive damages against Deputies CAMARA and
22 XIONG  fees and costs for this claim, pursuant to 42 U.S.C. § 1988.

### SECOND CLAIM FOR RELIEF

**Fourth Amendment, Excessive Force (42 U.S.C. § 1983)**

**Against JUSTIN CAMARA, ZA XIONG, and ERIC BAVARO**

26     59.    Plaintiff repeats and realleges each and every allegation in the
27 foregoing paragraphs of this Complaint with the same force and effect as if fully set
28 forth herein.

60.     The Defendant Deputies use of force against Mr. Silva were excessive and unreasonable under the circumstances. They used deadly force despite the fact that at the time of the incident, Mr. Silva offered minimal resistance to the officers, made no attempt to flee, and had committed no serious crime.

61.     These Defendants' uses of force were further excessive in that Mr. Silva never physically injured them or anyone else before or after the officers assaulted him. Further, Mr. Silva never verbally threatened anyone, and never brandished a weapon.

62.     Mr. Silva was fully restrained in handcuffs and he had been searched, so the deputies knew he did not possess any form of weapon.

63.      The unreasonable use of force by the Defendant Deputies deprived Mr. Silva of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Mr. Silva under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

64.     As a result, Mr. Silva suffered severe pain and suffering death. The Defendant Deputies are therefore liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

65.     As a result of the Defendant Deputies conduct, they are liable for Mr. Silva's injuries, either because they were integral participants in the use of excessive force, or because they failed to intervene to prevent these violations.

66.     Deputies CAMARA, XIONG, and BAVARO all participated in the deadly take-down of Mr. Silva.

67.     The conduct of the Defendant Deputies was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Silva and therefore warrants the imposition of exemplary and punitive damages as to these Defendants.

68.     Stanislaus Sheriff Department employees, agents and supervisors were aware of Mr. Silva's status as an unhoused individual suffering from mental illness.

1  They were aware that Stanislaus Deputies, including the Defendant Deputies,
2  frequently used excessive force against  individuals similarly situated to Mr. Silva
3  without justification. Their failure to properly supervise the Defendant Deputies by
4  instructing them to cease such unconstitutional conduct was a contributing cause of
5  their unconstitutional use of excessive force and Mr. Silva's injuries.

6         69.    Plaintiff brings this claim as successor-in-interest to Mr. Silva and
7  seeks survival damages, including but not limited to pre-death pain and suffering,
8  loss of life, loss of opportunity of life, and loss of enjoyment of life, under this
9  claim. Plaintiff seeks punitive damages under this claim.

10         70.    Plaintiff also seeks attorney's fees and costs for this claim, pursuant to
11  42 U.S.C. § 1988.

12  **<u>THIRD CLAIM FOR RELIEF</u>**

13  **Fourth Amendment, Denial of Medical Care (42 U.S.C. § 1983)**

14  **Against JUSTIN CAMARA, ZA XIONG, and ERIC BAVARO**

15         71.    Plaintiff repeats and realleges each and every allegation in the
16  foregoing paragraphs of this Complaint with the same force and effect as if fully set
17  forth herein.

18         72.    After slamming Mr. Silva head-first into the ground, breaking his neck
19  in two places, the Defendant Deputies did not timely summon or provide medical
20  attention to Mr. Silva.

21         73.    After being taken to the ground, Mr. Silva could not get back to his
22  feet because his neck was broken in two places.

23         74.    Although Mr. Silva was clearly suffering from a severe injury, the
24  Defendant Deputies did not promptly call paramedics.

25         75.    Instead, as Mr. Silva lay on the ground, Deputies CAMARA and
26  XIONG began to move his injured body. Without giving his neck any support, they
27  carried his limp body to a nearby picnic table and sat him upright.

28         76.    Moving Mr. Silva multiple times exacerbated his neck injury, resulting

in permanent quadriplegia.

77.    The Defendant Deputies therefore caused a delay in Mr. Silva's receipt of medical care, despite the obvious and urgent need.

78.    The denial of medical care by the Defendant Deputies deprived Mr. Silva of his right to be secure in his persons against unreasonable searches and seizures as guaranteed to Mr. Silva under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

79.    As a result, Mr. Silva suffered severe pain and suffering and death. The Defendant Deputies are therefore liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

80.    The Defendant Deputies knew that failure to provide timely medical treatment to Mr. Silva could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, exacerbating his pain and suffering.

81.    The conduct of the Defendant Deputies was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Silva and therefore warrants the imposition of exemplary and punitive damages as to these Defendants.

82.    Plaintiff brings this claim as successor-in-interest to Mr. Silva and seeks wrongful death and punitive damages under this claim; survival damages include pre-death pain and suffering damages.

83.    Plaintiff also seeks attorney's fees and costs for this claim, pursuant to 42 U.S.C. § 1988.

## FOURTH CLAIM FOR RELIEF

**Fourteenth Amendment, Denial of Familial Relationship (42 U.S.C. § 1983)**

**Against JUSTIN CAMARA, ZA XIONG, and ERIC BAVARO**

84.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set

forth herein.

85.   DOROTHEY HEIMBACH had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in DOROTHEY HEIMBACH's familial relationship with her son, Mr. Silva.

86.   Defendants CAMARA, XIONG, and BAVARO acted within the course and scope of his employment as deputies for the Defendant COUNTY and acted under color of state law.

87.   The aforementioned actions of Defendant Deputies shock the conscience, in that he acted with deliberate indifference to the constitutional rights of Mr. Silva and DOROTHEY HEIMBACH, and with a purpose to harm unrelated to any legitimate law enforcement objective.

88.   As a direct and proximate result of these actions, Mr. Silva experienced pain and suffering and eventually died. Defendant Deputies thus violated the substantive due process rights of Plaintiff to be free from unwarranted interference with her familial relationship with Mr. Silva.

89.   As a direct and proximate cause of the acts of Defendant Deputies, Plaintiff has also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Mr. Silva, and will continue to be so deprived for the remainder of her natural life.

90.   Defendant Deputies are directly liable for Mr. Silva's injuries and death.

91.   Plaintiff brings this claim individually and seeks wrongful death damages for the violation of her rights. Plaintiff also seeks attorney's fees and costs under this claim.

92.   The conduct of Defendant Deputies was malicious, wanton,

oppressive, and carried out with conscious disregard for the rights of both the Plaintiff's and the Mr. Silva. Defendant Deputies intentionally deprived and violated their constitutional rights, or acted with reckless disregard for those rights. As such, this conduct entitles the Plaintiff to an award of exemplary and punitive damages from Defendant Deputies.

## FIFTH CLAIM FOR RELIEF

**Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983) Against Stanislaus County**

93.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

94.    As alleged above, the Defendant Deputies acted under color of state law, and their acts deprived Mr. Silva of his particular rights under the United States Constitution.

95.    On information and belief, the Defendant Deputies were not disciplined, reprimanded in connection with this incident.

96.    The Defendant Deputies, together with other Stanislaus County policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

a.    Using excessive force, particularly by slamming individuals into the ground head-first, causing potential harm and injury;

b.    Providing inadequate training with respect to the handling of individuals, particularly in situations that could lead to head and neck injuries;

c.    Providing inadequate training regarding the appropriate response to neck injuries;

d. Employing and retaining as deputy sheriffs individuals such as the Defendant Deputies, whom Stanislaus County at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force, including head-first ground slams;

e. Inadequately supervising, training, controlling, assigning, and disciplining deputies and other personnel, including the Defendant Deputies, whom Stanislaus County knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

f. ave known had the aforementioned propensities and character traits;

g. Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by Stanislaus County deputies, particularly in relation to incidents involving head-first ground slams and inappropriate handling of neck injuries;

h. Failing to adequately discipline Stanislaus County deputies for the above-referenced categories of misconduct, including inadequate responses to incidents of head-first ground slams and improper handling of neck injuries;

i. Determining that unjustified uses of force, including head-first ground slams and improper handling of neck injuries, are within policy;

j. Even though in similar circumstances, head-first ground slams have been determined by courts to be unconstitutional, Stanislaus County refuses to discipline, terminate, or retrain the officers involved in such incidents;

k.   Encouraging, accommodating, or facilitating a "blue code of silence," pursuant to which police officers do not report other officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing; and

l.    code, the officer being questioned will claim ignorance of the other officers' wrongdoing; and

m.   Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police use-of-force incidents, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in the use of force and restraint of unarmed people, particularly in relation to incidents involving head-first ground slams and improper handling of neck injuries.

97.   The aforementioned acts and omissions caused Mr. Silva's physical injuries and death.

98.   Stanislaus County, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Mr. Silva and other individuals similarly situated.

99.   By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, Stanislaus officials acted with intentional,

1  reckless, and callous disregard for the constitutional rights of Mr. Silva.

2  Furthermore, the policies, practices, and customs implemented, maintained, and

3  still tolerated by Defendant County of Stanislaus were affirmatively linked to and

4  were a significantly influential force behind the Mr. Silva injuries and death.

5       100.   Plaintiff brings this claim as successor-in-interest to Mr. Silva and

6  seeks wrongful death and punitive damages under this claim; survival damages

7  include pre-death pain and suffering damages.

8       101.   Plaintiff also seeks attorney's fees and costs for this claim, pursuant to

9  42 U.S.C. § 1988.

10  <u>**SIXTH CLAIM FOR RELIEF**</u>

11  **Municipal Liability – Failure to Train (42 U.S.C. § 1983)**

12  **Against Stanislaus County**

13       102.   Plaintiff repeats and realleges each and every allegation in the

14  foregoing paragraphs of this Complaint with the same force and effect as if fully set

15  forth herein.

16       103.   As alleged above, the Defendant Deputies acted under color of state

17  law, and their acts deprived Mr. Silva of his particular rights under the United

18  States Constitution.

19       104.   The training policies of Stanislaus County were not adequate to train

20  its deputies to handle the usual and recurring situations with which they must deal.

21       105.   Defendants Stanislaus County through its employees and agents were

22  deliberately indifferent to the obvious consequences of its failure to train its

23  deputies adequately.

24       106.   The failure of Defendants Stanislaus County and its employees and

25  agents to provide adequate training caused the deprivation of the decedent's rights

26  by the Defendant Deputies; that is, the defendant's failure to train is so closely

27  related to the deprivation of the Mr. Silva's rights as to be the moving force that

28  caused the ultimate injury.

107.   By reason of the aforementioned acts and omissions caused Mr. Silva to suffer great physical harm and death.

108.   Plaintiff brings this claim as successor-in-interest to Mr. Silva and seeks wrongful death and punitive damages under this claim; survival damages include pre-death pain and suffering damages.

109.   Plaintiff also seeks attorney's fees and costs for this claim, pursuant to 42 U.S.C. § 1988.

## SEVENTH CLAIM FOR RELIEF

### Municipal Liability – Ratification (42 U.S.C. § 1983)

### Against Stanislaus County

110.   Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

111.   As alleged above, the Defendant Deputies acted under color of state law, and their acts deprived Mr. Silva of his particular rights under the United States Constitution.

112.   Upon information and belief, a final policymaker, acting under color of law, who had final policymaking authority concerning the acts of the Defendant Deputies ratified (or will ratify) the acts of the Defendant Deputies and the bases for them. Upon information and belief, the final policymaker knew of and specifically approved of (or will specifically approve of) the acts of the Defendant Deputies.

113.   Upon information and belief, a final policymaker has determined (or will determine) that the acts of the Defendant Deputies were "within policy."

114.   On information and belief, the Defendant Deputies were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with this incident.

115.   Accordingly, Stanislaus County is liable to Plaintiff for compensatory

1    damages under 42 U.S.C. § 1983.

2        116.  Plaintiff brings this claim as successor-in-interest to Mr. Silva and

3    seeks wrongful death and punitive damages under this claim; survival damages

4    include pre-death pain and suffering damages.

5        117.  Plaintiff also seeks attorney's fees and costs for this claim, pursuant to

6    42 U.S.C. § 1988.

7    <b><u>EIGHTH CLAIM FOR RELIEF</u></b>

8    <b>False Arrest</b>

9    <b>Against JUSTIN CAMARA, ZA XIONG, and STANISLAUS COUNTY</b>

10       118.  Plaintiff repeats and realleges each and every allegation in the

11   foregoing paragraphs of this Complaint with the same force and effect as if fully set

12   forth herein.

13       119.  The Defendants CAMARA and XIONG intentionally deprived Mr.

14   Silva of his freedom of movement by use of force, threats of force, menace, fraud,

15   deceit, and unreasonable duress. The Defendants CAMARA and XIONG did not

16   have reasonable suspicion that Mr. Silva was engaged in any criminal activity, Mr.

17   Silva was not engaged in any criminal activity at any point during this incident, and

18   he did not in any way interfere with or obstruct CAMARA or XIONG's duties with

19   respect to the incident. Mr. Silva did not knowingly or voluntarily consent to being

20   detained.

21       120.  At the time of the unlawful detention of Mr. Silva, the Defendants

22   CAMARA and XIONG were working as Stanislaus County deputies and were

23   acting within the course and scope of their employment and duties.

24       121.  As a result of their misconduct, the Defendants CAMARA and

25   XIONG are liable for Mr. Silva's injuries and death.

26       122.  Plaintiff brings this claim as successor-in-interest to Mr. Silva and

27   seeks wrongful death and punitive damages under this claim; survival damages

28   include pre-death pain and suffering damages.

123.   Plaintiff also seeks attorney's fees and costs for this claim, pursuant to 42 U.S.C. § 1988.

## NINTH CLAIM FOR RELIEF

### Battery

### Against All Defendants

124.   Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

125.   Defendant Deputies physically assaulted Mr. Silva causing severe injuries including permanent quadriplegia.

126.   Defendant Deputies use of force against Mr. Silva were excessive and unreasonable under the circumstances. Defendants executed a forceful take-down, throwing Mr. Silva head-first into the concrete ground, breaking his neck in two places. At the time of the incident, Mr. Silva offered no more than minimal resistance to the deputies, made no attempt to flee, and had committed no serious crime.

127.   As a result of the actions of the Defendant Deputies, Mr. Silva suffered severe injuries which eventually led to his death. The Defendant Deputies had no legal justification for using force against Mr. Silva, and their use of force while carrying out their duties as a deputy sheriff was an unreasonable use of force.

128.   As a direct and proximate result of the conduct of the Defendant Deputies as alleged above, Mr. Silva suffered significant damages related to his physical and injuries and death.

129.   Stanislaus County is vicariously liable for the wrongful acts of the Defendant Deputies pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject her or her to liability.

130.    Stanislaus Sheriff Department employees, agents and supervisors were aware of Mr. Silva's status as an unhoused individual suffering from mental illness. They were aware that Stanislaus Deputies, including the Defendant Deputies, frequently unjustifiably assault individuals similarly situated to Mr. Silva. Their failure to properly supervise the Defendant Deputies by instructing them to cease such conduct was a contributing cause of Mr. Silva's injuries.

131.    The conduct of the Defendant Deputies was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Mr. Silva, entitling him to an award of exemplary and punitive damages in addition to compensatory damages.

132.    Plaintiff brings this claim as successor-in-interest to Mr. Silva and seeks wrongful death and punitive damages under this claim; survival damages include pre-death pain and suffering damages.

133.    Plaintiff also seeks attorney's fees and costs for this claim, pursuant to 42 U.S.C. § 1988.

## TENTH CLAIM FOR RELIEF

### Negligence (Wrongful Death and Survival)

### Against All Defendants

134.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

135.    The Defendant Deputies have a duty to use reasonable care to prevent harm or injury to others. This duty includes using appropriate tactics, giving appropriate commands, giving warnings, and not using any force unless necessary, using less than lethal options, and only using deadly force as a last resort.

136.    The Defendant Deputies breached this duty of care. The actions and inactions of the Defendant Deputies were negligent and reckless, including but not limited to:

137.   Surrounding and harassing Mr. Silva without any reasonable suspicion of a crime being committed.

138.   Speaking to Mr. Silva aggressively and giving him orders despite his right to be on public property.

139.   Detaining Mr. Silva without any reasonable suspicion of a crime.

140.   Forcefully slamming Mr. Silva head-first into the ground, resulting in a broken neck.

141.   Failing to promptly call paramedics despite Mr. Silva's obvious severe injury.

142.   Moving Mr. Silva's injured body multiple times, exacerbating his neck injury and resulting in permanent quadriplegia.

143.   Causing a delay in Mr. Silva's receipt of medical care, despite the obvious and urgent need.

144.   As a direct and proximate result of Defendants conduct as alleged above, and other undiscovered negligent conduct, Mr. Silva was caused to suffer severe pain and suffering and was rendered permanently quadriplegic.

145.   Stanislaus County is vicariously liable for the wrongful acts of the Defendant Deputies pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject her or her to liability.

146.   Stanislaus Sheriff Department employees, agents and supervisors were aware of Mr. Silva's status as an unhoused individual suffering from mental illness. They were aware that Stanislaus Deputies, including the Defendant Deputies, frequently unjustifiably assault individuals similarly situated to Mr. Silva. They were negligent in their failure to properly supervise the Defendant Deputies by instructing them to cease such conduct. And their negligence was a contributing cause of the Defendant Deputies' actions and of Mr. Silva's injuries and death.

147.   Plaintiff brings this claim as successor-in-interest to Mr. Silva and seeks wrongful death and punitive damages under this claim; survival damages include pre-death pain and suffering damages.

148.   Plaintiff also seeks attorney's fees and costs for this claim, pursuant to 42 U.S.C. § 1988.

## ELEVENTH CLAIM FOR RELIEF

### Violation of Cal. Civil Code § 52.1

### Against All Defendants

149.   Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

150.   California Civil Code, Section 52.1 (the Bane Act), prohibits any person from using violent acts or threatening to commit violent acts in retaliation against another person for exercising that person's constitutional rights.

151.   On information and belief, the Defendant Deputies, while working for the Stanislaus County and acting within the course and scope of their duties, intentionally committed acts of violence against Mr. Silva, including breaking his neck by slamming him to the ground head-first, all without justification or excuse, or by integrally participating and failing to intervene in the above violence, and by denying him necessary medical care. The Defendant Deputies' intent to violate Mr. Silva's constitutional rights is demonstrated by their reckless disregard for Mr. Silva's constitutional rights.

152.   The Defendant Deputies' use of extreme force and subsequent mistreatment of Mr. Silva's injured body interfered with his civil rights to be free from unreasonable searches and seizures, and his right to medical care to mitigate caused by the deputies use of force.

153.   On information and belief, the Defendant Deputies intentionally and spitefully committed the above acts to discourage Mr. Silva from exercising his

1  civil rights, to retaliate against him for invoking such rights, or to prevent him from

2  exercising such rights, which he was fully entitled to enjoy.

3      154.   On information and belief, Mr. Silva reasonably believed and

4  understood that the violent acts committed by the Defendant Deputies were

5  intended to discourage him from exercising the above civil rights, to retaliate

6  against him for invoking such rights, or to prevent him from exercising such rights.

7      155.   The conduct of the Defendant Deputies was a substantial factor in

8  causing Mr. Silva's harms, losses, injuries, and death.

9      156.   Stanislaus County is vicariously liable for the wrongful acts of the

10  Defendant Deputies pursuant to section 815.2(a) of the California Government

11  Code, which provides that a public entity is liable for the injuries caused by its

12  employees within the scope of the employment if the employee's act would subject

13  him or her to liability.

14      157.   The conduct of the Defendant Deputies was willful, wanton,

15  malicious, and done with reckless disregard for the rights and safety of Mr. Silva.

16      158.   Plaintiff brings this claim as successor-in-interest to Mr. Silva and

17  seeks wrongful death and punitive damages under this claim; survival damages

18  include pre-death pain and suffering damages.

19      159.   Plaintiff also seeks attorney's fees and costs for this claim, pursuant to

20  42 U.S.C. § 1988.

21                    **PRAYER FOR RELIEF**

22      WHEREFORE, Plaintiff Dorothey Heimbach requests entry of judgment in

23  her favor and against Defendants STANISLAUS COUNTY and Stanislaus Sheriff

24  Deputies JUSTIN CAMARA, ZA XIONG, and ERIC BAVARO, as follows:

25      1.   For compensatory damages according to proof at trial, including:

26  survival damages, not limited to pre-death pain and suffering and loss life under

27  federal and state law; and wrongful death damages under federal and state law;

28      2.   For funeral and burial expenses, and loss of financial support;

3.    For punitive and exemplary damages against JUSTIN CAMARA, ZA XIONG, and ERIC BAVARO;

4.    For statutory damages;

5.    For reasonable attorneys' fees including litigation expenses;

6.    For costs of suit and interest incurred; and

7.    For such further other relief as the Court may deem just, proper, and appropriate.

DATED: March 14, 2024              LAW OFFICES OF DALE K. GALIPO

_____

Dale K. Galipo
*Attorney for Plaintiff*


**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.


DATED: March 14, 2024              LAW OFFICES OF DALE K. GALIPO

_____

Dale K. Galipo
*Attorney for Plaintiff*