**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOROTHEY HEIMBACH, individually and as successor in interest to Anthony Silva,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>STANISLAUS COUNTY; and JUSTIN CAMARA, ZA XIONG, and ERIC BAVARO, in their individual capacities,<br><br>　　　　Defendants. | CASE NO.  2:23-cv-01887-DJC-CSK<br><br>**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT**<br><br>Date:  December 10, 2024<br>Time:  10:00 AM |

The present discovery dispute concerns discovery disputes related to three categories of documents: (1) communications and memorandum referring to the incident; (2) use-of-force reports; and (3) department use-of-force statistics.

**I.      The Details of the Conference**

　　　　**Per Plaintiff:**

The parties met and conferred multiple times regarding the instant discovery disputes and were unable to come to a resolution. The disputes center around the County not producing documents in response to several of Plaintiff's requests for production of documents ("RFPs").

October 1, 2024 Meet & Confer Letter:

- Plaintiff's October 1, 2024 letter detailed concerns with:
    - County's responses to Plaintiff's First and Second Sets of RFPs
- The issues raised that are relevant to this motion included the County's failure to produce:
    - Use-of-force reports written by or involving Defendants Camara or Xiong
    - Communications and memos referring to the incident, including:
        1. Internal communications about incident (emails, memos)
        2. Communications with District Attorney's office and other agencies regarding incident
        3. Notes/memoranda related to investigation into incident
    - Departmental use-of-force statistics

October 11, 2024 Zoom Meeting: The parties reached agreements on some of the above issues and the County agreed to produce: communications that are not protected by attorney client privilege (by searching communication database by case number and keywords). Some disputes remained regarding use-of-force reports and use-of-force statistics. Defense counsel stated that it would check with the County about the remaining disputed issues. Plaintiff agreed to limit their request for use-of-force reports to those pre-dating the incident, this limitation was a compromise offered with the understanding that this would lead to the speedy production of the documents.

November 5, 2024 Zoom Meeting: At a meeting of counsel following a deposition, the County expanded agreements to include use of force forms/reports and related

investigatory documents for Officers Camara and Xiong (limited to pre-incident), as well as departmental use-of-force statistics.

November 8, 2024 Call: The County committed to send amended RFP responses that day responsive to the above agreements and provide additional amendments early the following week. The Plaintiff agreed to postpone court involvement based on the apparent progress of the meet and confer process.

November 8, 2024 Production: The County served amended responses to Plaintiff's Second Set of RPFs, but only produced four pages of documents: a single citizen complaint and a single use-of-force form, despite the broader agreements outlined above.

Plaintiff's counsel made multiple attempts to schedule an informal discovery conference before filing this motion, but the County's counsel did not respond.

**Per Defendant:**

Defendant County provided amended responses on November 1, 2024, and then additional amended responses on November 8, 2024.  However, Plaintiff failed to meet and confer about those amended responses prior to filing of the Notice (ECF no. 22) on November 14, 2024.   It is not clear from the Notice, what specific requests or responses were at issue.  On November 14, 2024, after receipt of Plaintiff's initial draft of this Joint Statement, counsel for Defendant emailed counsel for Plaintiff to alert them of this failure to meet and confer on the amended responses.

On November 22, 2024, counsel for the parties conducted a telephonic meet and confer, during which counsel for Defendant noted that the initial Joint Statement did not set forth any specific requests or responses.  Counsel for the parties discussed RPD Set One, Nos 1-4, in that "use of force" reports were indeed produced, that counsel for Defendant had received raw results of searches for email communications but needed to time review for potentially responsive documents and

1  process same.   At the time, counsel for Defendant was also waiting on information
2  about statistics from the County, but there has been no refusal to produce.

3       During this meet and confer, counsel for Plaintiff for the first time articulated
4  a much broader scope of RPD 1-4.  No meet and confer was had about the requests
5  for emails.

6  **II.    Nature of the Action and Dispute**
7       **Per Plaintiff:**

8       This is a civil rights action under 42 U.S.C. § 1983 stemming from the death
9  of Anthony Silva ("Decedent") following his encounter with Stanislaus County
10 Sheriff's Deputies Camara and Xiong on October 8, 2022. The incident began when
11 Deputies Camara and Xiong responded to a public intoxication call in downtown
12 Riverbank, California. Although Decedent neither ran nor resisted, the deputies
13 immediately tackled him to the ground and handcuffed him. After spending
14 approximately seven minutes deciding how to proceed while Decedent remained
15 calm and compliant, the deputies began leading him to a police vehicle. At this
16 point, Decedent briefly pulled his handcuffed hands away from the deputies but did
17 not attempt to strike anyone. Despite the presence of at least three deputies and the
18 situation being under control, Deputies Camara and Xiong responded by lifting
19 Decedent's cuffed hands up toward his head and then executing a forceful takedown
20 that flipped him head-first into the concrete pavement. This maneuver broke
21 Decedent's neck in two places, causing immediate paralysis and eventually causing
22 his death.

23       Although Decedent immediately informed the deputies that he was paralyzed,
24 instead of providing appropriate care for someone with a potential neck injury, the
25 deputies moved him from the ground to a bench where his neck was bent and
26 unsupported. Despite the incident occurring in downtown Riverbank, emergency
27 medical personnel did not arrive for more than 30 minutes after the takedown, during
28 which time Decedent remained on the bench without proper medical attention. He

-4-

died from his injuries on September 10, 2023. The complaint alleges both individual liability against the deputies and municipal liability claims against Stanislaus County under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

Some of the factual disputes that are most relevant to this motion include: (1) the severity of the force used by Deputies Camara and Xiong; (2) the seriousness of the threat posed by the Decedent; (3) whether Deputy Camara submitted false reports related to the incident by omitting that it resulted in a severe neck fracture; (4) whether supervisors reviewed and approved the reports, knowing they were false or misleading; (5) whether Deputy Xiong failed to report his use of force against Decedent and whether that was a violation of the department's policy;  (6) whether the County was on notice that Deputies Camara and Xiong had a pattern of using unnecessary and excessive force; (7) whether Deputies Camara and Xiong had a pattern of lying about or minimizing the severity of force they used in their reports; (8) whether their supervisors had a pattern and practice of approving misleading or incomplete use-of-force reports; (9) whether the County's failure to discipline Deputies Camara and Xiong after this incident constituted ratification of their conduct; (10) whether the County's use-of-force reporting system was adequate to identify and address excessive force incidents; (11) whether the County had a custom or practice of failing to properly investigate serious use-of-force incidents; (12) whether the County failed to properly train and supervise Deputies Camara and Xiong regarding appropriate use of force and accurate reporting; and (13) whether Department-wide use-of-force statistics would show a pattern of excessive force that the County failed to address.

**Per Defendant:**

Defendant submits the above is either disputed and/or not actually alleged in the complaint, and the allegations related to Monell are conclusory in terms of force,

supervision and training.   Whether a request is relevant depends on not only the scope of the claims, but the scope of the requests, as addressed more fully below.

## III.    THE CONTENTIONS OF THE PARTIES
### Per Plaintiff:

The discovery dispute centers on three categories of documents that Plaintiff contends are crucial to proving both individual liability and *Monell* claims against the County: (1) use-of-force reports involving or prepared by Deputies Camara or Xiong; (2) internal communications, including emails between County officials regarding the incident, which are relevant to Plaintiff's ratification claim; and (3) departmental statistics on use-of-force incidents for the five years preceding the incident, which Plaintiff believes are compiled monthly for the California Department of Justice and could support Plaintiff's *Monell* claims against the County.

Despite multiple meet and confer sessions resulting in agreements for production, the County has produced only four pages of documents in response to the requests at issue in this motion. In contrast, Plaintiff has shown flexibility by agreeing to temporal limitations on certain requests and readily stipulating to a protective order, which was signed by the Court on November 1, 2024. The County's delayed and incomplete productions are frustrating the discovery process and hampering Plaintiff's ability to develop evidence for their claims before the discovery deadline of January 24, 2025.

Accordingly, the key issue for the Court is whether these categories of documents must be produced over the County's, given their clear relevance to both the excessive force and *Monell* claims at issue in this litigation. Additionally, given the unjustified delays, and the County's false promises during meet and confer sessions, Plaintiff requests that the Court set strict deadlines for the County to produce responsive documents.

**Per Defendant:**

Defendant will address each issue below.

## A.   EACH SPECIFIC REQUEST FOR PRODUCTION OF DOCUMENTS AND THE OBJECTION THERETO.

The requests that follow are from Plaintiff's Second Set of Requests for Production. Unless noted otherwise, the responses and objections are from Defendant's September 25, 2024 responses.  Defendant submits these are the incorrect responses.

Each category of requests and responses is in its own section along with Plaintiff's and Defendant's related arguments.

### 1.   Use-of-force Reports

*REQUEST FOR PRODUCTION NO. 1:*

*All use-of-force reports that REFER OR RELATE TO incidents involving JUSTIN CAMARA.*

*RESPONSE TO REQUEST FOR PRODUCTION NO. 1 (From Defendants' November 8, 2024 responses):*

*Objection. Overly broad as to time in that no time frames are delineated. Vague as to "use of force reports" in that such is not defined in the requests, and thus calls for speculation. Vague as to the term "use of force", which encompasses all types of force (firearms, non-lethal, baton, etc.), which are not relevant to this action, and thus is burdensome and harassing. Vague as to "refer or relate to incidents involving" in that the way the question is phrased, the Defendant need only have been present at some point and thus "referenced" as opposed to actually been involved in any use of force, and thus seeks irrelevant matters, and thus is burdensome and harassing. The defects preclude defendant from reasonably*

1  *responding. Without waiver, Defendant responds as follows: See DEF 0083-0084*

2  *previously produced, and DEF105-106, produced herewith*

3  *REQUEST FOR PRODUCTION NO. 2:*

4  *All use-of-force reports that REFER OR RELATE TO incidents involving ZA*

5  *XIONG.*

6  *RESPONSE TO REQUEST FOR PRODUCTION NO. 2:*

7  *Objection. Overly broad as to time in that no time frames are delineated. Vague as*

8  *to "use of force reports" in that such is not defined in the requests, and thus calls for*

9  *speculation. Vague as to the term "use of force", which encompasses all types of*

10  *force (firearms, non-lethal, baton, etc), which are not relevant to this action, and*

11  *thus is burdensome and harassing. Vague as to "refer or relate to incidents*

12  *involving" in that the way the question is phrased, the Defendant need only have*

13  *been present at some point and thus "referenced" as opposed to actually been*

14  *involved in any use of force, and thus seeks irrelevant matters, and thus is*

15  *burdensome and harassing. The defects preclude defendant from reasonably*

16  *responding.*

17  *REQUEST FOR PRODUCTION NO. 3 :*

18  *All use-of-force reports prepared by JUSTIN CAMARA.*

19  *REQUEST FOR PRODUCTION NO. 4:*

20  *All use-of-force reports prepared by ZA XIONG.*

21  *RESPONSE TO REQUEST FOR PRODUCTION NO. 3–4 (From Defendants'*

22  *November 8, 2024 responses):*

23  *Objection. Overly broad as to time in that no time frames are delineated. Vague as*

24  *to "use of force reports" in that such is not defined in the requests, and thus calls for*

25  *speculation. Vague as to the term "use of force", which encompasses all types of*

26  *force (firearms, non-lethal, baton, etc.), which are not relevant to this action, and*

27  *thus is burdensome and harassing. The defects preclude defendant from reasonably*

28

*responding. Without waiver, Defendant responds as follows: following a reasonable*
*search, no responsive documents could be located.*

**Per Plaintiff:**

Use-of-force reports related to these deputies could establish whether the County was on notice of their propensity to use excessive force and failed to take corrective action, which would be highly relevant to our *Monell* claim as it would show a failure to train Deputies Camara and Xiong and a failure to enforce the County's own use-of-force policies.

While these requests may seem broad, Plaintiff believes that their scope is appropriate given the particular circumstances of this case. Plaintiff has discovered that Deputy Camara lied in his reports related to this incident by downplaying the severity of his use of force against the Decedent. For example, Deputy Camara filled out a use-of-force form that minimized the Decedent's injuries, on a multiple choice form he selected "internal injury" and "abrasion/laceration" while *omitting "bone fracture."* And nowhere on the form he state that the Decedent's neck was broken. This stands in direct contrast to Deputy Camara's own testimony, which confirms he spoke with an  ICU nurse on October 9 and learned the Decedent was awaiting surgery for a "severe neck fracture." Moreover, Sergeant Hickman approved this demonstrably inaccurate form two months after it was submitted despite Deputy Camara having informed him about the neck injury on October 9.

Given the proven record of Deputy Camara and his supervisor of submitting and approving a false report that minimize the extent of the force used, Plaintiff should not be required to limit her request for use-of-force reports. Plaintiff is entitled to learn about other incidents of excessive force potentially covered up by inaccurate reporting. Examining Deputy Camara's use-of-force reports will allow Plaintiff to identify any patterns of misconduct and determine if the incident at issue in this case is part of a larger practice of downplaying or concealing the severity of force used against civilians. Uncovering such evidence would clearly strengthen our

*Monell* claim but it would also be relevant our excessive force claim, our punitive damages claim, and the credibility of the defendants.

Furthermore, Sergeant Hickman's approval of the inaccurate report, despite being informed of the true extent of the Decedent's injuries, raises serious questions about the integrity of the department's use-of-force reporting system. It suggests a potential failure of supervisory oversight and a culture that tolerates or even encourages the submission of misleading reports. By reviewing additional use-of-force reports involving Deputy Camara, Plaintiff can assess whether this incident was an isolated occurrence or part of a systemic problem within the department.

Given the gravity of the allegations and the documented evidence of false reporting in this case, a broader review of Deputy Camara's use-of-force history is both relevant and proportional to the claims at issue. Plaintiff's request is not a mere fishing expedition but a targeted inquiry based on a demonstrated need for further information. These arguments apply equally to Deputy Xiong as he failed to even submit a use-of-force form in this case, even though he admittedly used a leg-sweep to take Decedent to the ground head-first, resulting in Decedent breaking his neck and eventually dying.

In light of these compelling circumstances, Plaintiff respectfully requests that the Court grant her motion to compel production of all use-of-force reports written by or involving Deputy Camara and Deputy Xiong. Access to these reports is essential to uncovering the full extent of any misconduct and ensuring that Plaintiff can effectively pursue her claims.

## Per Defendant:

### A.     Plaintiff failed to sufficiently meet and confer

A court can deny a motion to compel solely because of a party's failure to meet and confer prior to filing the motion.  *Schenck v. Sepulveda*, No. C 09–0727 WHA (PR), 2010 WL 5174340, at *1–2, 2010 U.S. Dist. LEXIS 136529, at *3–4 (N.D.Cal. Dec. 15, 2010); see *Shaw v. Cnty. of*

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT

*San Diego*, No. 06–CV– 2680–IEG (POR), 2008 U.S. Dist. LEXIS 80508, at *3–4 (S.D.Cal. Oct. 9, 2008) (denying plaintiff's motion to compel for failing to attempt to meet and confer.)

The above requests are about "use of force" reports, which Defendant understood to mean a specific form that is separately filled out by the Sheriff's Department on a computer.   To the extent any existed, such were produced in connection with November 8, 2024 responses.

Notwithstanding that the Notice of motion and the initial draft Joint Statement did not delineate which requests were at issue, the first time the parties met and conferred on RPD No. 1-4 was on November 22, 2024.  There, for the first time, counsel for Plaintiff indicated that "use of force report" was meant to encompass any report authored by the individual Deputies that involved use of force, or even more broadly, any report which involved those two deputies and any use of force, which present much different inquiries, and highlights the failure to meet and confer, specific to the objections raised in the responses.  On this basis, the motion should be denied.

**B.      The objections should be sustained**

**1.      The requests as phrased are not reasonably particular**

Plaintiff has the duty to state discovery requests with "reasonable particularity." Fed.R.Civ.P. 34(b)(1)(A). All-encompassing demands take little account of that responsibility. A discovery request should be sufficiently definite and limited in scope that it can be said "to apprise a person of ordinary intelligence what documents are required and [to enable] the court ... to ascertain whether the requested documents have been produced." Wright & Miller, 8A Federal Practice and Procedure § 2211, at 415-17 n. 16 (collecting cases).

"The test for reasonable particularity is whether the request places a party upon reasonable notice of what is called for and what is not." *Reinsdorf v. Skechers U.S.A*., Inc., 296 F.R.D. 604, 616 (C.D. Cal. 2013) (*quoting Bruggeman ex rel. Bruggeman v. Blagojevich*, 219 F.R.D. 430, 436 (N.D.Ill.2004). Courts routinely disfavor overly broad discovery requests that ask opposing parties to produce everything under the sun that relates to the ongoing litigation. *See Hanford Executive Management Employee Ass'n v. City of Hanford,* No. 1:11–cv–00828–AWI–SAB, 2013 WL 5671460, at *8 (E.D.Cal. Oct. 17, 2013); *Miles v. Shanghai Zhenhua Port of Machinery Co., LTS.,* No. C08–5743 FDB, 2009 WL 3837523, at *1 (W.D.Wash. Nov. 17, 2009); *Tubbs v. Sacramento*

*County Jail,* No. CIV S–06–0280 LKK GGH P, 2008 WL 863974, at *1 (E.D.Cal. Mar. 28, 2008); *Lucero v. Valdez,* 240 F.R.D. 591, 594 (D.N.M.2007).

Here, Plaintiff did not define "use of force reports" which Defendant reasonably interpreted as the computer form that is separately filled out (and this is how the Sheriff's Department references them), not any report in which any use of force is documented, which Defendant submits is not a reasonable interpretation in light of the use of the phrase in Sheriff's Department ordinary course of business.   As such, Defendant has reasonably complied and/or the requests are not reasonably particular, such that the objection should be sustained.    For this additional reason, the motion should be denied.

> **2.**     **Plaintiff fails to establish relevance for all reports in which a use of force is documented**

The party seeking to compel discovery has the initial burden of "establishing that its request satisfies the relevancy requirements of Rule 26(b)(1)." Fed.R.Civ.P. 26(b)(1); see *Soto v. City of Concord,* 162 F.R.D. 603, 610 (N.D.Cal.1995).  "Rule 34, in conjunction with Rule 26 (b), provides that upon a motion "showing good cause therefor," a court may order a party to produce…" *Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers*, 357 U.S. 197, 199 (1958).  Defendant submits that Plaintiff has not made a threshold showing that she would be entitled to the broad range of information she seeks, much less that there is good cause for the production.

First, the requests fail to reasonably limit the type of force involved for which the reports are being sought.   This failure renders the request largely irrelevant.  To support a Monell claim, Plaintiff needs to show "[a] pattern of similar constitutional violations" *Connick v. Thomson*, 563 U.S. 51, 62 (holding that four Brady violations were not sufficiently similar to the sort of Brady violation at issue in the case to establish deliberate indifference – i.e. failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind). However, as to the above, not all uses of force would bear sufficient resemblance to the fact pattern at issue here to be pertinent. See e.g. Parkison v. Butte Cty. Sheriff's Dep't, No. 2:09-CV-2257-MCE-DAD, 2013 WL 1007042, * 12 (E.D. Cal. Mar. 13, 2013), report and recommendation adopted, No. 2:09-CV-02257-

MCE, 2013 WL 1345080 (E.D. Cal. Mar. 28, 2013) ("plaintiff cites to other cases that do not involve the use of PepperBall System by law enforcement. Because the cases do not involve the type of excessive force at issue here, the cases relied upon by plaintiff could not have put the Butte County Sheriff's Department or defendant Jones on notice of any widespread problem or a deficiency in training so as to prevent the alleged violation plaintiff's constitutional rights in this case.")

Thus, as noted in the objections, force involving for example taser, baton, shootings and so forth are sufficiently similar to be relevant, but the requests are not so limited.

Second, a plaintiff seeking discovery cannot rely upon vague or conclusory allegations in its complaint as a basis for a motion to compel. See *Stander v. Fin. Clearing & Servs. Corp.*, 718 F. Supp. 1204, 1210 (S.D.N.Y. 1989) ("It is well settled law that an insufficient and conclusory complaint cannot serve as the basis for discovery aimed at fishing for a possible claim against the purported defendant."); *Dillard v. Rumph*, 584 F. Supp. 1266, 1269 (N.D. Ga. 1984) (". . . the Court is unable at this time, in light of the vague allegations of plaintiff's complaint, to evaluate the merits of plaintiff's motion to compel discovery."); *Arnold v. Arnold Corp.*, 668 F. Supp. 625, 628-29 (N.D. Ohio 1987) aff'd in part, vacated in part sub nom. *Arnold v. Arnold Corp.-Printed Commc'ns For Bus.*, 920 F.2d 1269 (6th Cir. 1990) ("In the Court's opinion, allowing conclusory allegations of fraud, such as those pleaded by the plaintiff in his complaint, to suffice to … to compel limited discovery, would allow the exception to swallow the rule.").

Here, the requested documents bear no resemblance to what is part of the Monell claim, which is limited to force of a takedown.  The RPD requests make no effort to so limit, and thus are mere fishing expeditions.  Therefore, for these additional reasons, the motion should be denied.

### 3.    Not reasonably proportional to the needs of the case

In all aspects, the scope of discovery "must be measured against the yardstick of proportionality." *Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 355 (D. Md. 2012) (citation omitted).  As the court in *In re Bard IVC Filters Products*, 317 F.R.D. 562, 563 (D.Ariz. 2016) states:

> Relevancy alone is no longer sufficient—discovery must also be proportional to the needs of the case. The Advisory Committee Note makes clear, however, that the amendment does not place the burden of proving proportionality on the party seeking discovery. The amendment "does not change the existing responsibilities of the court and the parties to consider proportionality, and the change does not place on the party seeking discovery the burden of addressing all proportionality considerations." Rule 26, Advis. Comm. Notes for 2015 Amends. Rather, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes."

Here, given that this case arises from a takedown which allegedly resulted in a broken neck, not all uses of force, much less reports that might mention same, Defendant submits it is not reasonably proportional to seek all reports that might involve the deputies or some undefined use of force. Accordingly, the requests are not reasonably proportional to the needs of the case and the motion should be denied.

    4.     No temporal time limits

"[P]rinciples of proportionality call for some further temporal limitations on the scope of this particular discovery, as well as topical limitations, pertaining to the matters at issue in this litigation. In the past, in the exercise of the court's discretion, courts have often set five year temporal limits on discovery." *Miller v. Hygrade Food Prod. Corp.*, 89 F. Supp. 2d 643, 647 (E.D. Pa. 2000).   Here, while Plaintiff agreed to limit the requests to "pre-dating the incident", there was no back end limitation.  The above authority suggests a five year limitation is reasonable.

## 2.    Internal Communications

*REQUEST FOR PRODUCTION NO. 7:*

*All emails from JUSTIN CAMARA that REFER OR RELATE TO the DECEDENT.*

*REQUEST FOR PRODUCTION NO. 8:*

*All emails from ZA XIONG that REFER OR RELATE TO the DECEDENT.*

*REQUEST FOR PRODUCTION NO. 9:*

*All emails from JUSTIN CAMARA that REFER OR RELATE TO the INCIDENT.*

1  *REQUEST FOR PRODUCTION NO. 10:*

2  *All emails from ZA XIONG that REFER OR RELATE TO the INCIDENT.*

3  *REQUEST FOR PRODUCTION NO. 11:*

4  *All emails to JUSTIN CAMARA that REFER OR RELATE TO the DECEDENT.*

5  *REQUEST FOR PRODUCTION NO. 12:*

6  *All emails to ZA XIONG that REFER OR RELATE TO the DECEDENT*

7  *REQUEST FOR PRODUCTION NO. 13:*

8  *All emails to JUSTIN CAMARA that REFER OR RELATE TO the INCIDENT.*

9  *REQUEST FOR PRODUCTION NO. 14:*

10  *All emails to ZA XIONG that REFER OR RELATE TO the INCIDENT.*

11  *RESPONSE TO REQUEST FOR PRODUCTION NO. 7–14:*

12  *Objection. Overly broad as to time in that no time frames are delineated. The*

13  *request is also not reasonably limited in context, including to whom or from whom*

14  *an email was sent, and thus seeks to invade the Attorney-Client Privilege and/or*

15  *Work-Product Doctrine, official information insofar as it is not reasonably limited in*

16  *context or seeks "all documents" which includes documents in this litigation. See In*

17  *re Grand Jury Investigation, 974 F.2d 1068, 1070-71 (9th Cir. 1992); United States*

18  *v. Christensen (9th Cir. 2016) 828 F.3d 763, 805. Rules 26(b)(3)(A) and (B) of the*

19  *Federal Rules of Civil Procedure provide protection from discovery for documents*

20  *prepared in anticipation of litigation and the mental impressions, conclusions,*

21  *opinions, or legal theories of an attorney or other representative of a party*

22  *concerning the litigation. See Buechel v. United States, 2010 WL 3310243, at * 1*

23  *(S.D. Ill. Aug. 19, 2010). The defects preclude Defendant from responding.*

24  *REQUEST FOR PRODUCTION NO. 42:*

25  *All communications between COUNTY or SCSD and the District Attorney's office*

26  *regarding the INCIDENT.*

27  *REQUEST FOR PRODUCTION NO. 43:*

28

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT

1  *All communications between COUNTY or SCSD and any other law enforcement*

2  *agencies regarding the INCIDENT.*

3  *RESPONSE TO REQUEST FOR PRODUCTION NO. 42–43:*

4  *Objection. The phrase "all communications" together with the term "COUNTY"*

5  *which in includes "and all its subdivisions, including the Stanislaus County Sheriff's*

6  *Department ("SCSD"), and any of its agents, representatives, and attorneys, and*

7  *any other person acting on its behalf, pursuant to its authority or subject to its*

8  *control" is overly broad in both scope and time, and violates rule 34 of the Federal*

9  *Rules of Civil Procedure. Because the request is not reasonably limited in context,*

10 *scope or time, including the source of the documents, and thus seeks to invade the*

11 *Attorney-Client Privilege and/or Work-Product Doctrine, official information*

12 *insofar as it is not reasonably limited in context or seeks "all documents ". See In re*

13 *Grand Jury Investigation, 974 F.2d 1068, 1070-71 (9th Cir. 1992); United States v.*

14 *Christensen (9th Cir. 2016) 828 F.3d 763, 805. Rules 26(b)(3)(A) and (B) of the*

15 *Federal Rules of Civil Procedure provide protection from discovery for documents*

16 *prepared in anticipation of litigation and the mental impressions, conclusions,*

17 *opinions, or legal theories of an attorney or other representative of a party*

18 *concerning the litigation. See Buechel v. United States, 2010 WL 3310243, at * 1*

19 *(S.D. Ill. Aug. 19, 2010). The defects preclude Defendant from reasonably*

20 *identifying what kind of documents are being sought to prepare a privilege log*

21 *and/or respond to this request. The burden of relevancy is on the party seeking the*

22 *discovery under Rule 26. The defects preclude Defendant from responding.*

23 **Per Plaintiff:**

24 Plaintiff seeks internal communications, notes, and memorandum related to

25 the incident. These documents are critical to our ratification claim against the

26 County brought pursuant to *Monell*, 436 U.S. 658. A municipality may be liable

27 under *Monell* when its officials ratify an employee's unconstitutional conduct.

28 Internal communications showing the County's responses, deliberations, and

decisions following this incident would demonstrate whether policymakers effectively endorsed the deputies' egregious use of force by failing to meaningfully investigate, discipline, or retrain them after breaking Mr. Silva's neck. Moreover, communications between County officials about the incident could reveal whether this was part of a broader pattern of ratifying similar misconduct, as well as what training deficiencies or policy problems may have contributed to the constitutional violation.

Defendant's objections are meritless. The specified timeframe is not overly broad, as many of the issues discussed above are equally pertinent to communications sent today as they would be to those sent on October 8, 2022. And the Defendant's invocation of a privilege is undercut by its failure to produce a privilege log.

**Per Defendant:**

First, the above fails to reflect the amended responses provided on November 1, 2024, regarding which Plaintiff failed to meet and confer.  Second, Plaintiff's counsel agreed to limit these requests to not include attorney client communications or work product, and there is no authority that states Plaintiff is entitled to counsel for Defendants' communications.  Third, the requests are not reasonably limited in time.   Fourth, the above discussion fails to account for the agreed-upon[1] search of emails using the Sacramento County Sheriff's Department report number.   Fifth, as noted, counsel for Defendant is currently reviewing the raw data of the search results using the case number and will provide amended responses and produce any

---

[1] While counsel for the parties also initially agreed to use the name of decedent, but later learned there was a deputy employed with the County with the same name, and an initial search resulted in over 300,000 hits, which is burdensome, and thus counsel for Defendant has withdrawn any agreement to use that term.  Counsel for Defendant is open to discussion of other reasonable terms.

responsive documents. Accordingly, there is no dispute, just a delay.   For these reasons, the motion should be denied.

### 3.    Use-of-force Statistics

*REQUEST FOR PRODUCTION NO. 41:*

*All DOCUMENTS that contain departmental statistics on use of force incidents for the five years preceding the INCIDENT.*

*RESPONSE TO REQUEST FOR PRODUCTION NO. 41:*

*Objection. The phrase "all documents" together with the phrase "that contain departmental statistics on use of force incidents" is overly broad, and violates rule 34 of the Federal Rules of Civil Procedure. Vague as to the term "use of force", which encompasses all types of force (firearms, non-lethal, baton, etc), which are not relevant to this action, and thus is burdensome and harassing. Plaintiff has the duty to state discovery requests with "reasonable particularity." Fed.R.Civ.P. 34(b)(1)(A). All-encompassing demands take little account of that responsibility. A discovery request should be sufficiently definite and limited in scope that it can be said "to apprise a person of ordinary intelligence what documents are required and [to enable] the court ... to ascertain whether the requested documents have been produced." Wright &Miller, 8A Federal Practice and Procedure § 2211, at 415-17 n. 16 (collecting cases). "The test for reasonable particularity is whether the request places a party upon reasonable notice of what is called for and what is not." Reinsdorf v. Skechers U.S.A., Inc., 296 F.R.D. 604, 616 (C.D. Cal. 2013) (quoting Bruggeman ex rel. Bruggeman v. Blagojevich, 219 F.R.D. 430, 436 otice of what is called for and what is not." Reinsdorf v. Skechers U.S.A., Inc., 296 F.R.D. 604, 616 (C.D. Cal. 2013) (quoting Bruggeman ex rel. Bruggeman v. Blagojevich, 219 F.R.D. 430, 436 (N.D.Ill. 2004). This is a "kitchen sink" request that does not reasonably describe a category of documents. See e.g. Lindell v. Synthes USA, No. 1:11-CV-02053-LJO,*

*2013 WL 3146806, at \*8 (E.D. Cal. June 18, 2013) (sustaining objections to similarly overbroad requests and denying motion to compel). Courts routinely disfavor overly broad discovery requests that ask opposing parties to produce everything under the sun that relates to the ongoing litigation. See Hanford Executive Management Employee Ass'n v. City of Hanford, No. 1:11–cv–00828 AWI SAB, 2013 WL 5671460, at \*8 (E.D.Cal. Oct. 17, 2013); Miles v. Shanghai Zhenhua Port of Machinery Co., LTS., No. C08– 5743 FDB, 2009 WL 3837523, at \*1 (W.D.Wash. Nov. 17, 2009); Tubbs v. Sacramento County Jail, No. CIV S– 06– 0280 LKK GGH P, 2008 WL 863974, at \*1 (E.D.Cal. Mar. 28, 2008); Lucero v. Valdez, 240 F.R.D. 591, 594 (D.N.M.2007)*

*The request is also not reasonably limited in context, scope or time, including the source of the documents, and thus seeks to invade the Attorney-Client Privilege and/or Work-Product Doctrine, official information insofar as it is not reasonably limited in context or seeks "all documents ". See In re Grand Jury Investigation, 974 F.2d 1068, 1070-71 (9th Cir. 1992); United States v. Christensen (9th Cir. 2016) 828 F.3d 763, 805. Rules 26(b)(3)(A) and (B) of the Federal Rules of Civil Procedure provide protection from discovery for documents prepared in anticipation of litigation and the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation. See Buechel v. United States, 2010 WL 3310243, at \* 1 (S.D. Ill. Aug. 19, 2010). The defects preclude Defendant from reasonably identifying what kind of documents are being sought to prepare a privilege log and/or respond to this request. The burden of relevancy is on the party seeking the discovery under Rule 26. The defects preclude Defendant from responding.*

**Per Plaintiff:** Plaintiff seeks departmental statistics on use of force incidents. Plaintiff believes these statistics are already compiled by the County on a monthly basis to be sent to the California Department of Justice. These records are relevant to our *Monell* claim because they could support our custom and policy claim against

the County. Defendant agreed to produce these documents in meet and confer sessions, but has not produced any such documents at this point. Plaintiff requests that the Court set a deadline for the production of these documents.

**Per Defendant:** There is no dispute here, just a delay on obtaining and producing the information.

## IV.   REQUEST FOR COSTS AND SANCTIONS

### Per Plaintiff:

Plaintiff requests that the Court order the County to pay Plaintiff's reasonable expenses, including attorneys' fees, incurred in bringing this motion. Should the Court grant this request, Plaintiff will submit a declaration detailing the reasonable expenses incurred in making this motion.

**Per Defendant:**

Counsel for Plaintiff's request for costs fails to comply with Due Process. Buried in the above is a request for costs by Plaintiff.  Insofar as Plaintiff's notice fails to include any amounts sought nor authority upon which it is based, Plaintiff fails to comply with due process.  "[D]ue process requires that courts provide notice and opportunity to be heard before imposing any kind of sanctions."  *In re Ames Dept. Stores, Inc*., 76 F.3d 66, 70 (2d Cir.1996) (emphasis in original).   The notice must be particularized - meaning both of the sanctioning authority being considered and the conduct alleged to be sanctionable. See *Zuk v. Eastern Pa. Psychiatric Inst. of the Med. College of Pa*., 103 F.3d 294, 298 (3d Cir.1996); Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1357 (3d Cir.1990).  The purpose of particularized notice is to put a party "on notice as to the particular factors that he must address if he is to avoid sanctions."   Jones, 899 F.2d at 1357.

Here, the notice fails to comply with due process.  Nowhere in either the notice of the motion are there any amounts requested nor the statutory or other bases for such costs.  .  On these bases, the motion fails to comply with due process and

should be denied.  In addition, counsel for Plaintiff's rush to move to compel

without meet and confer warrants denying the request

DATED: November 26, 2024                    LAW OFFICES OF DALE K. GALIPO

                                            */s/ Cooper Alison-Mayne*___
                                            Cooper Alison-Mayne
                                            Dale K. Galipo
                                            Attorneys for Plaintiff