**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

*Attorneys for Plaintiff Dorothey Heimbach*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOROTHEY HEIMBACH,<br><br>       Plaintiff,<br><br>vs.<br><br>STANISLAUS COUNTY, JUSTIN CAMARA, and ZA XIONG,<br><br>       Defendants. | 2:23-cv-01887-DJC-CSK<br><br>*Assigned to:*<br>District Judge Daniel J. Calabretta<br><br>**PLAINTIFF'S MOTION IN LIMINE #3 TO EXCLUDE ALL OPINIONS OF DEFENSE EXPERT IAIN MCINTYRE**<br><br>FPTC Date:     December 18, 2025<br>Time:              1:30 PM<br>Location:        Courtroom 7 |

PLEASE TAKE NOTICE that on December 18, 2025, in Courtroom 7 of the United States District Court for the Eastern District of California, at 501 I Street, Sacramento, CA 95814, Plaintiff, DOROTHEY HEIMBACH, hereby moves in limine for an order excluding *all testimony and opinions* from Defendants' retained expert, Dr. Iain McIntyre, at trial. Specifically, Plaintiff seeks to exclude:

   1)   Any opinion regarding the drug test results, including any opinion that Mr. Silva tested "positive" for methamphetamine or marijuana;

   2)   Any opinion that Mr. Silva was found in possession of methamphetamine or any controlled substance;

1

3) Any opinion regarding Mr. Silva's "history of substance abuse" or that his behavior was "consistent with" stimulant abuse;

4) Any opinion that Mr. Silva was "under the influence and impaired" by methamphetamine or marijuana at the time of the incident; and

5) Any opinion regarding the effects of methamphetamine or marijuana on behavior, or that Mr. Silva's behavior was "consistent with behavior generally associated with impairment due to recent drug use."

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the records and files of this Court, and upon such other oral and documentary evidence as may be presented at the time of the hearing.

Dated: December 11, 2025    **LAW OFFICES OF DALE K. GALIPO**

By:   */s/   Cooper Alison-Mayne*
Dale K. Galipo
Cooper Alison-Mayne
*Attorneys for Plaintiff Dorothey Heimbach*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff respectfully moves this Court to exclude all opinions of Defendants' retained expert, Dr. Iain McIntyre. Dr. McIntyre's opinions fail to satisfy the standards of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and should therefore be excluded in their entirety.

Dr. McIntyre's opinions suffer from a fatal deficiency: they lack the foundational data necessary for any meaningful expert conclusion. The drug test results he relies upon contain no quantitative measurements—only the word "positive." Without knowing the concentration of any substance detected, Dr. McIntyre has no scientific basis to opine whether Mr. Silva was experiencing any pharmacological effects at the time of the incident.

Additionally, his opinion that Mr. Silva possessed methamphetamine at the time of the incident is based on nothing more than a blurry video of a baggy—he never examined or even saw photographs of the alleged drugs.

Finally, his opinions about Mr. Silva's "history of substance abuse" and behavior "consistent with" stimulant abuse are not science at all; they are an attempt to insert prohibited character evidence through the guise of expert testimony.

Because Dr. McIntyre's opinions are not based on sufficient facts or data, are not the product of reliable principles and methods, and will not help the jury understand any fact at issue, the Court should exclude his testimony in its entirety.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 permits expert testimony only when the proponent demonstrates to the Court by a preponderance of evidence that: (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is

1  based on sufficient facts or data; (3) the testimony is the product of reliable
2  principles and methods; and (4) the expert's opinion reflects a reliable application
3  of the principles and methods to the facts of the case. Fed. R. Evid. 702.

Under Daubert, the trial court serves as a gatekeeper to ensure that expert testimony is both reliable and relevant. *Daubert*, 509 U.S. at 589. The proponent of the expert testimony bears the burden of establishing admissibility by a preponderance of the evidence. *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). An expert's opinion must be based on "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.

Expert testimony that is speculative, lacks foundation, or is not grounded in accepted methodology must be excluded. *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) (on remand, excluding expert testimony that lacked sufficient foundation). When there are reasonable alternative explanations for given phenomena, the expert must provide reasons for rejecting alternative hypotheses "using scientific methods and procedures" and the elimination of those hypotheses must be founded on more than "subjective beliefs or unsupported speculation." *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1058 (9th Cir. 2003) (citing *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir.1994)).

## III.   ARGUMENT

### A.   Dr. McIntyre Cannot Offer Meaningful Testimony About the Drug Test Results Because They Lack Quantitative Data

Dr. McIntyre's opinions regarding Mr. Silva's drug use rest on drug test results that contain no quantitative data whatsoever. The test itself does not even appear to be in the record, only a reference to its result being "positive" for methamphetamine and marijuana. There are no measurements, no concentration levels, no specific findings of any kind. Without this essential data, Dr. McIntyre's expertise offers nothing to the jury—he has no way to opine with any reasonable degree of medical or scientific certainty what those test results actually mean.

Drugs remain detectable in the human body long after their pharmacological effects have worn off. McIntyre admits in his report that "methamphetamine is eliminated relatively slowly from the body." McIntyre Report at 3. Methamphetamine can be detected in urine for several days to a week after use. *See* Verstraete, A.G., "Detection Times of Drugs of Abuse in Blood, Urine, and Oral Fluid," 26 Therapeutic Drug Monitoring 200, 202 (2004), https://www.hodsdon.com/wiki/uploads/Main/15228165.pdf. Marijuana metabolites can remain detectable for weeks. A "positive" result, without quantitative data tells us nothing about whether Mr. Silva was experiencing any pharmacological effects at the time of the incident in question.

Without concentration levels, Dr. McIntyre cannot establish when Mr. Silva used any substance or how much he used. He cannot establish whether Mr. Silva was experiencing any effects from any substance at the time of the incident. He cannot distinguish between someone who used methamphetamine an hour before the incident and someone who used it days prior. All Dr. McIntyre can do is repeat the allegation that a urine test returned "positive"—and that requires no expertise whatsoever.

An expert opinion must be based on sufficient facts or data. Fed. R. Evid. 702(b). Test results that report only "positive" without any quantitative measurements do not provide sufficient facts or data to support any opinion about impairment, recent use, or pharmacological effect. Dr. McIntyre's opinions regarding the drug test results should be excluded.

### B. Dr. McIntyre's Opinion That Mr. Silva Possessed Methamphetamine Is Not Based on Sufficient Facts or Reliable Methodology

Dr. McIntyre opines that Mr. Silva was found in possession of drugs "consistent with methamphetamine." But Dr. McIntyre never inspected the alleged

drugs. He never examined photographs of the alleged drugs. The sole basis for his opinion is a blurry video depicting what appears to be a baggy.

This opinion fails to meet the standards of *Daubert* for two reasons.

First, the opinion is not based on sufficient facts or data. Fed. R. Evid. 702(b). Dr. McIntyre viewed a blurry video. He did not examine the substance. He did not see the substance tested. He did not review any laboratory analysis of the substance. He has no factual basis to opine about what the substance was.

Second, the opinion is not the product of reliable principles and methods. Fed. R. Evid. 702(c). The accepted scientific method for determining what a substance is involves actually examining the substance—chemical testing, laboratory analysis, and similar forensic methods. Opining that a substance is "consistent with methamphetamine" based solely on viewing a blurry video of a baggy is not science. It is speculation dressed as expertise.

No reliable methodology supports the identification of a controlled substance from a pixilated video. Dr. McIntyre's opinion on this subject should be excluded.

### C. Dr. McIntyre's Opinions About Mr. Silva's Behavior "Consistent With" Stimulant Abuse Should Be Excluded

Dr. McIntyre opines that Mr. Silva's conduct during the incident, including failure to comply and active resistance, is consistent with impairment due to recent drug use. McIntyre Report at 5. He further opines that his displayed "erratic, aggressive, combative, and violent behavior," along with his slurred speech, is consistent with Methamphetamine use. *Id*.

Dr. McIntyre's reasoning is not science. "Aggressive behavior" is consistent with alcohol intoxication, personality disorders, mental health conditions, being handcuffed while police rifle through your belongings—or countless other explanations that have nothing to do with methamphetamine. When reasonable alternative explanations exist, an expert must provide reasons for rejecting them

"using scientific methods and procedures," not "subjective beliefs or unsupported speculation." *Clausen*, 339 F.3d at 1058. Dr. McIntyre offers no methodology for ruling out any alternative explanation. His leap from "aggressive" to "methamphetamine" is pure speculation.

No methodology supports inferring methamphetamine use from aggressive behavior and slurred speech The inferential leap Dr. McIntyre makes is not the product of any accepted scientific methodology; it is the kind of unsupported speculation that *Daubert* forbids. 509 U.S. at 590.

### D. Dr. McIntyre's Opinions About Mr. Silva's History of Drug Abuse Should Be Excluded

Dr. McIntyre opines that Mr. Silva had a "history of . . . erratic, aggressive, combative, and violent behavior" and "substance abuse and behavior consistent with stimulant (Methamphetamine) abuse." McIntyre Report at 5. This is precisely the propensity evidence Rule 404 prohibits. Defendants cannot circumvent the character evidence rules by shoehorning inadmissible evidence into an "expert opinion." Dr. McIntyre offers no scientific analysis—he merely repeats hearsay from medical records about Mr. Silva's alleged aggressive character and drug use. His toxicology expertise is irrelevant given that no toxicology reports exist in this case. If admissible evidence of aggressive behavior or drug use exists, Defendants should present it through witnesses with personal knowledge, not through an expert parroting inadmissible hearsay. Dr. McIntyre's testimony about Mr. Silva's history serves no purpose other than to paint him as a bad person—exactly what Rule 404 forbids. Therefore, all such opinions should be excluded.

### E. Dr. McIntyre's Opinions About the Effects of Drugs on Behavior Are Irrelevant and Misleading

Dr. McIntyre also offers generic opinions about the effects of methamphetamine and marijuana on behavior. These opinions should be excluded as irrelevant and misleading.

7

Because Dr. McIntyre cannot establish with any reasonable degree of medical or scientific certainty that Mr. Silva was experiencing the pharmacological effects of methamphetamine or marijuana at the time of the incident, his generic testimony about what these substances can do is irrelevant.

Abstract testimony about drug effects—untethered to any showing that Mr. Silva was actually impaired—serves only to mislead the jury. The jury will hear that methamphetamine can cause aggressive behavior, that marijuana can cause impaired judgment, and so forth. The natural inference the jury will draw is that Mr. Silva was experiencing these effects. But Dr. McIntyre has no scientific basis to establish that Mr. Silva was experiencing any such effects. The testimony invites the jury to speculate and assume facts not in evidence.

Moreover it distracts the jury from their task, which is to determine whether and to what extent Mr. Silva actual was disobeying orders, resisting, and acting aggressively. The entire incident is on video, and the jury will hear from percipient witnesses, as well. McIntye's testimony is a distraction.

Expert testimony must help the trier of fact. Fed. R. Evid. 702(a). Testimony about general drug effects does not help the jury—it misleads them. Therefore, all testimony regarding the general effects of methamphetamine and marijuana on behavior should be excluded.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court exclude *all testimony and opinions* of Dr. McIntyre, including his opinions regarding: (1) the drug test results; (2) Mr. Silva's alleged possession of methamphetamine; (3) Mr. Silva's alleged "history of substance abuse" and behavior "consistent with" stimulant abuse; (4) whether Mr. Silva was "under the influence and impaired" at the time of the incident; and (5) the effects of drugs on behavior and whether Mr. Silva's behavior was "consistent with" drug impairment.

| | | |
|---|---|---|
| 1 | Dated: December 11, 2025 | **LAW OFFICES OF DALE K. GALIPO** |
| 3 | By: | */s/   Cooper Alison-Mayne* |
| 4 | | Dale K. Galipo |
| | | Cooper Alison-Mayne |
| 5 | | *Attorneys for Plaintiff Dorothey Heimbach* |