1
2
3
**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
4
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
5
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
6
Woodland Hills, CA 91367
Phone: (818) 347-3333
7
8
*Attorneys for Plaintiff Dorothey Heimbach*
9
10
**UNITED STATES DISTRICT COURT**
11
**EASTERN DISTRICT OF CALIFORNIA**
12
13    DOROTHEY HEIMBACH,            2:23-cv-01887-DJC-CSK
14                   Plaintiff,     *Assigned to:*
                                    District Judge Daniel J. Calabretta
15         vs.
                                    **DECLARATION OF COOPER**
16    STANISLAUS COUNTY, JUSTIN     **ALISON-MAYNE IN SUPPORT OF**
      CAMARA, and ZA XIONG,         **PLAINTIFF'S MOTION IN LIMINE**
17                                  **#1 TO EXCLUDE CERTAIN**
                   Defendants.      **OPINIONS OF ROBERT BUX**
18                                  **UNDER DAUBERT**
19
                                    FPTC Date:    December 18, 2025
20                                  Time:         1:30 PM
                                    Location:     Courtroom 7
21
22
23
24
25
26
27
28

1

I, Cooper Alison-Mayne, declare as follows:

I am an attorney duly licensed to practice law in the State of California, and the Eastern District of California. I make this declaration in relation to the parties joint report filed concurrently. I have personal knowledge of the facts contained herein and could testify competently thereto if called.

Attached hereto as "**Exhibit A**" is a true and correct copy of relevant portions of the March 25, 2025 Deposition Transcript of Robert Charles Bux, MD, with relevant portions highlighted.

Attached hereto as "**Exhibit B**" is a true and correct copy of the October 12, 2022, Rule 26 Report of Defendants expert Robert Charles Bux, MD.

Attached hereto as "**Exhibit C**" is a true and correct copy of relevant portions of Defendants' Expert Dr. Robert Shavelle, Rule 26 Report dated March 12, 2025, with relevant portions highlighted.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed on December 11, 2025, in Los Angeles, California.

LAW OFFICES OF DALE K. GALIPO


By:    */S/ Cooper Alison-Mayne*
       Dale K. Galipo
       Cooper Alison-Mayne
       Attorneys for Plaintiff

# EXHIBIT A

1              UNITED STATES DISTRICT COURT

2             EASTERN DISTRICT OF CALIFORNIA

3
                                    )
4   DOROTHEY HEIMBACH,              )
    individually and as            )
5   successor in interest to       ) Case No.
    Anthony Silva,                  ) 2:23-CV-01887-DJC-CSK
6                                   )
            Plaintiff,              )
7                                   )
            vs.                     )
8                                   )
    STANISLAUS COUNTY; and          )
9   JUSTIN CAMARA, ZA XIONG,        )
    and ERIC BAVARO, in their       )
10  individual capacities,         )
                                    )
11          Defendants.            )
    _____)
12

13

14

15          DEPOSITION OF ROBERT CHARLES BUX, MD

16              Taken Remotely Via Zoom

17             Tuesday, March 25, 2025

18

19

20

21  Reported by:

22  SHANDA GABRIEL

23  CSR No. 10094

24  Job No. 145613

25  Pages 1-73

DOROTHEY HEIMBACH, ET AL. vs STANISLAUS COUNTY, ET AL.
Robert Charles    Bux, M.D. on 03/25/2025

Page 8

1    you know, if you weren't taking care of yourself,

2    assuming you're already out of the hospital, you can

3    have problems with decubitus ulcers.  Those are some

4    of the common things that you could have.

5        Q.  And related to that, are infections any

6    potential complication?

7        A.  Absolutely.

8        Q.  Does someone with that type of injury

9    generally need lifetime care?

10           MR. WHITEFLEET:  Objection.  It's outside

11   the scope.

12           THE WITNESS:  Yeah, I don't -- I don't have

13   a practice taking care of those kind of injuries.  I

14   never did when I was in practice in the Army and I

15   never did in terms of -- of when I interned, so I --

16   it's out of my scope of understanding and knowledge.

17   BY MR. GALIPO:

18       Q.  What is your area of medical specialty?

19       A.  I'm a board certified anatomical clinical

20   and forensic pathologist.

21       Q.  And what do you charge for your work on the

22   case in terms of reviewing materials, writing

23   reports, things of that nature?

24       A.  I charge $350 an hour for review and

25   consultation.  I charge $450 an hour or a portion

DOROTHEY HEIMBACH, ET AL. vs STANISLAUS COUNTY, ET AL.
Robert Charles   Bux, M.D. on 03/25/2025

Page 16

1   needs it later, she'll have that.

2          (Recess taken.)

3          MR. GALIPO:  We're going to go back on the

4   record now and go ahead and just repeat your

5   explanation of the cervical procedure.

6          THE WITNESS:  The -- he underwent a C6-C7

7   anterior cervical discectomy and fusion, and C2 to

8   T2 posterior instrumentation and fusion.  C6

9   laminectomy with neuromonitoring and pinpoint, as

10  well as Hemovac drains.  That's what he underwent.

11  BY MR. GALIPO:

12      Q.  And did you think that procedure was

13  medically necessary?

14          MR. WHITEFLEET:  Objection.  It's outside

15  the scope.

16          THE WITNESS:  I'm not a neurosurgeon.  I

17  don't have an opinion on that.

18  BY MR. GALIPO:

19      Q.  Okay.  Are you going to give any opinions

20  as to whether any of the treatment was not

21  reasonable or necessary?

22      A.  No.

23      Q.  And do you have an understanding as to how

24  long he remained in the hospital from the time of

25  his admission to his initial discharge?

**DOROTHEY HEIMBACH, ET AL. vs STANISLAUS COUNTY, ET AL.**
Robert Charles   Bux, M.D. on 03/25/2025

Page 26

1  during hospitalization?

2          MR. WHITEFLEET:  Objection.  Incomplete

3  hypothetical.  Overly broad.  Vague.  Assumes facts.

4          THE WITNESS:  They can occur, but they

5  ought to be able to be caught early enough, and

6  treated and prevented from getting worse, and

7  probably will just result in a cure.  But that takes

8  three or four other things to happen.

9          And one of them is the turning, one of them

10  is that the patient allows that and doesn't turn

11  right back to where they were.

12          Another is that they have to have good

13  nutrition.  And those are the kinds of things that

14  they have to have.  And you want them active so that

15  they're moving around.

16          And -- and Mr. Silva became deconditioned

17  within the first three or four weeks and doesn't

18  look to me like he got it back.

19  BY MR. GALIPO:

20      Q.  Okay.  And would you agree, given that he

21  was, you know, essentially paralyzed from the level

22  of C6-C7 down, that in terms of the turning and

23  movement, he was pretty reliant on the medical and

24  nursing staff for that?

25          MR. WHITEFLEET:  Objection.  Compound.

DOROTHY HEIMBACH, ET AL. vs STANISLAUS COUNTY, ET AL.
Robert Charles   Bux, M.D. on 03/25/2025

Page 27

1    Vague as to "moving."  Misstates testimony.  Calls

2    for speculation.

3           THE WITNESS:  He could move somewhat.  And

4    how much of that would have been enough, should have

5    been able to prevent ulcers that were on his arms,

6    on his shoulders, on his upper back.  How far down

7    he would be able to do that, I don't know.  That's

8    what the nurses are there for, and needed to do, and

9    I don't think it -- it didn't happen or he wouldn't

10   have had the -- the depth and size of the decubitus

11   ulcers in this short -- relative short period of

12   time in which they developed.

13   BY MR. GALIPO:

14       Q.  Right.  But I guess what I'm getting at is,

15   given his condition, would you agree that he was

16   reliant on the nursing staff to move him?

17           MR. WHITEFLEET:  Same objections.

18           THE WITNESS:  Yeah, he was reliant on the

19   nursing staff to do his nursing care, and in terms

20   of moving him every two hours, they failed.

21   BY MR. GALIPO:

22       Q.  I understand.  That's one of your opinions

23   in the case, correct?

24       A.  Correct.

25       Q.  Okay.  I guess what I'm saying is, you're

DOROTHEY HEIMBACH, ET AL. vs STANISLAUS COUNTY, ET AL.
Robert Charles   Bux, M.D. on 03/25/2025

Page 28

1  not saying that Mr. -- you're not saying that the

2  decedent was, given his condition, able to move

3  himself and didn't need the nursing staff.  You're

4  not saying that, are you?

5          MR. WHITEFLEET:  Objection.  It's compound.

6  Argumentative.  It misstates testimony.

7          THE WITNESS:  He needed to be moved every

8  two hours.  That wasn't done.  That clearly wasn't

9  done by the way the ulcers developed.  Secondly --

10 BY MR. GALIPO:

11     Q.  Right?

12     A.  -- when he says no to being moved, you

13 can't move a patient.  So then that is compounded by

14 his refusal to be moved and turned, and also his

15 refusal for doing some of the activities of daily

16 living that he, multiple times, refused to do.

17     Q.  Yeah.  And I noticed in your review there's

18 multiple times you noted he was compliant and other

19 times non-compliant.

20          Would that be fair?

21     A.  Right.  But it's not clear to me -- it's

22 not clear to me exactly what that included.  You

23 know, if you want to get the best view, you need to

24 talk to one of the doctors that took care of him

25 over that -- over that time period when he was in

**DOROTHY HEIMBACH, ET AL. vs STANISLAUS COUNTY, ET AL.**
Robert Charles   Bux, M.D. on 03/25/2025

Page 29

1   Central Valley Specialty Hospital, because the notes

2   are not real good about that.

3       Q.   Okay.  So I'm looking at the next page of

4   your report.  I don't see page numbers, necessarily,

5   but the first full paragraph starts on April 4th.

6            Do you see that page?

7       A.   Yes.

8       Q.   So he was discharged and sent to Memorial

9   Medical Center for a left lung effusion and

10  underwent interventional draining.

11           Do you see that sentence?

12      A.   Yes.

13      Q.   And what do you think was the cause of the

14  left lung effusion, if you have an opinion?

15      A.   I think it probably was due to previous

16  pneumonia and the development of an empyema, which

17  is a layer of pus that develops between the pleura

18  of the lung and the pleura cavity.

19      Q.   And is that, in your opinion, related to

20  the initial injury of the fractured C6-C7 and

21  potential complications?

22           MR. WHITEFLEET:  Objection.  Compound.

23  Vague.  Vague as to time.

24           THE WITNESS:  I don't know how -- I don't

25  know what the percentage would be for whether it was

DOROTHEY HEIMBACH, ET AL. vs STANISLAUS COUNTY, ET AL.
Robert Charles   Bux, M.D. on 03/25/2025

Page 30

1 that or something he picked up from an infection

2 after -- after the trauma.  I have no idea.

3 BY MR. GALIPO:

4        Q.  And then on May 21, the next paragraph, you

5 note he developed sepsis?

6        A.  Correct.

7        Q.  And it resulted in a pneumonia?

8        A.  Correct.

9        Q.  Do you know what the cause of that sepsis

10 was or have an opinion?

11        A.  Well, he -- he -- he obviously -- obviously

12 pseudomonas aeruginosa bacteria got into his

13 bloodstream.  He has a whole bunch of places that

14 can happen.  Every single decubitus ulcer is one of

15 them.

16            He had some wound breakdowns along the way.

17 I'm not sure if those had happened or not.  Those

18 are other ones.  He could have done it by breathing,

19 he could have gotten it from something that was

20 contaminated in terms of his respiratory

21 ventilation.  There was a whole host of things that

22 it could have caused.

23        Q.  Are you planning on giving any opinions as

24 to his pain and discomfort during all of these

25 complications that he was having?

**DOROTHEY HEIMBACH, ET AL. vs STANISLAUS COUNTY, ET AL.**
Robert Charles   Bux, M.D. on 03/25/2025

 1      A.   No.

 2      Q.   And then you noted, the next paragraph on

 3 May 24, 2023, he was admitted again to Memorial

 4 Medical Center?

 5      A.   Correct.

 6      Q.   And that was to deal with the issues we

 7 just talked about?

 8      A.   Well, it was to -- to deal with pseudomonas

 9 pneumonia, which was now a multi-drug resistant

10 organism, so you have to use more powerful and new

11 antibiotics, and you have less treatment options.

12           And then he also, by then, had developed

13 infection in his bone, which is extremely hard to

14 treat, and is due to the deep decubitus ulcers that

15 he had on his buttocks and sacral area, most likely.

16      Q.   Are you able to exclude other causes of the

17 bone infection?

18      A.   I don't know of any others that would --

19 that would have been present.

20      Q.   Okay.  And all this time, to your

21 knowledge, was he on a feeding tube or able to eat?

22 What's your understanding?

23      A.   He was --

24           MR. WHITEFLEET:  Objection.  Objection.

25 Compound.  Vague as to time.

Page 47

 1  look.

 2      Q.  Okay.  I guess you would at least, as a

 3  doctor, can see that someone who becomes a

 4  quadriplegic may deal with bouts of depression.

 5          Is that fair?

 6          MR. WHITEFLEET:  Objection.  Outside the

 7  scope.

 8          THE WITNESS:  I think anybody can if

 9  it's -- if it's right.  I don't know whether he did

10  or he didn't.

11  BY MR. GALIPO:

12      Q.  Okay.  And comfortable care, what did you

13  understand that to be?

14      A.  They withdraw -- they withdraw medical

15  care, except for comfort, so that would be pain

16  medications, might be something so that your airways

17  stay dry so -- and they would try to make you as

18  comfortable as possible.

19      Q.  Did you take into consideration the level

20  of pain and discomfort he was in in your work on

21  this case?

22          MR. WHITEFLEET:  Objection.  Assumes facts.

23          THE WITNESS:  Did I take it into account?

24  BY MR. GALIPO:

25      Q.  Right.  You talked about the complications

DOROTHEY HEIMBACH, ET AL. vs STANISLAUS COUNTY, ET AL.
Robert Charles   Bux, M.D. on 03/25/2025

Page 62

1   also didn't do activities of daily living, which

2   also deconditioned him and contributed to his death.

3   BY MR. GALIPO:

4       Q.  Well, what activities did you expect him to

5   do if he was a quadriplegic?

6       A.  Well, I'm not -- I'm not an occupational

7   therapist, but I know that there was a note fairly

8   early on when they asked him, "Why don't you help us

9   here and -- a little bit with your back."

10          "Oh, no, I'm not doing that."

11          So it's kind of to get him so that they can

12  do -- with whatever their disability is, that they

13  can do certain things to help themselves.  That's

14  what -- that's what OT does.

15          And the same thing physical therapy was --

16  I know -- I saw it a couple of times where they

17  would kind of run off and he didn't want anything to

18  do with physical therapy.

19          So those are the things that were

20  happening, and then he didn't want to be moved and

21  have his wounds taken care of.

22      Q.  Well, there were some entries in that

23  regard.  There was other entries that he was

24  compliant.

25      A.  Right.  But his -- his decubitus ulcers

# EXHIBIT B

# CURRICULUM VITAE

**Robert C. Bux, MD**                                  Born:   May 22, 1948
                                                               Columbus, Kansas

3107 W Colorado, #264
Colorado Springs, Colorado 80904                  October 12, 2022

## Education

| | |
|---|---|
| College: | University of Washington, Seattle, WA |
| | Bachelor of Science in Zoology |
| | 1966 - 1970 |
| | |
| Medical School: | Universidad Autonoma de Guadalajara |
| | Guadalajara, Jalisco, Mexico |
| | 1970 - 1974 |
| | |
| Rotating Internship: | The Moncton Hospital, Moncton |
| | New Brunswick, Canada |
| | July 1974 - June 1975 |
| | |
| Residency in Pathology: | Brooke Army Medical Center |
| San Antonio, Texas | |
| | Anatomic and Clinical Pathology |
| | July 1978 – June 1982 |
| | |
| Fellowship: | Bexar County Forensic Science Center |
| | San Antonio, Texas |
| | Forensic Pathology |
| | August 1984 – August 1985 |

## Board Certification

| | |
|---|---|
| American Board of Pathology | ANATOMICAL PATHOLOGY, 1982 |
| American Board of Pathology | CLINICAL PATHOLOGY, 1982 |
| American Board of Pathology | FORENSIC PATHOLOGY, 1985 |

## Licensure and Certifications

| | |
|---|---|
| Licensure | New Mexico - 1976 to 2013 |
| | Texas - 1978 to present |
| | California – 1980 to 1987 |
| | Colorado - 1982 to present |

**Present Position**

Forensic pathology consultant

**Past Positions**

Coroner/Medical Examiner | El Paso County Coroner's Office, Colorado Springs, CO. Appointed Coroner January, 2006. Elected Coroner to 4 year term on November 2, 2006, reelected to second 4 year Term November 6, 20010, and reelected to third term November 4, 2014. Sworn into office on January 9, 2007, January 11, 2011 and January 13, 2015. Retired at end of last Term on January 8, 2019.

Associate Coroner/Medical Examiner
El Paso County, Colorado | El Paso County Coroner's Office, Colorado Springs, Colorado. July 2002-January 2006

Deputy Chief Medical Examiner | Bexar County Forensic Science Center, San Antonio, Texas June 1992 – December 2002

Staff Medical Examiner | Bexar County Forensic Science Center San Antonio, TX August 1984 – May 1992

Chief Dept. of Pathology
Fort Carson, CO | U.S. Army Hospital March 1984 – September 1984

Assistant Chief Dept. of Pathology | U.S. Army Hospital Fort Carson, CO July 1982 – March 1984

Part-Time Emergency Room Physician
EPA and TEXEM | October 1978-January 1991

**Military Service and Awards**

Major, Medical Corps, United States Army Reserve, October 1971 – June 2002

Expert Field Medical Badge, 1977

United States Army Commendation Medal, Fort Ord, CA – 1978; Fort Carson, CO – 1984

Meritorious Service Medal, Fort Carson, CO – 1984

**Medical Society Memberships**

Bexar County Medical Society, San Antonio, Texas, 1980 – 2002

Texas Medical Association, 1981 – 2002

Colorado Medical Association 2010 to present

American Medical Association, 1982 –2010

College of American Pathologists, 1980- 2000 (Fellow – 1983)

National Association of Medical Examiners – 1985 to present

American Academy of Forensic Sciences 1989 – present (Fellow – 1998)

**Other Professional Offices and Appointments**

Board of Directors, San Antonio Chapter, National Sudden Infant Death Foundation 1987 – 1997, Advisor – 1997 through 2002

Instructor in Intubation of EMS Paramedics 1988 – 1998

Faculty, Southwest Symposium on Forensic Dentistry, 1986, 1988, 1990, 1992, 1994, 1996, 1998, 2000, 2002.  University of Texas Health Science Center School of Dentistry, San Antonio, Texas

Member, Texas Multidisciplinary Task Force on Children's Justice 1993 – 1995

Member, Child Fatality Death Review for Bexar County – 1993 through December 2002

Member, Child Fatality Death Review for State of Texas – Original member 1994 and helped write Legislation in 1994 which was adopted by the State Legislature in 1995

Board of Editors, The American Journal of Forensic Medicine and Pathology – 1997 to present

Clinical Assistant Professor of Pathology UTHSC San Antonio, Texas – 1998 to 2005

Member, Board of Directors, Colorado Coroners Association- 2005 to 2010.  President 2009-10

Member, Child Fatality Review Team for the 4th Judicial District, State of Colorado -2006 to 2008

Member, Medical Advisory Board, International Forensic Program, Physicians for Human Rights – 2006 to 2017

Colorado Bureau of Investigation Cold Case multidisciplinary team -2010 to present

Member El Paso County Board of Health- April 2011 to March 2021

**International Professional Activities**

United Nations International War Crimes Tribunal for the former Yugoslavia, Participated in exhumation of mass graves, September 21 – October 5, 1996 near Tuzla, Bosnia under the direction of Physicians for Human Rights

Guest Lecturer – Forensic Science Conference "Forensics for the 21st Century" Sponsored by Procuraduria General de Justicia del Districto Federal, Mexico, DF – August 4-7, 1997

Organization of American States Court of Inter-American Human Rights, San Jose, Costa Rica – Testified for the Inter-American Commission on Human Rights of the Organization of American States in the case of "Panel Blanca", the case of Elizabeth Panniagua, et al, vs. Guatemala

Participant in exhumation of Archbishop Juan Jose Gerardi, appointed Forensic Medical Expert for the Archdiocese of Guatemala in Guatemala City, Guatemala, September 16-18, 1998

Organization of American States Court of Inter-American Human Rights, San Jose Costa Rica – January 20-29, 1999 – Testified as Forensic Expert appointed by the Court of Inter-American Rights in the case of Villagran Morales, et al, vs. Guatemala (11-383)

Exhumation of Julian Cho, Mayan Cultural Leader in Punta Gorda, Belize for Physicians for Human Rights – January 31 – February 2, 1999

Exhumation and identification of 14 guerillas of the Tupac Amaru who were responsible for the takeover of the Japanese embassy in Lima Peru and sequestration of 72 VIP hostages on the 17th of December 1996, and subsequent hostage rescue and embassy liberation by special forces of the Peruvian army of April 22, 1997 , all work occurred in 2001.

Consultant for the Attorney General of the Republic of Mexico (Procurduria General de la Republica) in the case of Guillermo Velez Mendoza who died in custody of the AFI (Agents of the Federal Investigation) in Mexico City.  Reviewed entire case file participated in the exhumation and gave a legal declaration under oath, all work occurred in 2002.

Consultant for the Special Prosecutor for the prosecution of genocide and war crimes to the International War Crimes Court in Sierra Leone.  Reviewed cases of genocide and provided written reports.  All work occurred in 2004.

Consultant for the Attorney General of the Republic of Mexico (Procurduria General de la Republica} and Attorney General for the state of Chihuahua in the cases of "las mujeres desconocidas" in Ciudad Juarez and Chihuahua, Chihuahua.  Toured forensic facilities, reviewed case files, examined skeletal remains and offered suggestions for future case work.  All work occurred in January of 2005.

PHR consultant in the case of Brad Will, American photojournalist killed in Oaxaca, Mexico in 2006.  Analyzed all forensic and investigational file at the Procurduria General de la Republica forensic laboratory and coauthored report.   Work completed in 2008.

Consultant for PHR in the review of the Somali Pirates killed in a life boat by US Navy Seals on the USS Bainbridge from foiled attempt to board the Maersk Alabama and the return to safety of the kidnapped Captain of the Maersk Alabama, Richard Phillips.

Consultant for EQUITAS human rights organization in Bogota, Columbia in the deaths of Fair Leonardo Porras Bernal and Elkin Gustavo Verano with travel to Bogota, Columbia in September 2010 with exhumations and performed second autopsies, written reports and courtroom testimony in these cases also known as "casos positivos falsos.

PHR consultant and written report in the death in custody of Sergei Magintsky, Russian Hermitage Fund lawyer incarcerated in a Moscow, Russia.

## **Publications**

1.      DiMaio, V.J.M., Dana, S.E. and Bux, R.C. "Deaths Caused by Restraint Vest", JAMA 255:905, 1986.

2.      Bick, D., Curry, C.J., McGill, J.R., Schordent, D.F., Bux, R.C. and Moore, C., "Male Infant with Ichthyosis, Kallman Syndrome Chondrodysplasia Punctata, and an $X_P$ Chromosome Deletion" AM.J.Med.Genet 33(1): 100-7, May 1989.

3.      DiMaio, V.J.M., Dana, S.E., and Bux, R.C., "Sudden Cardiac Death" (Letter), NEJM 322:271. January 1990.

4.      Taylor, R., Bux, R.C., and Kirk, D., Forensic Pathology in Homicide Cases, 40 AM Jur Trials, 501-627, 1990.

5.      Taylor, R., Bux, R.C., and Kirk, D., Self Defense in Homicide Cases, 42 Am Jur Trials, 151-312, 1991.

6.      Bux, R.C., and McDowell, J., "Death Due To Attack From Chow Dog", AM J. of Forensic Med and Path, 13(4): 305-8, December 1992.

7.      Rulon, J., Cho, C.G., Guerra, L., Bux, R.C., and Gulley, M., "Activated Protein C Resistance Is Uncommon in Sudden Death Due to Pulmonary Embolism", Journal of Forensic Sciences 44(6): 1111-1113, November 1999.

8.      Kohlmeir, R., Cho, C.G., Bux, R.C., Guerra, L., Rulon, J., Selby, D.M., and Gulley, M., "Prothrombin Gene Mutation Uncommon in Pulmonary Embolism", Southern Medical Journal 93(11) 1073-7, November 2000.

FEE SCHEDULE FOR ROBERT C. BUX, MD

As of 8-1-2017

Review of documents and consultation         $350.00/hr.

Deposition                                    $450.00/hr. or portion of an hour

Courtroom Testimony                           $2,400.00/day plus expenses for travel

Travel during normal business hours is billed in ½ day increments of daily courtroom rate.

Air travel is first class when available.

## COURT APPEARANCES OF
## ROBERT C. BUX, MD


### 2016

1. Appellate hearing for John Michael Beames vs. Ron Davis, Warden of California State Prison, San Quentin in the United States District Court, Eastern District, Fresno, California. Assistant Federal Public Defender, Sacramento, California.
2. Trial in the case of United States vs. Eric Harvey Littlecalf in the United States District Court, Billings, Montana. Assistant Federal Defender David Merchant, Billings Branch, Billings, Montana.
3. Deposition in the case of Sylvia Rodriguez, et al vs. Pioneer Resources Company, et al. in the District Court, 191st, Judicial District Court, Dallas County, Texas. Attorney Michael McGurk of Kittleman Thomas, McAllen, Texas.
4. Deposition in the case of Jason E. Harris, et al vs. Nathan Olsen, MD, in Arapahoe County District Court, Centennial, Colorado. Attorney Brian McConaty of Robinson, Waters & O'Dorsio, PC, Denver, Colorado.
5. Deposition in the case of Debby Davis, et al vs. Bunzl Distribution Southwest, LP, et al, in the 79th District Court, Jim Wells County, Texas. Attorney Richard Underwood of Farris Bobango Branan, PLC, Memphis Tennessee.
6. Deposition in the case of Babette Clingan vs. AP WP Management, L.P., and Winthrop Management, L.P. in the District Court, Bexar County, Texas. Attorney Rick Espey of Espey & Associates, San Antonio, Texas.
7. Deposition in the case of Andre Guardado, et al vs. Edmond Joe Palmore, et al in the United States District Court for the Northern District of Texas, Dallas Division, Dallas, Texas. Mr. John T. Kirtley, III of Ferrer, Poirot, & Wansborough, Dallas, Texas.
8. Trial in the case of Sandoval vs. Gurley, et. al. in the 11th Judicial District Court, Division 7, McKinley County, Gallup, New Mexico. Attorney Mark J. Riley of Riley, Shane & Keller, Albuquerque, New Mexico.
9. Deposition in the case of Rachel Chalker, et al vs. VHS San Antonio Partners BHS SA Thousand Oaks, LLC d/b/a Baptist Emergency Hospital Thousand Oaks, Michael E. Lozano, MD, 24 Hour Physicians, INC., Mathew Patlovany, MD, and Leading Edge Emergency Physicians, P.L.L.C. the 285th Judicial District, Bexar County, Texas. Attorney Robert R. Biechlin, Jr., Thornton of, Biechlin, Reynolds & Guerra, LC, San Antonio, Texas.


### 2017

1. Deposition in the case of Courtney Cantwell and James Cantwell vs. Seth Brener, MD, in the District Court, Travis County, Texas. Attorney Terri S. Harris of Steed Dunnill Reynolds Murphy Lamberth, LLP, Austin, Texas.
2. Deposition in the case of Kim Hildebrand, et al. vs. Gary W. Wells, DO, in the District Court of Cleveland County, Oklahoma. Attorney Jo Slama of the Jo Slama Legal Group, Oklahoma City, Oklahoma.

3.  Deposition in the case of Zarina Richardson, et al vs. Laredo Medical Center and Fermin Romero Arreola, MD in the 406th District Court, Webb County, Texas.  Attorney Michael Wallis of Thorton, Biechlin, Reynolds & Guerra, San Antonio, Texas.

4.  Deposition in the case of Kevin Webb, et. al, vs. Brad Livingston, et al. in the United States District Court, Southern District of Texas, Houston Division.  Assistant Attorney General Matthew Greer of the State of Texas Attorney General's Office, Austin, Texas.

5.  Deposition in the case of Skylor Ashey and Lance Ashley vs. United States of America ex rel. Chickasaw Nation Medical Center in the United States District Court, Eastern District of Oklahoma.  Attorney Ms. Jo L. Slama of Slama Legal Group, Oklahoma City, Oklahoma.

6.  Deposition in the case of Mariela Pena vs. Jose Manuel Balderas-Ramirez, Intervenor, vs. Solana Ridge Apartments; Solana, LLC, Migneault Properties, LP and Atmos Energy Corporation in the District Court, Dallas County, Texas.  Attorney Mark Carrigan of Carrigan, McCloskey & Roberson, Houston, Texas.

7.  Deposition in the case of Stephany Borges, et al vs. City of Eureka, et al in the United States District Court, Northern District of California.  Attorney Nancy K. Delaney of Brisso, Delaney & Vrieze, Eureka, California.

8.  Trial in the case of Stephany Borges, et al vs. City of Eureka, et al. in the United States District Court, Northern District of California.  Attorney Nancy K. Delaney of Brisso, Delaney & Vrieze, Eureka, California.

9.  Deposition in the case of Kim Grizzle, et al. vs. John Christian, As Sheriff of Pontotoc County, et al., in The United States District Court for the Eastern District of Oklahoma.

10. Deposition in the case of Holly and David Lynch vs. Muskogee County in The United States District Court for the Eastern District of Oklahoma.  Attorney Andy A. Artus of Collins, Zorn, and Wagner, Oklahoma City, Oklahoma.

11. Trial in the State of South Dakota vs. Michael Swan in the district court in Milltown, South Dakota.  Attorney Scott R. Bratland of Bratland Law, Watertown, South Dakota.

12. Appellate hearing in the case of Darrell Wayne Frederick vs. OCCA Case No. PCD-2015-47 in the District Court of Cleveland County, Oklahoma.  Attorney Kristi Christopher of the Capital Post-Conviction Division, Oklahoma Indigent Defense System, Norman, Oklahoma.

13. Trial in the case of the State of Oklahoma vs. Melissa Clark in the District Court of Cleveland County, Oklahoma.  Attorney Keith Nedwick of the Law Offices of Keith Nedwick, Norman, Oklahoma.

14. Trial in the case of the State of Oklahoma vs. Christopher Whinery in the District Court of Creek County, Oklahoma.  Ms. Velia Lopez of the Sapulpa office of the Oklahoma Indigent Defense System, Sapulpa, Oklahoma.


## 2018

1.  Deposition in the case of James Neuroth vs. Mendocino County, et al. in the United States District Court, Northern District of California.  Attorney Jerome Varanini, Sacramento, California.

2.  Deposition in the case of Frenchell Johnson, et al. vs. Mohammed Khan, MD, et al. in the 129th Judicial District Court, Harris County, Texas.  Attorney Tim Riley of the Riley Law firm, Houston, Texas.

3.  Trial in the case of the United States vs. FC3 Zaccariah McCulloch, USN General Court-martial, Naval Base Kitsap-Bremerton, Washington.  Defense Counsel Jenifer Luce, LCDR, JAGC, USN, Defense Services Office West, United States Naval Base, San Diego, California.

4.  Deposition in the case of Lisa Einess vs. Thomas Spera, MD, et al. in the Third Judicial District Court, Dona Ana County, New Mexico.  Attorney Larry Hicks of Hicks & Llamas, El Paso, Texas.

5    Deposition in the case of Jane Bailiff Mullen, et al. v. Jason A. Yoho, MD et al. in the District Court, Comal County, Texas. Attorney Richard J. Kasson of Gonzalez, Chiscano, Angulo & Kasson, San Antonio, Texas.

6.   Deposition in the America Arbitration Matter Case No. 01-17-0001-052 of FAMSA, INC., Claimant, vs. Jose Moreno, Respondent. Attorney Mary Wilson of Cowen Peacock, San Antonio, Texas.

7.   Deposition in the case of Amy Manning, as Personal Representative of the Estate of Scotty Caddell et al. vs. Air Methods Corporation d/b/a Native Air et al. in the State of New Mexico, County of Santa Fe, First Judicial District Court. Attorney B. Kent Buckingham of Buckingham & Barrera, Midland, Texas.

8.   Trial in the case of the USA vs. Ricky Allen Fackrell and Erik Rekonen in the United States District Court, Eastern District of Texas, Beaumont Division. Attorney Gerald Bourque, The Woodlands, Texas.

9.   Deposition in the case of Joseph Segura, vs. Presbyterian Healthcare Services in the Second Judicial District Court, county of Bernalillo, State of New Mexico. Attorney Charles K. Purcell of Rodey Law Firm, Albuquerque, New Mexico.

10.  Ex Parte Andrew Wayne Roark in the Criminal District Court, Number Five, Dallas County, Texas. Attorney Gary A Udashen of Udashen Anton, Dallas, Texas.

11.  Deposition in the case of Linda Morgan vs. Basel S. Hassoun, M.D.; Basel S. Hassoun, INC.; Lenny D. Stubbs, M.D.; Oklahoma Cardiovascular Associates, PC; and Mercy Hospital of Oklahoma City, INC., Defendants; Mercy Hospital of Oklahoma City, INC., Third-Party Plaintiff vs. Lenny D. Stubbs, M.D., Third-Party Defendant. Attorney Ann Brooks of Brooks Law Firm Oklahoma City, Oklahoma.

12.  Deposition in the case of Loretta Salazar, vs. Nhu Nguyen T. Nguyen, M.D., Hospitalist Group of El Paso, Hector A. Payan, M.D., Ric A. Bradford, D.O., and The Hospitals of Providence Memorial Campus in the 120th Judicial District Court, El Paso County, Texas. Attorney John Grost, of the Law Office of John Grost, El Paso, Texas.

13.  Deposition in the case of Joe Martinez, Personal Representative of the Estate of Susie M. Martinez vs. St. Vincent Hospital, d/b/a Christus St. Vincent Regional Medical Center, and Suchita Kumar, M.D. in the 4th Judicial District Court, County of San Miguel, State of New Mexico. Attorney Rick Beitler of the Rodey Law Firm, Albuquerque, New Mexico.

14.  Arbitration hearing in the America Arbitration Matter Case No. 01-17-0001-052 of FAMSA, INC., Claimant, vs. Jose Moreno, Respondent. Attorney Michael Cowen of Cowen Peacock, San Antonio, Texas.

15.  Deposition in the case of Sam Cabrera vs. James Reilly Lee, MD, Comphealth, a foreign corporation, CHG Medical Staffing, INC, David Myugkee Moon, MD, Lifepoint Hospitals, INC., Lifepoint RC, INC., PHC-Las Cruces, INC., a domestic corporation, Memorial Medical Center, and Memorial Medical Cent Auxiliary in the Third Judicial District, County of Dona Ana, State of New Mexico. Attorney William Winter of FELKER, ISH, RITCHIE & Greer, Santa Fe, New Mexico.

16.  Trial in the case of Gregory Lasher, as lineal heir to Liam N. McDougal vs. Reed G. Wipperworth in the United States District Court for the District of Colorado, Denver Colorado. Mr. Chad P. Hemmatt, of ANDERSON HEMMATT, Greenwood Village, Colorado.

17.  Deposition in the case of Bryan Montoya, individually and as Personal Representative of the Estate of Sylvia Montoya vs. St. Vincent Hospital d/b/a St. Vincent Regional Medical Center, et al.; First Judicial District Court Case No.; D-101-CV-2016-02126. Ms. Jennifer Hall of Miller Stratvert, Albuquerque, New Mexico.

18.  Deposition in the case of Amy Manning, as Personal Representative of the Estate of Dorothy Litchfield, et al. vs. Presbyterian Healthcare Services, Jill A. Solominski, M.D., et al.; First Judicial District Court, Santa Fe County; No. ; D-101-CV-2017-00891. Attorney Richard Barrera of Buckingham & Barrera, Midland, Texas.

**2019**

1. Trial in the case of the United States vs. SPC Daniel Bleyl, USA, General Court-martial, Joint Base Lewis McChord, Tacoma Washington.  Attorney Jocelyn Stewart, Tacoma, Washington

2. Deposition in the case of Monica Broadstreet vs. Jan Michael Nieves Delgado, et in the 327th District Court, El Paso, Texas.  Attorney Robert Edwards of Ray, McChristian, and Jeans, El Paso, Texas.

3. Trial in the case of the State of Arkansas vs. Zachary Lynn Atwood in the Faulkner County Circuit Court, Division 3, Conway, Arkansas.  Attorney Lynn Plemmons, Managing attorney of the Public Defender's Office for the 20th Judicial District, Conway, Arkansas.

4. Deposition in the case of Mark Beard as Personal Representative of the Estate of Rachael Beard; and the Estate of Rachel Beard vs. Kaiser Foundation Health Plan of Colorado; Colorado Permanente Medical Group, P.C.; and Brandon Wesley Wright, M.D. in the District Court of Boulder County, Colorado.  Attorney Deann S. Zenisek of Conklin Cordone Rutberg, P.C., Denver, Colorado.

5. Trial in the case of Martinez vs. Backer in the United States District Court, Denver, Colorado.  Attorney Katherine A. Ross, Assistant United States Attorney, U.S. Attorney's Office, Denver, Colorado.

6. Trial in the case of Mark Beard as Personal Representative of the Estate of Rachael Beard; and the Estate of Rachel Beard vs. Kaiser Foundation Health Plan of Colorado; Colorado Permanente Medical Group, P.C.; and Brandon Wesley Wright, M.D. in the District Court of Boulder County, Colorado.  Attorney Deann S. Zenisek of Conklin Cordone Rutberg, P.C., Denver, Colorado.

7. Deposition in the case of The Estate of Donnie Robertson vs. Corporal C.J. Dietz, et al., In the United States District Court of the Western District of Virginia, Harrisonburg Division.  Attorney Alexander Francuzenko of Cook, Craig & Francuzenko, Fairfax, Virginia.

8. Deposition in the case of Karen Carmichael, et al. vs The Greens of Bedford Apartments, et al. in the District Court in and for Tulsa County, State of Oklahoma.  Attorney Greg. A. Farrar of Farrar & Farrar, Tulsa, Oklahoma.

9. Deposition in the case of Stephanie Robles and David Jackson, et al., vs. SSC San Antonio North Operating Company, LLC, et al., in the 438th Judicial District of the District Court of Bexar County, Texas.  Attorney Bruce Anderson of Brin & Brin, San Antonio, Texas.

10. Deposition in the case of Sierra Rivera, et al. vs. Andrew Cater, et al. in the United States District Court, Eastern District of California.  Attorney William E. Camy of Porter Scott, Sacramento California.

11. Deposition in the case of Silvia Rodriguez, et al., vs. Michael Anthony Sanchez, Sierra Lynn Solorsano and Gillette Air Conditioning Company in the district Court, 150th Judicial District, Bexar County, Texas.  Attorney Sandra Laurel of Counsel to Carabin & Shaw, PC, San Antonio, Texas.

12. James Legros, Sr., and Jacqueline Milioto, as next friend to D.M., a Minor as Next of Kin to James Legros, Jr., vs. Board of County Commissioners of Choctaw County, et al., in the United States District Court for the Eastern District of Oklahoma.  Attorney Jessica Dark of Piere Couch Hendrickson Baysinger & Green, LLP, Oklahoma City, Oklahoma.

13. Deposition for an Arbitration Hearing in Dallas, Texas in the case of Estrada vs. Monterrey Mushrooms, Inc., Madisonville, Texas and Rhina Avela.  Attorney John Stevenson of Stevenson & Murray, Houston, Texas.

## 2020

1. Deposition in the case of Peter Balderas, et al. vs. United Phosphorus, LTD., et al. in the 108th District Court, Potter County Texas.  Attorney Robert L. Edwards of Ray Pena McChristian, El Paso County, TX.
2. Deposition in the case of Freddie Joey Taylor, Jr., Individually and as Representative Of The Estate Of Jordin Emily Taylor, Deceased, vs. Skyline Party Bus Co., LLC, Burleson SMTX Properties, LLC, Gabriela Wilson, Brandon Burleson, B & B Shuttles, LLC D/B/A B & B Transportation, VCD San Marcos River, LLC, Pi Kappa Alpha Fraternity, Pi Kappa Alpha Zeta Theta Chapter, and Alpha Tau Omega Fraternity, in the District Court, 22nd District, Hays County, Texas.  Attorney Jim Ewbank of Cokinos Young, Austin, Texas.
3. Deposition in the case of Richard Welch, individually; and as Surviving Spouse of Quata June Welch, Deceased, vs. Oklahoma Heart Hospital, LLC d/b/a Oklahoma Heart Hospital; Oklahoma Physicians, LLC; Oklahoma cardiovascular Associates, PC; John M. Williams MD; Bryan F. Perry, MD/ in the District Court of Oklahoma County, State of Oklahoma.  Attorney Jo Slama of Slama Legal Group, Oklahoma City, Oklahoma.
4. Deposition in the case of Elizabeth Chrisman et al vs. Board of County Commissioners of Oklahoma County, in its Official Capacity as Governing Body of the County of Oklahoma County, et al.; in the United States District Court for the Western District of Oklahoma.  Case No. CIV-17-1309-D.  Attorney Randall J. Wood of Pierce Couch, Oklahoma City, Oklahoma.
5. Deposition in the case of Jana Reed, Individually and as Representative of the Estate of Christopher Reed and on Behalf of  A. R. (A Minor) vs. Maersk Line LTD, USA and Maersk Line, Limited.  In the United States District Court for the Southern District of Texas Galveston Division; C.A. NO. 19-cv-00238 Admiralty.  Attorney John Stevenson of Stevenson & Murray Houston, Texas and Attorney Paxton N. Crew of the Crew Law Firm League City, Texas.
6. Trial in the case of the United States vs. PFC Jerome Forrest, General Courts-Martial, Fort Campbell, Kentucky.  Defense Counsels MAJ Daniel Hill, JA, and CPT Lawrence A. Willard II, JA of the Trial Defense Services Fort Campbell Kentucky.

## 2021

1. Deposition in the case of Jamison Barkley, as Personal Representative of the Estate of Amelia D. Cordoba vs. Paloma Blanca Health care Associates, LLC, d/b/a Paloma Blanca Health and Rehabilitation, LLC, et al. in the 1st Judicial District Court in Santa Fe, New Mexico.  Attorney Mr. Rick Barrera of Buckingham Berrera, Midland, Texas.
2. Deposition in the case of James Stewart , individually and as Successor in Interest to Decedent Jahmal Derrick Stewart, vs. County of Yuba, et al. in the United States District Court- Eastern District of California – Case No: 2:19-cv-01744 TLN-DB.  Attorney Mathew Gross of Porter Scott, Sacramento, California.
3. Deposition in the case of Stacy Willis, as Personal Representative of the Estate of Mitchell Everett Willis vs. Oklahoma County Detention Center, et al. in The United States District Court for the Western District of Oklahoma.  CIV - 18 – 323 – D, Judge Timothy D, DeGiusti. Attorney Derek S. Franseen of Walsh & Franseen, Edmond, Oklahoma.
4. Hearing in The Superior Court for the State of Alaska, Third Judicial District at Anchorage in the case of Talalelei Edwards vs. the State of Alaska.  Attorney William B. Oberly, the Innocence Project, Anchorage, Alaska.
5. Deposition in the case of Gloria Dominguez Individually, as Next Friend of A.J.O., J.C.O., A.J.O., and A.J.O. and as Representative of the Estate of Miriam Dominguez, Deceased, vs.

Oscar Quezada, M.D., et all, in the 210th District Court, the District Court of El Paso County, Texas. Attorney Alfonso L. Melendez, El Paso Texas.

6. Deposition in the case of Cruz Limas, as next Friend of A.S.S., A.T.S., Minors, Ashley K. Stoltz, Amanda N. Stoltz, and Roy Charles Stoltz, Sr., Individually and For and On Behalf of All Those Who are Entitled to Recover Under the Texas Wrongful Death and Survival Acts for the Death of Roy Charles Stoltz, Jr. vs. LL Hallmark, LLC d/b/a Hallmark Apartments, in District Court of El Paso County, Texas, 448th District Court. Attorney Daniel H. Hernandez of Ray, Pena McChristian Law Firm El Paso Texas.

7. Trial in the case of Jana Reed, Individually and as Representative of the Estate of Christopher Reed. In Personam Defendants; M/V Maersk Idaho In Rem Defendant, in the United States District Court, Southern District of Texas, Galveston Division. Attorney John Stevenson of Stevenson and Murray, Houston, Texas.

8. Deposition in the case of Amy Steele, as Wrongful Death Representative of the Estate of John Patrick Steele vs. Graves Ranch, INC., and Joshua Graves In the United States District Court for the District of Wyoming. Attorney Paul Kapp, of Sundahl, Powers, Kapp & Martin, LLC, Cheyenne, Wyoming.

9. Trial in the case of Robert J. Craft, Sabrina Craft, and Sabrina Craft as the Personnel Representative of the Estate of Robert James Anderson vs. The State of Wyoming; The Wyoming Department of Health; The Wyoming State Hospital; Thomas O. Forslund, Director, Department of Health, Individually and In His Official Capacity, et al. In the District Court for the First Judicial District, State of Wyoming, County of Laramie. Attorney Mark B Collier, Esq. of Messner Reeves, LLP, Denver, Colorado.

## 2022

1. Trial in the case of United States vs. Kathleen Richard YN2 USCG, General Courts-Martial, at Norfolk, Virginia. Lead Defense Counsel Billy Little, Jr. of Linn Creek, Missouri and Senior Defense Counsel, Defense Service Office (North), LCDR Jennifer L. Luce, JAGC, USN, Washington Navy Yard, D. C.

2. Deposition in the case of Marivel Salina Rodriguez, et al., vs. Cornerstone Tire LLC, et al., in the District Court of the 370th Judicial District, Hidalgo County, Texas. Attorney Robert Guerra of Thorton, Beichlin, Reynolds & Guerra, McAllen, Texas.

3. Trial deposition in the case of Maria Martha Gonzalez, Individually, and on Behalf of the Estate of Joseph M. Gonzalez, Sergio Gonzalez, Azalea Gonzalez, and Carolina Gonzalez Ortiz vs. Mohamad Nawar, M.D., in the 63rd Judicial District Court, Val Verde County, Texas. Attorney Bruce Anderson of Plunkett, Griesenbeck & Mimari, San Antonio, Texas.

4. Trial in the case of State of Texas vs. Larry Moore, in the 175th District Court, Bexar County, Texas. Deputy District Attorney Talia Triesh of the Bexar County District Attorney's office, San Antonio, Texas.

5. Trial in the case of State of Washington vs. Damien Mc Carter in the Superior Court of Kitsap County, Washington. Attorney David LaCross of LaCross and Murphy, Port Orchard, Washington.

6. Trial in the case of State of Texas vs. Brian Day, in the 25th District Court, Guadalupe County, Texas. Attorney Wendelyn Rush, Converse, Texas.

7. Trial in the case of Loretta Salazar vs. Nhu Nguyen T. Nguyen, M.D., et al in the 120th District Court, El Paso County, Texas. Attorney John Grost of El Paso, Texas.

8. Deposition in the case of Bruce Thompson, et al vs. St. Luke's Community Development Corporation- Sugar Land d/b/a St. Luke's Sugar Land Hospital, et al in the 125th District Court, Harris County, Texas. Attorney Tim Riley of Houston, Texas.

9. Deposition in the case of Richard Morales, Individually and as Representative of the Estate of Dela Morales, Deceased, et al vs. Vincent A. Caldarola, M.D. In the 166th District Court,

Bexar County, Texas. Attorney Richard Kason of Gonzalez Chiscano Angulo & Kason, San Antonio, Texas.


## 2023

1. Deposition in the case of Linda Hollinger Lamar, et al vs. Bridgestone Americas, et al. in the State of New Mexico , County of Santa Fe, First Judicial District.  Attorney Angela Gordon of Hartline Barger, LLP, Houston, Texas.
2. Trial testimony in the case of United States v. Daniel A. Draher, Jr., Gunnery Sergeant U.S. Marine Corps in the Navy-Marine Corps Trial Judiciary, Eastern Judicial Circuit.  Defense attorney LCDR Connor B. Simpson, JAG, USCG (USA).
3. Trial testimony in the case of Frances Earline Sims v. City of Jasper, et al; In the United States District Court, Eastern District of Texas, Beaumont Division.
4. Trial testimony in the case of State of Arkansas v. Tyler Edward Tait in the Circuit Count of Chicot County, Arkansas.  Defense Attorneys Jeff Rosenzweig of Little Rock, Arkansas and Robert Bridewell of Lake Village, Arkansas.
5. Arbitration hearing in the case of Andre Vargas v. City of San Antonio.  Attorney Ben M. Sifuentes, Jr. of San Antonio, Texas.
6. Deposition in the case of Sarah Stubblefield and Ben Pickett, Individually and in their Representative Capacity of their Minor, Dorothy Pickett vs. Acadiana Birth House and Michel Martien in the 15th Judicial District Court, Parish of Lafayette, State of Louisiana.  Attorney Bruce A. Cranner of Milling Benson Woodward, L.L.P., Mandeville, Louisiana.
7. Deposition in the case of Aziz, et al., v. Sideline Lounge, Inc. d/b/a Club 516, et al.  Attorney M. Thomas D. Flinn, Esq, of Garrity, Graham, Murphy, Garofalo & Flinn, East Hanover, New Jersey.


## 2024

1. Trial testimony in the Case of Nebraska vs. Eric Ramos Attorney Timothy W. Nelsen of Fankhauser Nelsen Werts Ziskey & Merwin, P.C., L.L.O., Nebraska City, Nebraska.
2. Deposition in the Estate of Kelroy Newman, by and through putative personal representative, Bryanne Watts-Lucero et al; vs. Wilson: v. Board of County Commissioners of the County of Montezuma; Sheriff Steven Nowlin, individually and in his official capacity; et al. in the United States District Court for the District of Colorado.  Attorney Mark Collier of Childs, McCune, Denver, Colorado.
3. Deposition in the case of Shawna Green, Individually, and as Personal Representative of the Estate of Aaron Green, Deceased v. CB&I Zachry Joint Venture, et al: In the 239th Judicial District Court in Brazoria County, Texas.  Attorney John Stevenson of Stevenson & Murray, Houston, Texas.
4. Trisha M. Talbot a/k/a, Trisha M. Talbot-Carroll, Individually and as Independent Executor of the Estate of Everette Louis Talbot, Deceased, and Teresa Talbot v. Terri L. Varner, As Independent Executor of the Estate of William Varner Defendants In the District Court of Harris County, Texas, 281s Judicial District.  Attorney Gregg R. Brown, Germer, Beaman, & Brown, Austin, Texas.
5. Courtroom testimony in the State of Louisiana Exrel. Jimmie C. Duncan, Petitioner vs. Darrel Vanoy Warden in the 4th Judicial District for the Parish of Ouachita, Louisiana. Attorney Scott Greene of Bryan Cave Leighton Paiser, LLP in Atlanta, Georgia, and the Innocence Project of Louisiana.

**2025**

1.   Deposition in the case of Christy Elizabeth Brown, et al., on behalf of the Estate of Steven Brown vs. DFW Operating Company D/B/A Hilton Hotel and Executive Conference Center, Merced Velez, and Danny Gonzalez; in the District Court 193rd Judicial District, Dallas County, Texas.

1060 Skylight View
Colorado Springs, CO
80906

February 28, 2025

Mr. John Whitefleet
Porter Scott Attorneys
2180 Harvard Street, Suite 500
Sacramento, CA  95815

RE: Dorothey Heimbach, individually and as successor in interest to Anthony Silva,  vs.
Stanislaus County; and Does 1-10, in their individual capacities, in the United States
District Court Eastern District of California.  Case No. 2:23-cv-01887-DJC-KJN.

Dear Mr. Whitefleet:

**Documents Reviewed**

Per your request, I have viewed the following documents, photographs and body worn
camera:

1. Plaintiff's Rule 26 Initial Disclosures;
2. Plaintiff's Supplemental Rule 26(A) Disclosures;
3. Supplemental Demand for Preservation of Evidence;
4. Single frame from the body worn camera and photographs taken inside the hospital;
5. The Death Certificate;
6. Multiple wound Documentation with photographs and charts from the Central Valley
   Specialty Hospital (CVSH) on July 26, 2023, August 3, 2023, August 8, 2023,
   August 15, 2023, August 15, 2023, August 29, 2023, and September 5, 2023;
7. Multiple Memorial Hospital records including the admission of October 8, 2022 and
   readmissions for shorter stays;
8. Multiple hospital records from Central Valley Specialty Hospital beginning with
   November 24, 2002 with intermittent re-admissions to Memorial Medical Center with
   final readmission to Central Valley Specialty Hospital on July 25, 2023 and through
   September 10, 2023;
9. Stanislaus County Sheriff's Department Investigation.

**Summary of Education, Training & Education**

 I am a board certified forensic pathologist licensed to practice medicine in the States of
Colorado and Texas.  I have been licensed to practice in Texas since 1978 and Colorado

since 1982. I obtained my B.S. in Zoology in 1971 from the University of Washington, Seattle, Washington. I attended the Universidad Autonoma de Guadalajara, Mexico graduating in 1974 and received an M.D. degree. I then performed an American Medical Association rotating internship at the Moncton Hospital, Moncton New Brunswick, Canada beginning July 1, 1974 and finishing on June 30, 1975. I performed a one year Servicio Social (Social Service) as required for licensure in the Republic of Mexico from August of 1975 to August of 1976 in Guadalajara, Mexico.

I then entered active duty with the United State Army as a Captain in the Medical Corps and was assigned as a Brigade Surgeon to the 7th Infantry Division and was stationed at Fort Ord, California. In July of 1978 I began a four year residency in Anatomical and Clinical Pathology at Fort Sam Houston, Texas at Brooke Army Medical Center and completed my residency at the end of June 1982. I completed a forensic pathology fellowship at the Bexar County Forensic Science Center in San Antonio, Texas, beginning in August of 1984 and finishing in August of 1985.

I have been board certified in Anatomical and Clinical pathology since June of 1982 and Forensic Pathology since May of 1985. I retired as the El Paso County Coroner in January of 2019 and was appointed Coroner of El Paso County, Colorado in January of 2006 and elected to that position in November of 2006, 2010, and 2014. I was an Associate Coroner Medical Examiner, El Paso County, Colorado from July, 2002 to January of 2006.

I was the Deputy Chief Medical Examiner at the Bexar County Forensics Science Center in San Antonio, Texas from June of 1992 through December of 2002. I was a staff Medical Examiner at the Bexar County Forensic Science Center from August of 1984 to June of 1992. I was Chief of the Department of Pathology for the U.S. Army Hospital, Fort Carson, Colorado between March 1984 and September of 1984, and I was the Assistant Chief of the Department of Pathology between July 1982 and March of 1984.

I practiced emergency medicine on a part time basis between 1978 and 1991. My military service and awards, medical society and other professional society memberships and appointments, as well as my international professional activities are further outlined in my attached curriculum vitae. My fee schedule and a list of courtroom cases other than when called upon by the State of Colorado where I have either given a deposition or testified at trial is also attached to this letter.

**Summary of Events**

The Stanislaus County Sheriff's Office Department report indicates that deputies were dispatched to Veterans Park located at 3600 Sierra Street inside the city of Riverbank after Anthony Silva was seen by a mounted unit deputy chasing after another suspect and trying to fight him. Silva was displaying erratic behavior and was believed to be under the influence of a stimulant narcotic. While walking Silva to a patrol car, he tried to pull away from deputies. He was involved in an altercation which resulted in him being taken to the ground and sustained fractures to the neck.

He was transported by ambulance to the Memorial Medical Center hospital in Modesto. On arrival he reported lower extremity paralysis. He underwent multiple X-rays and scans, which revealed fractures to the C6 and 7 vertebrae and was admitted to the hospital for surgical evaluation. On the 9th of October 2022, he underwent a C6-C7 anterior cervical discectomy and fusion, C2 to T2 posterior instrumentation and fusion, C6 laminectomy with neuromonitoring and pinpoint, as well as hemovac drains. His chest X-ray revealed an advanced COPD (chronic obstructive pulmonary disease). His clinical course was complicated by a cardiac arrest, respiratory distress and required intubation, blood product transfusions, a deep vein thrombosis and MRSA (Methicillin-resistant Staphylococcus aureus) bacteremia, as well as the development of a sacral decubitus. He remained cognitively intact to baseline, though a gross quadriplegic (shrugs shoulders, BUE 3+/5 strength elbow flexion/extension, gross motor control of BUE and BLE flaccid). He required mechanical ventilation due to his spinal cord injury and required trach placement. Due to significant mucus plugging, he underwent eight bronchoscopies for removal of mucus plugs. He became bradycardic and required a pacemaker. He developed MRSA pneumonia and MRSA bacteriemia. He required a Peg tube placement as well as a tracheostomy. He was discharged to the Central Valley Specialty Hospital on November 24, 2022.

On December 10th, 2022, he was transported to the Memorial Medical Center with a history of receiving 10 milligrams of oxycodone and clonazepam, and which resulted in loss of consciousness and a cardiopulmonary arrest. He was quickly resuscitated and when he arrived at the Memorial Medical Center, he was alert and oriented. He underwent a nephrology consult that revealed an acute kidney injury. He had pneumonia and was treated and sent back to the Central Valley Specialty Hospital on December 19, 2022. He developed a left-sided pneumonia and atelectasis. He developed a mucus plug on December 26, 2022, and was sent back to the emergency room of Memorial Medical Center, where the plug was removed and he was returned to the Central Valley Specialty Hospital.

 On December 30th, 2022, he was re-admitted to Medical Center Hospital. He had numerous decubitus ulcers and there is a notation that he would not participate in his ADLs (activities of daily living).

On January the 14th, he was readmitted to CVSH with a left-sided pneumonia with atelectasis and fluid volume loss. He developed a urinary tract infection with Candida and a sputum culture revealed Klebsilla aerogenes, as well as a Pseudomonas aeruginosa from the lower respiratory culture.

On the 14th of March, cultures grew out multi drug resistant Pseudomonas aerogenes with RCRP aeruginosa (Respiratory Carbapenem-resistant Pseudomonas). He again refused turning/wound care. Osteomyelitis then developed in the left ischium. On March 23rd, the progress notes revealed that the patient was consistently refusing turning/wound care. The patient was reported refusing RNA (Restorative Nursing Assistant) service. He was also advised that a consequence of not receiving and refusing medical care would

include further deterioration of the wounds and eventual death, especially related to impending sepsis that would be caused by the decubitus wounds. The patient indicated his understanding of this warning.

On April 4th, he was discharged and sent to Memorial Medical Center for a left lung effusion and underwent interventional draining. He underwent a left-sided decortitation procedure (the cultures of the empyema revealed multi drug resistant Pseudomonas. He was then returned to the Central Valley Specialty Hospital and was admitted on April 27, 2023. On May 8, 2023, there is a notation that he was being treated for pneumonia and was not compliant. His wounds continued to deteriorate, and on the progress note of May 9, 2023, 24 wounds were active, most of them were Stage III and Stage IV. On May 16th, 2023, there are wound photos and the note is "more agreeable today. Still refusing dressing changes during the week. Wounds stable to improved."

On May 21st he developed sepsis and it resulted in a Pseudomonas pneumonia. A dietitian noted that he had a high nutrition risk presenting as malnutrition, decubitus wounds and severe/chronic malnutrition. His admission weight in October was 68.4 kilograms and on April 28th, he weighed 46.8 kilograms.

He was admitted to Memorial Medical Center on May 24th, 2023, with the recurrent MDRO Pseudomonas pneumonia and osteomyelitis. He returned to CVSH and was still refusing care, and he was discharged to Memorial Medical Center on June 6, 2023. A progress note of June 10, 2023 stated that the patient has low blood pressure. He was given 2 liters of normal saline and has recurrent lung infections with MDRO Pseudomonas and was transferred to Memorial Medical Center for concerns of septic shock.

On July 25, 2023, he was discharged from Memorial Medical Center and was admitted back to CVSH. His albumin was noted to be 1.8 with significant malnutrition which was a contributor for nonhealing. He was also non-compliant for turning and wound care attention and informed that this would be fatal.

On a July 26th history and physical, it says he is constantly refusing turning and wound care. He has MDRO Pseudomonas and MRSA PNA, chronic osteomyelitis, and is status post abdominal wound cellulitis and abcess, status post gastric feeding tube was repaired and replaced by a J tube. On August 12th, there is a note that the patient is now more compliant. On August 16th he had multiple units of blood transfused.

On August 28th, the infectious disease progress notes revealed that he had continued to refuse multiple aspects of his care. He had recurrent sepsis and a questionable MDRO Pseudomonas and MRSA.

On the 9th of September, he became hypotensive and was noted to have CRE Pseudomonas, PNA and sepsis - appears to have another infection. A progress note by infectious disease on September 9, 2023, revealed CRPA, MDRO, pneumonia, recurrent sepsis, and acute hypoxic respiratory failure. On that same day the patient said that he

wanted a DNR and was thinking about comfort care. Patient just wanted his pain meds. On September 10th, his blood pressure was better and the colostomy had not healed. There was concern over hypotension, indicating severe septic shock. The BP was resistant to fluids and Midodrine. Later in the day, the mother arrived to the hospital and informed hospital staff that the family had decided to place him on comfort care and to withdraw all life support. The ventilator was then disconnected and the tube feedings stopped. I was notified that he died at 9:26 p.m. and was pronounced dead.

**Discussion**

According to the Memorial Medical Center hospital record, the following history was reported: 10 years of schizophrenia, hearing voices and hallucinations. Evil identity known as "Anthony"; patient likes to be called "Tony." Has decided to live on the streets. Had difficulty living with family and reported assaulted mother in the past. Had ETOH-induced pancreatitis, history of Creon use per patient. Has been resident of Stanislaus Behavioral Center, on Seroquel and other Rx, though patient declined medical treatment. Close family and a girlfriend died recently due to medical problems. Has elected to use street drugs in preference to psychiatric prescribed drugs Rx. When patient is questioned regarding his history, he denies mental health history or being treated at Stanislaus Behavioral Center. Due to patient's current neurological state, he has not been a danger to himself and has complied with all medical treatments. Past medical history reveals alcohol-induced pancreatitis, seizures, methamphetamine abuse, and aggressive behaviors.

When Anthony Silva was admitted to Memorial Medical Center for his neck fracture on October 8, 2022. He underwent surgery on October 9th and developed several complications that were addressed during that admission, as well as other complications that occurred later. The presence of decubitus began in the original hospital record and looked to be a Stage III lesion on the sacrum and the others appeared less involved. Unfortunately, because he was not turned every couple of hours, additional decubitus ulcers developed during his first admission to the Central Valley Specialty Hospital. Treating these lesions was a problem due to his noncompliance for turning as well as his noncompliance for wound care. The result of this was multiple sites for infection and resulting sepsis. He developed osteomyelitis, which is also difficult to treat. His advanced COPD contributed to his mucus plugging. By his last admission to the Central Valley Specialty Hospital, he developed multiple rounds of sepsis as well as pneumonia with difficulty for treatment because of the multiple drug resistance that had developed. Because of this and the lack of cooperation, he also had malnutrition and was anemic and required periodic blood transfusions throughout his hospitalization, but this was more so on the last admission, when he was given multiple units of blood on August 16th.

It is of note to me that the death certificate indicates that the deceased died of cardiopulmonary arrest due to septic shock and due to osteomyelitis. In addition, the deceased also had active pneumonia that was contributing to his septic shock.

Decubitus ulcers are also known as pressure sores.  It is understood that patients without continual turning and repositioning and other modalities that reduce and lower the presence of pressure.  Cleaning the wound locally and covering with appropriate barriers to protect from introduction of infectious material and fluids is necessary in order to prevent local infection as well as systemic infections, typically sepsis, pneumonia, urinary tract infections.

**Medical Opinions**

Based on reasonable medical probability, I have formed the following medical opinions after reviewing the above documents, photographs and body worn camera.

First, moving him from the ground to the picnic table did not appear to cause exacerbation of his neck injuries.

Second, I agree with Rajwinder Bahia, M.D., that cause of death for Anthony Silva was due to septic shock and osteomyelitis.  In addition, the numerous decubitus ulcers were a major contributor to his death.  The decubitus ulcers exposed the underlying tissues that then allow for systemic distribution of pathogens into the blood supply.  As a result, the loss of body fluids and resultant malnutrition impeded the healing of the wounds.

Third, the lack of compliance for wound care and turning not only delayed healing, but allowed additional wounds to form and further contribute to Mr. Silva's death.  The cause of his death was not due to his spinal injury.

Fourth, had Mr. Silva worked with physical and occupational therapy, he would not have become deconditioned and if he had permitted the physicians and other professional staff to assist him in moving and turning and allowed for the wound care of his decubitus ulcers, he most likely would not have developed malnutrition or have died.

If more information becomes available, additional opinions may be offered and/or existing opinions modified.

Should you have any questions, please do not hesitate to contact me.

Sincerely,

Robert C. Bux, M.D.

# EXHIBIT C

**Robert Shavelle, PhD, FAACPDM**
Shavelle@LifeExpectancy.org
(415) 731-0240

1439 - 17th Avenue
San Francisco, CA 94122-3402

**David Strauss, PhD, FASA**
Strauss@LifeExpectancy.org
(415) 731-0250

March 12, 2025

John R. Whitefleet, Esq.
Porter Scott
2180 Harvard St, Suite 500
Sacramento, CA 95815

Re:     **Life Expectancy of Mr. Anthony Silva**

Dear Mr. Whitefleet:

This report responds to your request for my opinions on Mr. Silva's life expectancy, had he not died on September 10, 2023, and for the underlying scientific bases.

*Summary: As documented below, I calculate his life expectancy to have been approximately 12 additional years, which represents a reduction of 24 years from the general population figure of 36 years for a male of the same age. I understand that Mr. Silva was non-compliant with medical directives, a determination outside my area of expertise. The 12 years does not account for this. Rather, it presumes that he was typical of spinal cord injury patients who were ventilator dependent and had survived at least 1 year post injury.*

*I also note that had the spinal cord injury not occurred, his life expectancy would have been reduced due to his history schizophrenia and drug/alcohol abuse. The range here is 22 to 29 years. The 29 is based on his age, sex, and schizophrenia. The 22 applies if he would have had lifelong problems with drug or alcohol abuse. It is outside my area of expertise to opine whether his problems would have been lifelong.*

1.      My information on Mr. Silva is taken from

   - Report of Robert Bux, MD, 2/28/2025
   - Report of Bennet Omalu, MD, 3/1/2025

2.      As you know, Mr. Silva suffered a cervical spinal cord injury (SCI) in August 2022 and was ventilator dependent. In addition, he had a history of schizophrenia[16-21] and drug abuse.[22-26]

3.      Mr. Silva, born September 14, 1982 was 41 years old when he died on September 10, 2023. It is outside my area of expertise to opine on the cause or circumstances surrounding this death.

1

4.  The life expectancy of an average male age 41 in the general population is 36 additional years.[1] However, Mr. Silva's SCI and past medical history should be taken into account in the assessment of his life expectancy.

5.  It has been known for more than 100 years that serious medical conditions and/or injuries reduce life expectancy. In the case of SCI there is a substantial body of peer-reviewed scientific literature from around the world documenting the reduction.[5-12] For example, Savic et al.[12,Table 3] reports a life expectancy of 14 years for 40 year-olds who are ventilator dependent (at any level/grade of SCI). Also, Shavelle et al.[15] reports 12 years for those who are ventilator dependent and with neurological level C1-C5. Reasons for the reduction in life expectancy are given in paragraphs 6 and 7.

6.  Persons with SCI are subject to increased risk of early death from a variety of causes.[7] The leading causes are pneumonia and other diseases of the respiratory system. Other major causes are pulmonary embolisms, urinary tract infections, and septicemia. Suicide is also markedly elevated in this population. Finally, diseases of the circulatory system, the leading cause of death in the general population, have a still higher rate in the spinally injured population.

7.  Persons with SCI are at risk of a wide range of medical complications, including:

- Deep vein thromboses and pulmonary embolisms
- Pressure sores
- Urinary tract infections
- Upper urinary tract dilation (overfilling, which can trigger autonomic dysreflexia – potentially life-threatening)
- Urinary calculi (from demineralization of bones due to immobility)
- Contracture of muscles, which can lead to fixed deformities
- Limitations of range of motion in the paralyzed joints
- Constipation and hemorrhoids
- Osteoporosis and fractures of the long bones
- Syringomyelia (a progressive disease of the spinal cord, which in the case of a cervical injury can further compromise the respiratory system)

Because of loss of sensation below the level of injury, the patient may not feel the pain associated with many complications, and thus they may not be detected.

8.  **Definition**. In science the term life expectancy refers to the **average** survival time in a large group of persons similar to the plaintiff. It is not a prediction of the actual number of years the plaintiff will live. For example, the life expectancy of an average U.S. male at birth is 74 additional years.[1] This of course does not mean that we predict he will live exactly to age 74; his survival time could be much longer or shorter.

9.  **Opinion**. Based on (a) the materials I have reviewed about Mr. Silva, (b) a large body of medical literature on life expectancy,[6-26] (c) standard scientific methods,[1-5] and (d) my education, training, experience, and expertise, **I compute Mr. Silva's life expectancy – had he not died -- to have been approximately 12 additional years.** Terms are defined in Appendix A, and one of the life tables is shown in Appendix B.

    As indicated above, the life expectancy of males aged 41 in the U.S. general population is 36 additional years.[1] The above figure thus represents a reduction of approximately 24 years (= 36 - 12).

10. Other factors, not explicitly considered in my analyses, include:

    **Positive Factors**
    - No history of cancer
    - No history of diabetes
    - Non-smoker

    **Negative Factors**
    - Was non-compliant with medical directives
    - History of schizophrenia
    - History of drug and alcohol abuse
    - Required a feeding tube
    - Homeless

    If the balance of these is judged to be more favorable or less favorable than the average amongst otherwise similarly disabled persons, the life expectancy may need adjustment. In my view no adjustment is required in this instance.

11. My professional qualifications are set out in my CV, which is attached. In brief: I am a medical researcher in the area of life expectancy of persons with disabilities. I have authored more than 100 articles in the scientific literature, primarily on life expectancy/survival, most of which have been published in peer-reviewed medical journals. These have included studies of cerebral palsy, traumatic brain injury, spinal cord injury, heart disease, cancer, and stroke. Since 1994 I have been Technical Director of the Life Expectancy Project. This is an internationally recognized research team whose focus is epidemiological studies on persons with developmental disabilities. I am a Fellow of the American Academy for Cerebral Palsy and Developmental Medicine.