**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

*Attorneys for Plaintiff Dorothey Heimbach*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOROTHEY HEIMBACH,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>STANISLAUS COUNTY, JUSTIN CAMARA, and ZA XIONG,<br><br>　　　　　Defendants. | 2:23-cv-01887-DJC-CSK<br><br>*Assigned to:*<br>District Judge Daniel J. Calabretta<br><br>**PLAINTIFF'S TRIAL BRIEF REGARDING CAUSATION**<br><br>FPTC Date:　December 18, 2025<br>Time:　　　　1:30 PM<br>Location:　　Courtroom 7 |

## I.　INTRODUCTION

　　Defendants' deputies fractured Anthony Silva's spine during his arrest, rendering him a quadriplegic. Eleven months later, Mr. Silva died from complications of that injury. Rather than accept responsibility for the natural and foreseeable consequences of their conduct, Defendants now advance a series of alternative theories designed to shift blame onto Mr. Silva and the doctors and nurses who took care of him after the incident.

　　These theories share a common defect: each requires the jury to ignore the unbroken chain connecting Defendants' use of force to Mr. Silva's death. First, suggest that Mr. Silva's own post-injury conduct constitutes a superseding cause

1

that severs their liability. But nothing about Mr. Silva's course was extraordinary or unforeseeable. The medical complications and difficulties with self-care are well-documented common consequences of a severe spinal cord injury—precisely the kind of harm Defendants set in motion when they broke his neck.

Next, Defendants seek to apportion fault to Mr. Silva's treating medical providers. This theory fails at the threshold: California law requires expert testimony to establish the standard of care for medical professionals, and Defendants have designated no qualified expert to offer such opinions. Moreover, Defendants are responsible for any additional harm resulting from the acts of others in providing medical treatment, even if those acts were negligently performed. *See* CACI 3929. Furthermore, Defendants did not name the nurses or doctors as defendants in a cross-complaint.

Finally, Defendants contend that Mr. Silva failed to mitigate his damages. But mitigation requires only reasonable diligence under the circumstances—and Mr. Silva's circumstances included quadriplegia and difficult with self-care that predictably accompanies catastrophic injury. Defendants cannot hold a paralyzed man to the compliance standards of an able-bodied mentally healthy man.

Plaintiff's position is that Defendants will not be able to produce sufficient evidence to substantiate these arguments, and at the close of evidence, Plaintiff will likely move for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). Plaintiff raises these legal issues now so the Court can consider them in advance, rather than hearing them for the first time during a Rule 50(a) motion at the close of evidence.

## II.   DEFENDANTS' CONDUCT WAS A PROXIMATE CAUSE OF MR. SILVA'S DEATH

### A.   Legal Standard for Proximate Causation

The proximate cause question asks whether the unlawful conduct is closely enough tied to the injury that it makes sense to hold the defendant legally

responsible for the injury. *Mendez v. Cnty. of Los Angeles*, 897 F.3d 1067, 1076 (9th Cir. 2018). "Proximate cause is 'said to depend on whether the conduct has been so significant and important a cause that the defendant should be legally responsible.'" *Id*. (quoting W. Page Keeton et al., Prosser and Keeton on Torts § 42 (5th ed. 1984)).

### B.     The Chain of Causation Remains Unbroken

Mr. Silva's death is directly traceable to the force inflicted by Defendants on October 10, 2022. The chain of causation is straightforward and unbroken: Defendants' use of force caused blunt force trauma to Mr. Silva's head, face, and neck; the blunt force trauma caused cervical spinal fractures; the cervical spinal fractures caused a traumatic spinal cord injury; and the spinal cord injury initiated a cascade of medical complications that culminated in Mr. Silva's death on September 10, 2023.

This is precisely the type of causal chain that supports legal responsibility. The medical complications Mr. Silva experienced over the following eleven months—including bed sores, sepsis, pneumonia, and cardiovascular complications—were foreseeable sequelae of a traumatic spinal cord injury. These complications were merely the mechanisms of death; while the underlying cause of death was the assault by Justin Camara and Za Xiong.

Under established principles of proximate causation, a defendant remains liable for the foreseeable consequences of his tortious conduct, even if those consequences unfold over time or through secondary medical complications. A tortfeasor takes his victim as he finds him, and when that tortfeasor inflicts a catastrophic spinal cord injury, he is legally responsible for the natural and foreseeable progression of that injury—including death.

### III.    MR. SILVA'S CONDUCT WAS NOT A SUPERSEDING CAUSE

The doctrine of intervening or superseding cause has been applied to 42 U.S.C. § 1983 actions. The presence of such causes have been held to prevent the

3

direct causal connection required for liability in section 1983 cases. See Van Ort v. Estate of Stanewich, 92 F.3d 831, 837 (9th Cir.1996) (holding that in section 1983 actions, the Ninth Circuit has looked to "[t]raditional tort law" to define "intervening causes that break the chain of proximate causation"); White v. Roper, 901 F.2d 1501, 1506 (9th Cir.1990) (defendant's "conduct is not the proximate cause of [plaintiff's] alleged injuries if another cause supersedes his liability for the subsequent events"); Gutierrez–Rodriguez v. Cartagena, 882 F.2d 553, 561 (1st Cir.1989) ("An unforeseen and abnormal intervention breaks the chain of causality, thus shielding the defendant from section 1983 liability").

Defendants will seek to blame Mr. Silva's death on his alleged failure to comply with medical directives and assist with his own care. This argument fails for two reasons.

First, Defendants cannot establish that Mr. Silva failed to do what was reasonable under the circumstances. Mr. Silva was a quadriplegic. His ability to participate in his own care was profoundly limited by the very injury Defendants inflicted.

Second, and more fundamentally, to constitute a superseding cause, a plaintiff's conduct must be unforeseeable and highly unusual. *See Van Ort*, 92 F.3d at 837. Mr. Silva's difficulties were neither. It is entirely foreseeable that a 40-year-old man who is suddenly and pointlessly rendered quadriplegic by police officers—who then charge him with a felony and go on with their jobs without so much as an internal investigation—might struggle to assist with his own medical care. This is foreseeable both physically, because he could not control his own body, and psychologically, because he had just had his life destroyed by officers who swore an oath to protect him and who faced no accountability for what they did to him.

Defendants cannot inflict a catastrophic injury on Mr. Silva and then escape liability by pointing to his foreseeable difficulty coping with that injury.

4

1  IV.  **COMPARATIVE NEGLIGENCE OF THIRD-PARTY MEDICAL**
2       **PROVIDERS**
3       Defendants may attempt to allocate fault to Mr. Silva's medical providers.
4  This defense fails as a matter of law because Defendants have no qualified expert
5  to support it.
6       It is well established under California law that medical negligence cannot be
7  proven without expert testimony establishing the applicable standard of care and its
8  breach. *See Flowers v. Torrance Mem'l Hosp. Med. Ctr.*, 8 Cal. 4th 992, 1001
9  (1994). This is because the standard of care for physicians and nurses involves
10 specialized knowledge beyond the understanding of lay jurors.
11      Defendants have not designated any expert qualified to testify regarding the
12 standard of care for nurses, physicians, or any other medical provider who treated
13 Mr. Silva. Their designated pathologist, Dr. Sheridan, is not qualified to opine on
14 nursing standards or physician clinical decision-making—his expertise is in
15 determining cause of death, not in evaluating whether bedside care met the
16 applicable standard.
17      Without expert testimony on the standard of care, Defendants cannot
18 establish that any medical provider was negligent, and there is no evidentiary basis
19 to allocate fault to non-parties. At the close of evidence, Plaintiff will move for
20 judgment as a matter of law on this issue.
21 V.  **COMPARATIVE FAULT OF MR. SILVA**
22      Based on discussions with defense counsel, it appears Defendants may argue
23 that Mr. Silva was comparatively negligent based on his conduct after the October
24 10, 2022 incident—specifically, his alleged failure to comply with medical
25 treatment or assist with his own care during the thirteen months between his injury
26 and his death.
27      Plaintiff acknowledges that comparative negligence may play a legitimate
28 role in this case. To the extent Defendants contend that Mr. Silva's conduct during

1 the encounter with deputies contributed to his own injury, that is a proper subject
2 for comparative fault analysis.
3     However, only conduct leading up to and during the incident on October 10,
4 2022 is relevant to comparative negligence. Comparative fault addresses the
5 relative responsibility of the parties in causing the injury-producing event.
6     Conduct occurring after the injury has already been inflicted is not analyzed
7 within the framework of comparative negligence—such conduct is only considered
8 in relation to whether it shows a failure to mitigate damages. These are distinct
9 legal concepts. Mitigation of damages concerns whether a plaintiff unreasonably
10 failed to minimize the consequences of an injury that has already occurred. It
11 affects the amount of damages recoverable, not the allocation of fault for causing
12 the injury in the first instance.

## VI. MR. SILVA DID NOT FAIL TO MITIGATE HIS DAMAGES

14     A plaintiff has a duty to use reasonable diligence in caring for his injuries.
15 However, the burden is on the defendant to prove that the plaintiff unreasonably
16 failed to mitigate and that such failure caused additional damages. CACI 3930;
17 *Christiansen v. Hollings*, 44 Cal. App. 2d 332, 346 (1941). Reasonableness is not
18 measured against an abstract standard—it is measured against what was reasonable
19 for this plaintiff under his actual circumstances. *Id.*
20     Mr. Silva's circumstances were extraordinary. He was rendered quadriplegic.
21 He could not move his limbs, could not reposition himself, could not perform basic
22 functions of daily life without assistance. His ability to "comply" with care
23 directives was fundamentally limited by the physical reality of his condition—a
24 condition Defendants created. Beyond the physical limitations, spinal cord injury
25 carries well-documented psychological consequences, including depression,
26 anxiety, and loss of motivation. A man who has suddenly and permanently lost
27 control of his body, who faces a future of complete dependence on others, and who
28 bears the additional trauma of knowing that the people who did this to him faced

no consequences, cannot be held to the same standard as a plaintiff with a minor injury and every reason for optimism. Defendants cannot catastrophically injure Mr. Silva and then fault him for struggling to cope with the aftermath.

## VII. CONCLUSION

Defendants broke Anthony Silva's neck and left him a quadriplegic. He died eleven months later from complications of that injury. The chain of causation is direct and unbroken, and Defendants' attempts to shift responsibility fail as a matter of law.

Mr. Silva's post-injury struggles were not a superseding cause—they were the foreseeable consequence of catastrophic spinal cord injury. Defendants' effort to allocate fault to medical providers fails because they have no qualified expert to establish any breach of the standard of care. And to the extent Defendants argue Mr. Silva failed to mitigate his damages, they cannot meet their burden of proving that a quadriplegic man acted unreasonably by struggling to cope with quadriplegia.

Plaintiff requests that the Court consider these issues in advance of trial and, at the close of evidence, Plaintiff anticipates moving for judgment as a matter of law under Rule 50(a) to the extent Defendants have failed to produce sufficient evidence to support their causation defenses.

Dated: December 11, 2025    **LAW OFFICES OF DALE K. GALIPO**

By:   /s/   *Cooper Alison-Mayne*
Dale K. Galipo
Cooper Alison-Mayne
*Attorneys for Plaintiff Dorothey Heimbach*