1  **PORTER | SCOTT**

2  A PROFESSIONAL CORPORATION
   John R. Whitefleet, SBN 213301
3  jwhitefleet@porterscott.com
   Colin J. Nystrom, SBN 354503
4  cnystrom@porterscott.com
   2180 Harvard Street, Suite 500
5  Sacramento, California 95815
   TEL: 916.929.1481
6  FAX: 916.927.3706
7

8  Attorneys for Defendants
   STANISLAUS COUNTY, JUSTIN CAMARA, ZA XIONG, ERIC BAVARO
9  *(Exempt from Filing Fees Pursuant to Government Code § 6103)*

10

11        UNITED STATES DISTRICT COURT EASTERN DISTRICT OF CALIFORNIA

12

13  DOROTHEY HEIMBACH, individually and     Case No.  2:23-cv-01887-DJC-CSK
    as successor in interest to Anthony Silva,
14                                            **DEFENDANTS'           COMBINED
                Plaintiff,                    OPPOSITION     TO     PLAINTIFF'S
15                                            MOTIONS IN LIMINE**
16  v.
                                              First Amended Complaint Filed:  11/21/2023
17  STANISLAUS  COUNTY;  and  JUSTIN          Second Amended Complaint Filed: 3/14/2024
    CAMARA,   ZA   XIONG,   and   ERIC
18  BAVARO, in their individual capacities,

19                Defendants.

20  _____/

21

22        Defendants hereby oppose Plaintiff's Motions in Limine as follows:

23                         **I.     INTRODUCTION**

24        This case arises from the October 8, 2022, encounter between Anthony Silva by Stanislaus

25  County Sheriff's Deputies Justin Camara and Za Xiong, during which Plaintiff alleges that Mr. Silva

26  sustained a cervical spine fracture that rendered him quadriplegic. He died approximately eleven months

27  later, on September 10, 2023.

28

**DEFENDANTS' COMBINED OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE**
4911-1216-5249, v. 1

The remaining claims are excessive force as a violation of the Fourth Amendment, familial association as a violation the Fourteenth Amendments and state law claims for battery and negligence. The Monell claims have been dismissed.   Trial is set for January 5, 2026.

## II.    STANDARD

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). The Court has broad discretion to determine the admissibility of evidence. *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998). "The real purpose of a motion in limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably affect fairness of the trial. A court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds." *Stewart v. Hooters of Am., Inc.,* No. 8:04-CV-40-T-17-MAP, 2007 WL 1752843, *1 (M.D. Fla. 2007) (citing *Luce v. United States*, 469 U.S. 38, 41 (1984)).

Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. FRE 401.

## III.    ARGUMENT

**Opposition to Plaintiff's Motion in Limine No. 1**

Plaintiff seeks to preclude Defendant's retained forensic pathologist from testifying about certain matters.

### 1) "Any testimony or opinions from Dr. Bux regarding Anthony Silva's pain and suffering"

Plaintiff correctly states that Dr. Bux disclaimed any intent to opine about Mr. Silva's pain and suffering.  Indeed, Defendants have moved to exclude Plaintiff's own forensic pathologist from testifying about the same topic.   However, Plaintiff's motion should be denied as overlybroad and/or is not about admissibility.

Regardless of that disclaimer, should the court decline to grant Defendants' motion to exclude Plaintiff's own forensic pathologist from testifying about Mr. Silva's pain and suffering, Dr. Bux intends to opine on the appropriateness of said opinion, whether such is properly within the expertise of a forensic pathologist, and his opinion about the validity of Dr. Omalu's opinions in that regard. Plaintiff's motion should be denied.

**2) "Any testimony or opinions from Dr. Bux regarding the standard of care for nurses and doctors"**

Plaintiff seeks to claim Dr. Bux "is not qualified" to opine about the standard of care for nurses, physicians, or hospitals—particularly in the context of rehabilitative care for a quadriplegic patient. Plaintiff cites testimony that does not speak to Dr. Bux's qualifications, nor about whether the care he received contributed/caused Mr. Silva's death.  Plaintiff fails to cite to any authority that states Dr. Bux must first determine if the care received fell below a particular standard to opine whether certain care contributed to the cause of his death – from decubitus ulcers, osteomyelitis, and sepsis, - the very basis for the death as indicated by one of Mr. Silva's own treating internal medicine doctor.

> Q. I mean, if he hadn't had the injury at all, you're not saying he necessarily would have had decubitus ulcers, are you?
> THE WITNESS: No, and he -- over the last 40-some years that I've been in the medical field, the treatment of decubitus ulcers has gotten to the point where if patients are turned properly, if they receive the proper care from a wound team, if they keep the wounds dried and packed and with all the treating modalities, including debridement, you should be able to cure the decubitus ulcers if they  occur, and they shouldn't occur.  As long as you're turning them every couple of hours, you should not get decubitus ulcers. But that requires the nurses to do that, and it also requires patient permission.

P. 25:2-20, Deposition of Dr. Bux. (Ex A to Declaration of John R. Whitefleet)

> Q. And what I'm basically asking you, if you  would agree that to a reasonable medical probability, had he not had the injury and had not been hospitalized for this prolonged period of time, than more likely than not, he wouldn't have had  those injuries and complications?
> THE WITNESS: That would be true except for the fact that he didn't get his decubitus ulcers treated properly, and that resulted in his  malnutrition and set off the stream of events, including osteomyelitis. So those are things that are the result of poor medical care, period.

pp. 34:17-35:6, Deposition of Dr. Bux  (Ex A to Declaration of John R. Whitefleet)

> Q: So I think I asked you this earlier, but it sounds like you believe he died from complications that occurred during his hospitalization, including the decubitus ulcers?
> THE WITNESS: I believe that the reason why he died when he died is because of the decubitus ulcers, the osteomyelitis, the sepsis, and the fact that he prohibited adequate wound care and that he  also didn't do activities of daily living, which  also deconditioned him and contributed to his death.

4911-1216-5249, v. 1

Dr. Bux is highly qualified to speak to the treatment of ulcers, what is expected and whether the treatment Mr. Silva's condition contributed to the cause of his death.  Plaintiff's motion should be denied.

    3)  **"Any testimony or opinions from Dr. Bux that Anthony Silva caused or contributed to his own death by refusing to comply with medical directives"**

    Plaintiff seeks to preclude Dr. Bux' opinions that Mr. Silva caused or contributed by refusing to comply with medical directives on the grounds that Dr. Bux did not consider Mr. Silva's ability mentally or physically to comply.   Plaintiff fails to cite to any authority that such opinions are not the proper purview of a forensic pathologist.  In any event, the position is untenable and without merit.  Plaintiff's own medical records states he was non compliant:  See Plaintiff's 015643-015645.  (Ex B to Declaration of John R. Whitefleet)

    Regardless, this argument goes to the weight of the testimony, not its admissibility.  A "factual error in the application of a given methodology go to the weight of the evidence, not to admissibility." See *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir.1995) (finding that disputes as to faults in methodology go to the weight, not the admissibility, of expert testimony); see also *Perkins v. Origin Medsystems, Inc.*, 299 F.Supp.2d 45, 60 (D.Conn.2004) (finding that challenge to expert witness's opinion as not reliably based on her application of methodology went to weight, not admissibility). Plaintiff's motion should be denied.

**DEFENDANTS' COMBINED OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE**
4911-1216-5249, v. 1

1

**Opposition to Plaintiff's Motion in Limine No. 2**

2

3      Plaintiff seeks to exclude evidence that Mr. Silva was under the influence of methamphetamine

4 at the time of the incident as irrelevant to what the deputies knew at the time of the incident.

Insofar as Plaintiff misstates the deputies' knowledge, this motion must be denied.

5      Deputy Camara stated he was informed by Deputy Babbit that Mr. Silva was possibly under the

6 influence even before the interaction, and found baggies on his person of a "white crystal like

7 substance" which was consistent with methamphetamine.    See report DEF 00005-0008.  (Ex C to

8 Declaration of John R. Whitefleet) Thus, the deputies are certainly allowed to testify that they suspected

9 he was under the influence at the time of the incident.  It is also part of the facts and circumstances

10 known to them at the time of the incident.

11      Moreover, such evidence is also potentially relevant to the nature and quality of any relationship

12 with Plaintiff, and for damages.  That Plaintiff cites and relies on his own medical records belies the

13 motion, certainly as such evidence goes to what the medical treatment plan contained and considered, as

14 well as for damages.  Plaintiff's motion should be denied.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' COMBINED OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE**
4911-1216-5249, v. 1

**Opposition to Plaintiff's Motion in Limine No. 3**

Plaintiff seeks to preclude Defendants retained expert Dr. Ian McIntyre, a behavioral toxicologist from testifying at all, ostensibly on the grounds that his opinions are not basis on any quantitative measurements of drugs, yet admitting that Mr. Silva tested positive for methamphetamine and marijuana.

Plaintiff has no expert to claim that the positive result from Mr. Silva's own medical records is somehow an insufficient foundational basis to opine about what that means.    This goes to the weight of the testimony, not its admissibility. Dr. McIntyre is allowed to base his opinions on medical records without personally examining him or making observations on the scene. *See Cross v. Candlewic*, No. CV-20-00423-TUC-RM (MSA), 2023 U.S. Dist. LEXIS 134529, at *19 (D. Ariz. Aug. 2, 2023) ("Like the physician in *Sementilli*, who based his opinions on the plaintiff's medical records without personally examining the plaintiff, Dr. Harrington permissibly based his opinions on the evidence [] and his own knowledge, and experience, training, and education.") (citing *Sementilli v. Trinidad Corp.,* 155 F.3d 1130 (9th Cir. 1998)). Plaintiff's motion should be denied.

**DEFENDANTS' COMBINED OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE**
4911-1216-5249, v. 1

**Opposition to Plaintiff's Motion in Limine No. 4**

Plaintiff seek a blanket exclusion of all decedent's unspecified criminal history and other bad acts. Without identifying specific pieces of evidence, Plaintiff leave Defendants and this Court to guess the required facts necessary to evaluate whether decedent' prior criminal history or prior bad acts are relevant or that its probative value is substantially outweighed by some form of danger. See also *United States v. Young*, No. CR 10-923 SJO (#31), 2019 WL 9518230, at \*2, \*5 (C.D. Cal. Apr. 8, 2019) (denying motion in limine seeking blanket exclusion of unspecified gang opinions and unspecified testimony from certain lay, expert, and hybrid witnesses); *Green v. Baca,* 226 F.R.D. 624, 644 (C.D. Cal. 2005) (denying motion in limine to exclude testimony about witnesses' employment history because the court could not determine the relevance or prejudicial effect of this evidence since the defendant failed to offer specific information regarding the nature of the personnel information)

Otherwise, the prior acts are relevant and probative for damages, as well as the quality of the relationship of decedent to his mother, the plaintiff.

Dated:  December 15, 2025                        PORTER SCOTT
                                                 A PROFESSIONAL CORPORATION

                                                 By   /s/ John R. Whitefleet
                                                      John R. Whitefleet
                                                      Attorney for Defendants

**DEFENDANTS' COMBINED OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE**
4911-1216-5249, v. 1