**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

*Attorneys for Plaintiff Dorothey Heimbach*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOROTHEY HEIMBACH,<br><br>        Plaintiff,<br><br>    vs.<br><br>STANISLAUS COUNTY, JUSTIN CAMARA, and ZA XIONG,<br><br>        Defendants. | 2:23-cv-01887-DJC-CSK<br><br>*Assigned to:*<br>District Judge Daniel J. Calabretta<br><br>**PLAINTIFF'S OPPOSITIONS TO DEFENDANTS' MOTIONS IN LIMINE**<br><br>FPTC Date:   December 18, 2025<br>Time:          3:30 PM<br>Location:     Courtroom 7 |

Plaintiff Dorothey Heimbach hereby responds to Defendants' Motions in Limine. As set forth below, Plaintiff opposes certain motions, does not oppose others, and agrees to certain limitations on the scope of evidence and testimony.

## I. OPPOSITION TO MOTION IN LIMINE NO. 1(A) REGARDING EXPERT TESTIMONY OF SCOTT DEFOE

Defendants seek to exclude substantial portions of Mr. DeFoe's police practices expert testimony. Plaintiff opposes certain of these motions, does not oppose others, and agrees to certain limitations as set forth below.

### A. Mr. DeFoe's Opinion Regarding Mental Health Crisis Assessment Should Be Admitted

Defendants argue that Mr. DeFoe should not opine that deputies "failed to initially determine that Mr. Silva was mentally ill, experiencing a mental crisis, and act accordingly." Motion at 2–3. Plaintiff opposes this motion.

DeFoe is not rendering a psychiatric diagnosis. Rather, he is opining on whether the deputies followed crisis intervention training and protocols—matters squarely within a police practices expert's expertise. Law enforcement officers receive training on recognizing signs of mental health crises and responding appropriately. Whether officers followed that widespread practice and training is a proper subject for expert testimony.

Defendants' own police practices expert opines that the officers' determination that Silva was under the influence of drugs was consistent with industry standards based on the information available to them. Mr. DeFoe's opinion regarding the officers' failure to recognize a mental health crisis is analytically identical—it addresses whether the officers' assessment of Mr. Silva's condition conformed to their training. The only difference is that Defendants favor their expert's conclusion and disfavor Mr. DeFoe's. But that is not a basis for exclusion. Just as officers are trained to detect signs of intoxication and factor those observations into their response, they are equally trained to recognize signs of mental illness and respond accordingly. Both opinions address the same question: did the officers assess the situation in conformity with their training?

The use of the word "failed" does not transform a factual opinion into an impermissible legal conclusion. An expert may testify that conduct departed from, was inconsistent with, or failed to conform to professional standards.

### B. Mr. DeFoe's Opinion Regarding De-Escalation Should Be Admitted

Defendants seek to exclude Mr. DeFoe's opinion that deputies failed to use de-escalation and defusing techniques. Plaintiff opposes this motion.

De-escalation is a core component of modern police training and a central topic in police practices testimony. Whether officers attempted verbal commands, created distance, used time as a tactic, or employed other de-escalation techniques are factual questions that police practices experts routinely address.

This testimony does not constitute a legal conclusion about "reasonableness" under Graham v. Connor. Rather, it provides the jury with expert guidance on whether the officers' conduct conformed to accepted police practices.

### C. Mr. DeFoe's Opinion Regarding the Permissibility of Deputies' Search of Silva's Person

Defendants seek to exclude Mr. DeFoe's opinion that the deputies should not have searched Mr. Silva. Plaintiff opposes this motion.

While Plaintiff does not challenge the search as an independent constitutional violation, the search is relevant context for the force sequence that followed. The jury is entitled to understand the full encounter between the deputies and Mr. Silva to evaluate the reasonableness of the force used. Testimony regarding the search helps the jury understand the officers' knowledge, the situation as it developed, and the alternatives available to them.

### D. Mr. DeFoe's Opinion Regarding Warnings Should Be Admitted

Defendants seek to exclude Mr. DeFoe's opinion that deputies failed to warn Mr. Silva before using force. Plaintiff opposes this motion.

Defendants' own cited authority establishes that warnings are a relevant factor in the excessive force analysis. *Deorle v. Rutherford*, 272 F.3d 1272, 1284 (9th Cir. 2001) ("the giving of a warning or the failure to do so is a factor to be considered in applying the Graham balancing test").

Expert testimony on whether warnings were given—and whether the failure to give warnings departed from accepted police practices—is precisely the kind of evidence that helps the jury apply the Graham factors.

### E.     Mr. DeFoe's Opinion Characterizing Force as "Unreasonable"

Defendants seek to exclude Mr. DeFoe's opinion that deputies used "unnecessary, unreasonable, inappropriate force." Plaintiff opposes this motion in part.

"[T]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." U*nited States v. Perkins*, 470 F.3d 150, 157 (4th Cir. 2006) (quoting FRE 704). Such testimony however must be "helpful to the trier of fact," and this leaves the court to the task of distinguishing "'[helpful] opinion testimony that embraces an ultimate fact from [unhelpful] opinion testimony that states a legal conclusion,' a task that we have acknowledged 'is not an easy one.'" *Id*. at 158. "The district court should first consider whether the question tracks the language of the legal principle at issue or of the applicable statute; then, the court should consider whether any terms employed have a specialized legal meaning." *Id*.

Plaintiff agrees Plaintiff agrees that neither party's police practices expert should testify that the force used was "unreasonable" or "reasonable"—the ultimate legal conclusion the jury will be considering.

However, Mr. DeFoe and the defense's police practices expert should be permitted to testify that the force used was inappropriate under generally accepted police practices, inconsistent with POST training standards or contrary to widely held practices and police standards. These are opinions about conformity with professional standards—not legal conclusions about Fourth Amendment reasonableness. Offering such opinions is precisely why both sides retained police practices experts.

### F. Mr. DeFoe's Characterization of the Takedown as "Deadly Force" Should Be Admitted

Defendants seek to exclude Mr. DeFoe's characterization of the takedown as "deadly force." Plaintiff opposes this motion.

The Ninth Circuit defines deadly force as "force that creates a substantial risk of causing death or serious bodily injury." *Smith v. City of Hemet*, 394 F.3d 689, 693 (9th Cir. 2005). This definition focuses on the risk created by the force, not on whether death actually results. Force that creates a substantial risk of death or serious bodily injury is deadly force regardless of the outcome.

Law enforcement training materials uniformly recognize that driving a person's head into a hard surface creates a substantial risk of death or serious bodily injury. Officers are trained that head strikes against concrete or pavement can cause traumatic brain injury, skull fractures, cervical spine injuries, and death. This is precisely why such techniques are classified as high-level force requiring justification equivalent to deadly force.

The facts of this case fall squarely within the definition of deadly force. Mr. Silva was handcuffed. His hands were secured behind his back. He could not brace himself or protect his head from impact. Deputies drove him headfirst into concrete. The force was intentional. Unlike the cases Defendants cite, there was no accidental slip, no unanticipated resistance, no intervening cause. The deputies chose to take down a handcuffed man in a manner that drove his head into concrete. Serious bodily injury resulted. Mr. Silva suffered a cervical spine fracture that rendered him quadriplegic. He died eleven months later. While the outcome does not define whether force is "deadly," the fact that this force actually caused death confirms it created a "substantial risk" of doing so.

Defendants' cited cases involve fundamentally different circumstances *Wallace v. City of Shelby* involved an officer who slipped during a takedown, causing an accidental face-first impact. 968 F. Supp. at 1206. There was no slip

here—the takedown was intentional. *Pullin v. City of Canton* involved injuries caused by "an arrestee's resistance during handcuffing." 133 F. Supp. 2d at 1053. Mr. Silva was already handcuffed when the deputies used the force that broke his neck. The cases involving batons, Tasers, and police dogs that Defendants cite are also inapposite. Those cases categorize the instrumentality of force. Here, the instrumentality was concrete—and the mechanism was driving a restrained person's unprotected head into it.

Mr. DeFoe's characterization of this force as "deadly force" is an accurate application widespread law enforcement training standards to the facts of this case.

### G. Mr. DeFoe's Opinion Regarding Cause of Death

Defendants seek to exclude Mr. DeFoe's opinion that deputies "caused the unnecessary death of Mr. Silva." Plaintiff does not oppose this motion.

Plaintiff agrees that causation of death is an issue for the jury to determine based on the evidence. Plaintiff's forensic pathologist, Dr. Bennet Omalu, will provide expert testimony on medical causation. Mr. DeFoe will not offer opinions on cause of death.

### H. Mr. DeFoe's Opinion Regarding Post-Force Medical Protocols Should Be Admitted

Defendants seek to exclude Mr. DeFoe's opinion that deputies "failed to provide Mr. Silva proper medical assistance" by moving him after the takedown. Plaintiff opposes this motion.

Defendants argue that Mr. DeFoe cannot opine on "proper medical assistance" because he is not a medical professional. This argument misconstrues the nature of the testimony.

Police practices experts routinely testify about post-force protocols: calling EMS promptly, not moving potentially injured persons, monitoring for signs of medical distress, and similar matters. These are law enforcement protocols, not medical diagnoses. Mr. DeFoe is not opining on what medical treatment Mr. Silva

should have received—he is opining on whether the officers followed accepted police practices for handling a person who may have been injured during a use of force. Among other things, he will testify that officers are trained not to move someone who has a serious neck injury.

### I.     Mr. DeFoe's Opinion Regarding the Department Investigation

Defendants seek to exclude Mr. DeFoe's opinion that the Department's investigation of the incident was unreasonable. Plaintiff does not oppose this motion.

Plaintiff acknowledges that the Monell claims have been dismissed. Mr. DeFoe's opinions regarding the Department's investigation are no longer relevant to the remaining claims. Plaintiff does not oppose exclusion of this testimony.

## II.    OPPOSITION TO MOTION IN LIMINE NO. 1(B) REGARDING EXPERT TESTIMONY OF DR. BENNET OMALU

Defendants seek to exclude Dr. Omalu's opinions regarding Mr. Silva's pain and suffering, arguing that such testimony is speculative because Dr. Omalu is not a physiatrist. Plaintiff opposes this motion.

Defendants argue that Dr. Omalu's opinions regarding Mr. Silva's pain and suffering are speculative because Dr. Omalu is not a physiatrist. This argument fundamentally misunderstands both the qualifications required to testify on pain and suffering and Dr. Omalu's extensive experience doing so.

Dr. Bennet Omalu is a board-certified forensic pathologist and neuropathologist with decades of experience. He has served as Chief Medical Examiner and has extensive experience evaluating traumatic injuries, their physiological effects, and the suffering they cause. His qualifications to testify on these matters are beyond dispute.

Courts have consistently found Dr. Omalu qualified to render such opinions, and his methodology has been accepted under Daubert. *See* Murillo, No. CV218738FMOAGRX, 2023 WL 9420539 at *2–3 (finding Dr. Omalu's opinions

7
PLAINTIFF'S OPPOSITIONS TO DEFENDANTS' MOTIONS IN LIMINE

on decedents' unconscious pain relevant to Plaintiffs' claims for pre-death pain and suffering damages, helpful to the jury, and reliable); *see also A.B. v. Cnty. of San Diego*, No. 18CV1541-MMA-LL, 2020 WL 4430971 (S.D. Cal. July 31, 2020) (same).

While lay people may understand the basic concept of a person experiencing pain after being driven headfirst into the ground and immediately paralyzed, they cannot be expected to understand the underlying mechanics, chemistry, or severity of the pain and suffering. That is why Dr. Omalu's testimony is so important.

Dr. Omalu dedicates five pages of his report to describing in detail his expert opinion regarding Mr. Silva's pain and suffering. *See* Omalu Report at 30–34. He explains the pathophysiology of conscious pain—how nerve endings generate electrical action potentials within ten-thousandths of a second of tissue damage, how those signals travel through the spinal cord and brainstem to produce the conscious experience of pain, and how both mechanical trauma and the body's biochemical inflammatory responses produce sustained, cumulative suffering. He explains that Mr. Silva experienced not one type of pain but three—mental, somatic, and chemical—and that these operated synergistically to produce escalating levels of suffering over the thirteen months he survived.

Dr. Omalu further explains why Mr. Silva's quadriplegia did not prevent him from experiencing pain. Contrary to what a lay juror might assume, a spinal cord injury does not eliminate pain sensation. Dr. Omalu describes the well-established medical principle that quadriplegic patients continue to experience multiple categories of pain—nociceptive, neuropathic, and others—both above and below the level of injury. He explains that every complication Mr. Silva developed, every medical intervention he underwent, and every medication he received generated its own independent pain and suffering, contributing to a cumulative experience of suffering that persisted until his death.

This is precisely the kind of specialized knowledge that requires expert testimony. A lay juror cannot be expected to understand the neurophysiology of pain transmission, the biochemical cascades that produce sustained suffering after trauma, or the medical reality that paralysis does not equal absence of pain. Dr. Omalu's testimony will help the jury understand what Mr. Silva actually experienced during the thirteen months between his injury and his death.

### III.  RESPONSE TO MOTION IN LIMINE NO. 2 REGARDING PRIOR LAWSUITS AND RELATED EVIDENCE (EXHIBITS 48-51, 55-56)

Defendants seek to exclude documents relating to prior lawsuits involving Deputy Camara (Exhibits 48-51) and testimony from the Isaiah Fiaupule matter (Exhibits 55-56). Plaintiff agrees to a limitation on use of this evidence.

Plaintiff agrees that documents relating to prior lawsuits involving Deputy Camara and testimony from the Isaiah Fiaupule matter may be used solely for impeachment purposes, if at all. If Deputy Camara or other witnesses open the door through testimony about their training, experience, or prior conduct, Plaintiff reserves the right to use this evidence for impeachment consistent with the Federal Rules of Evidence.

### IV.  RESPONSE TO MOTION IN LIMINE NO. 3 REGARDING WITNESS EXCLUSION UNDER FRE 615

Defendants seek an order excluding all witnesses from the courtroom until the time of their testimony pursuant to Federal Rule of Evidence 615. If the Court wishes to exclude all witnesses from the courtroom until the time of their testimony, Plaintiff does not object.

Plaintiff notes, however, that it is common practice to permit expert witnesses to observe trial proceedings. Expert witnesses often arrive early for their scheduled testimony and permitting them to sit in the courtroom while waiting—rather than in an empty conference room—is a reasonable accommodation that does not prejudice either party. Plaintiff's experts are testifying based on their

review of documents and their professional expertise, not on observations of other witnesses' testimony.

## V. OPPOSITION TO MOTION IN LIMINE NO. 4 REGARDING DISMISSAL OF CRIMINAL CHARGES

Defendants seek to exclude evidence that criminal charges against Mr. Silva were dismissed. Plaintiff opposes this motion.

This motion should be denied because, under the circumstances of this case, exclusion of the dismissal would mislead the jury and unfairly prejudice Plaintiff.

Defendants' theory of the case is that they had probable cause to believe Mr. Silva had committed a violation of Penal Code section 69—felony assault on a peace officer—before the fatal takedown. Defendants intend to present this narrative to the jury to justify the force they used. But if Defendants are permitted to tell the jury that Mr. Silva was facing felony assault charges without also informing the jury that those charges were dismissed, the jury will be left with the false impression that Mr. Silva actually committed a felony. He did not. The District Attorney reviewed the evidence and dismissed all charges. Mr. Silva was not prosecuted for felony assault. He was not even prosecuted for misdemeanor obstruction. He was prosecuted for nothing.

Allowing Defendants to paint Mr. Silva as a felon—while simultaneously excluding evidence that the charges were dropped—would be deeply misleading and unfairly prejudicial to Plaintiff. The jury is entitled to the complete picture, not a one-sided narrative that stops conveniently short of the truth.

The cases Defendants cite do not support exclusion under these circumstances. In *Borunda v. Richmond*, 885 F.2d 1384 (9th Cir. 1989), and *De Anda v. City of Long Beach*, 7 F.3d 1418 (9th Cir. 1993), the courts held that district courts did *not abuse their discretion* by excluding evidence of acquittals or dismissals. But a holding that exclusion was not an abuse of discretion is far different from a holding that such evidence must be excluded. Those cases stand

for the unremarkable proposition that trial courts have broad discretion in making evidentiary rulings—they do not hold that dismissals are categorically inadmissible.

Here, the equities favor admission. Where a defendant seeks to portray the plaintiff as a criminal to justify the use of force, fairness requires that the plaintiff be permitted to inform the jury of the actual disposition of those charges. Courts have recognized this principle. In *Cardinal v. Buchnoff*, No. 06CV0072-MMA BLM, 2010 WL 3339509, at *3 (S.D. Cal. Aug. 23, 2010), the court found that "it would be unfairly prejudicial to Plaintiffs not to allow them to provide the jury with an accurate procedural account of the disposition of the charge." Similarly, in *Brown v. City of Pittsburgh*, 2007 U.S. Dist. LEXIS 6411, at *6 (W.D. Pa. Jan. 30, 2007), the court permitted evidence that the plaintiff's criminal charges were dismissed in order to provide "the jury with a full and accurate procedural history."

The same logic applies here. Defendants cannot be permitted to tell half the story. If they intend to argue that Mr. Silva committed a felony assault justifying the force used against him, the jury must be informed that the District Attorney disagreed—and that Mr. Silva died without ever being convicted of any crime arising from this encounter.

## VI.   RESPONSE TO MOTION IN LIMINE NO. 5 REGARDING PERSONNEL FILES

Defendants seek to exclude the personnel files of Deputies Camara and Xiong (Exhibits 69–70). Plaintiff agrees to a limitation on use of this evidence.

Plaintiff reserves the right to use specific documents from these files for impeachment purposes if the officers' testimony opens the door—for example, if an officer testifies about his training, disciplinary history, or prior conduct in a manner that the personnel file contradicts.

## VII. OPPOSITION TO MOTION IN LIMINE NO. 6 REGARDING WITNESSES BRANDON JEWETT, LEE SPARKS, AND DAVID RAY GLENN

Defendants seek to exclude three witnesses disclosed near the close of discovery: Brandon Jewett, Lee Sparks, and David Ray Glenn. Plaintiff opposes this motion. These are damages witnesses whose testimony may be important to Plaintiff's case.

Under Rule 37(c)(1), evidence may be excluded for failure to timely disclose "unless the failure was substantially justified or is harmless." Here, the timing of disclosure was substantially justified, and Defendants suffered no prejudice.

Plaintiff only learned of these individuals' identities after Ms. Heimbach's deposition, which Defendants scheduled for January 7, 2025. During the deposition, Ms. Heimbach was asked questions that refreshed her memory about these individuals and their role in Mr. Silva's life. As soon as Plaintiff's counsel learned of these individuals and that they might possess discoverable information, we informed defense counsel. Plaintiff's counsel provided any contact information we had; the description of anticipated testimony was limited because Plaintiff had not yet had the opportunity to interview these witnesses.

The fact that the disclosure was made a day before the end of discovery did not prejudice the defense. Supplemental disclosures were provided on January 23, 2025—*more than eleven months before trial is scheduled to begin*. Plaintiff would have gladly agreed to a stipulation reopening discovery for the limited purpose of deposing these witnesses. Defendants never requested such a stipulation, never raised any concern about these witnesses, and this motion is the first time Plaintiff has heard that Defendants consider this an issue.

Indeed, the parties met and conferred regarding motions in limine and reported their disputes and anticipated motions in their November 6, 2025, Joint Pretrial Statement. (ECF No. 38 at 5.) Defendants did not identify this as a

disputed issue—not in the meet and confer, and not in the filing to this Court. Having failed to raise the issue when the parties were required to identify evidentiary disputes, Defendants should be procedurally barred from raising it now. This is precisely the kind of issue that should have been addressed months ago, when it could have been resolved by agreement or by a brief extension of discovery.

The motion lacks merit, and Defendants waived their right to raise it by failing to comply with the meet-and-confer requirement and failing to disclose it as a disputed issue in the Joint Pretrial Statement.

## VIII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motions in Limine to the extent Plaintiff has opposed them above.

Dated: December 15, 2025        **LAW OFFICES OF DALE K. GALIPO**

By:   */s/   Cooper Alison-Mayne*
Dale K. Galipo
Cooper Alison-Mayne
*Attorneys for Plaintiff Dorothey Heimbach*